# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 15-30617
_____

D.C. Docket No. 2:13-CV-6560
D.C. Docket No. 2:14-CV-810
D.C. Docket No. 2:14-CV-837

Certified as a true copy and issued
as the mandate on May 03, 2016

Attest: *Lyle W. Cayce*

Clerk, U.S. Court of Appeals, Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2016

Lyle W. Cayce
Clerk

UPTOWN GRILL, L.L.C.,

      Plaintiff - Appellee

v.

MICHAEL LOUIS SHWARTZ, also known as Michael L. Shwartz;
CAMELLIA GRILL HOLDINGS, INCORPORATED; CAMELLIA GRILL,
INCORPORATED,

      Defendants - Appellants

-----------------------------------------------------------

CAMELLIA GRILL HOLDINGS, INCORPORATED,

      Plaintiff - Appellant

v.

CHARTRES GRILL, L.L.C., doing business as Grill; UPTOWN GRILL OF
DESTIN, L.L.C.; GRILL HOLDINGS, L.L.C.; RANO, L.L.C.; HICHAM
KHODR; UPTOWN GRILL, L.L.C.; K & L INVESTMENTS, L.L.C.;
ROBERT'S GUMBO SHOP, L.L.C.,

      Defendants - Appellees

-----------------------------------------------------------

CAMELLIA GRILL HOLDINGS, INCORPORATED,

Plaintiff - Appellant

v.

CHARTRES GRILL, L.L.C., doing business as The Grill; RANO, L.L.C.;
HICHAM KHODR; UPTOWN GRILL, L.L.C.; UPTOWN GRILL OF DESTIN,
L.L.C.; K & L INVESTMENTS, L.L.C.; ROBERT'S GUMBO SHOP, L.L.C.;
GRILL HOLDINGS, L.L.C.,

Defendants - Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before JONES and SMITH, Circuit Judges and FITZWATER[*], District Judge.

J U D G M E N T

    This cause was considered on the record on appeal and was argued by
counsel.

    It is ordered and adjudged that the judgment of the District Court is
affirmed in part and reversed in part, and the cause is remanded to the District
Court for further proceedings in accordance with the opinion of this Court.

    IT IS FURTHER ORDERED that each party bear its own costs on
appeal.

---

[*] District Judge of the Northern District of Texas, sitting by designation.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

––––––––––––

No. 15-30617

––––––––––––

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2016

Lyle W. Cayce
Clerk

UPTOWN GRILL, L.L.C.,

        Plaintiff - Appellee

v.

MICHAEL LOUIS SHWARTZ, also known as Michael L. Shwartz;
CAMELLIA GRILL HOLDINGS, INCORPORATED;
CAMELLIA GRILL, INCORPORATED,

        Defendants - Appellants

----------------------------------------------------------------

CAMELLIA GRILL HOLDINGS, INCORPORATED,

        Plaintiff - Appellant

v.

CHARTRES GRILL, L.L.C., doing business as Grill;
UPTOWN GRILL OF DESTIN, L.L.C.; GRILL HOLDINGS, L.L.C.;
RANO, L.L.C.; HICHAM KHODR; UPTOWN GRILL, L.L.C.;
K & L INVESTMENTS, L.L.C.; ROBERT'S GUMBO SHOP, L.L.C.,

        Defendants - Appellees

----------------------------------------------------------------

CAMELLIA GRILL HOLDINGS, INCORPORATED,

        Plaintiff - Appellant

No. 15-30617

v.

CHARTRES GRILL, L.L.C., doing business as The Grill; RANO, L.L.C.;
HICHAM KHODR; UPTOWN GRILL, L.L.C.;
UPTOWN GRILL OF DESTIN, L.L.C.; K & L INVESTMENTS, L.L.C.;
ROBERT'S GUMBO SHOP, L.L.C.; GRILL HOLDINGS, L.L.C.,

        Defendants - Appellees

————————————

Appeal from the United States District Court
for the Eastern District of Louisiana

————————————

Before JONES and SMITH, Circuit Judges and FITZWATER,[*] District Judge.

EDITH H. JONES, Circuit Judge:

       The question before us is who owns the trademarks associated with the multiple locations of the famous Camellia Grill in New Orleans. We affirm the district court insofar as it found that the putative purchasers own the marks associated with the restaurant's original location on Carrollton Avenue, but reverse and remand for redetermination of the ownership of those marks not associated with that location.

————————

[*] District Judge of the Northern District of Texas, sitting by designation.

No. 15-30617

## I

Michael Shwartz ("Shwartz") and his family owned and operated the Camellia Grill restaurant on Carrollton Avenue ("Carrollton Avenue location") in New Orleans for decades.  He operated the business through his wholly-owned corporation, Camellia Grill, Inc.  In 1999, he formed and wholly-owned Camellia Grill Holdings, Inc. ("CGH") for the sole purpose of owning federally-registered trademarks associated with Camellia Grill, which were sold from Camellia Grill, Inc. to CGH.  The Camellia Grill closed in August 2005 when Hurricane Katrina devastated New Orleans and remained closed after Shwartz relocated to Mississippi in the storm's wake.  He agreed to sell the business to Hicham Khodr ("Khodr") sometime during the next year.

In August 2006, Shwartz and/or entities owned by him effectuated the sale through three contracts with entities controlled by Khodr.  (1) In the Cash Sale, which was executed on August 11, 2006, Shwartz sold the immovable property located at the Carrollton Avenue location to an entity owned by Khodr for $490,000.  (2) The Bill of Sale was also executed on August 11, 2006 and purported to transfer ownership of "tangible personal property" and certain specific property, including trademarks, associated with Camellia Grill for $10,000.  Shwartz, Camellia Grill, Inc., and CGH were collectively the "Seller" in the transaction, and Uptown Grill, LLC ("Uptown Grill") was the "Purchaser."  (3) On August 27, 2006, CGH alone executed a License Agreement with Grill Holdings, LLC ("Grill Holdings") that permitted Grill Holdings, a Khodr entity, to use the Camellia Grill trademarks for $1,000,000 plus royalties.

3

No. 15-30617

In 2009, Khodr opened another Camellia Grill location in Destin, Florida, but it failed in 2011 because of a struggling market in the wake of the BP oil spill. In 2010, he opened a Camellia Grill location on Chartres Street in the French Quarter, which remains open and operating to this day.

The parties now dispute the ownership of the trademarks associated with Camellia Grill and have engaged in protracted litigation in numerous state and federal courts since 2008. Their dispute convolutedly comes before us by way of three consolidated cases. (1) The first involves state court proceedings initially filed in 2008 that resulted in the License Agreement's being cancelled as of June 1, 2011 because Grill Holdings breached its terms. *See The Grill Holdings, LLC v. Camellia Grill Holdings, Inc.*, 2012-1642 (La. App. 4 Cir. 5/18/13); 120 So.3d 294. (2) While that case was on appeal in Louisiana state court, CGH filed a complaint in the Eastern District of Louisiana on July 23, 2013 against Grill Holdings and the City of New Orleans seeking to remedy trademark infringement by preventing the city from designating the Carrollton Avenue location as a historic landmark. The district court denied CGH's motion for a preliminary injunction, *see Camellia Grill Holdings, Inc. v. New Orleans City*, 2013 WL 4431344 (E.D. La. 2013), and thereafter granted CGH's motion for voluntary dismissal. (3) While that motion was pending, Uptown Grill filed a complaint for declaratory relief against Shwartz, CGH, and Camellia Grill, Inc. on December 3, 2013 to determine the parties' respective rights only in the Camellia Grill trademarks within or upon the Carrollton Avenue location.

4

No. 15-30617

Significantly, Grill Holdings acknowledged the finality of the Louisiana state court litigation, paid CGH's attorneys' fee award in that litigation, and ceased using the Camellia Grill marks at its French Quarter location.

During the pendency of the third case, and after CGH's motion for voluntary dismissal was granted in the second case, CGH filed supplementary pleadings asserting trademark infringement in the first, closed state court litigation because of the continued use of the trademarks even though the License Agreement had been cancelled. Grill Holdings removed that case to the district court, and the district court denied CGH's motion to remand to state court. All three of these cases were consolidated in the district court.

Both parties filed motions for summary judgment. After oral argument, the district court ordered the parties to submit additional briefing on whether the Bill of Sale clearly and unambiguously transferred any of the trademarks to any of Khodr's entities. In a subsequent order granting summary judgment, the district court found *sua sponte* that the Bill of Sale transferred *all* trademarks—those associated with the Carrollton Avenue location and the other locations—to Uptown Grill. The court accordingly entered judgment that Uptown Grill is the owner of all Camellia Grill trademarks and dismissed all of CGH's claims. *See Uptown Grill, LLC v. Shwartz*, 116 F. Supp.3d 713 (E.D. La. 2015). The Shwartz parties appeal the judgment.

## II

This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Wright v. Excel Paralubes*, 807 F.3d 730, 732 (5th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

No. 15-30617

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  This court considers evidence in the record in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

## III

We initially consider two issues related to Uptown Grill's declaratory judgment action.  The first is whether the federal courts have subject matter jurisdiction, and the second is whether laches bars the suit.

## A

Uptown Grill filed its complaint seeking a declaration that it owns the Camellia Grill trademarks within or upon the Carrollton Avenue location.  The Shwartz parties argue that subject matter jurisdiction is lacking and the complaint should have been dismissed because there is no federal question of ownership of the trademarks under the Lanham Act, only a state law question of ownership pursuant to the Bill of Sale.  Federal question jurisdiction exists over a declaratory judgment action based on trademarks where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" and where the alleged infringer is actively engaged in conduct that could constitute trademark infringement.  *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771 (2007)).  Uptown Grill's declaratory judgment action satisfies this test.  That Uptown Grill filed the action in response to CGH's

No. 15-30617

attempt to re-open the state court judgment and deny Uptown Grill's use of the trademarks at the Carrollton Avenue location demonstrates a substantial controversy between parties having adverse interests; if Uptown Grill did not prevail, it would be an infringer.  Federal subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1338.

## B

The Shwartz parties argue that because Uptown Grill did not assert rights to the trademarks included in the Bill of Sale during the first five years of their litigation, it should be equitably barred by the doctrine of laches from seeking declaratory relief.  To establish laches, the Shwartz parties must prove that Uptown Grill delayed in asserting the rights at issue; that the delay is inexcusable; and that the Shwartz parties have suffered undue prejudice as a result of the delay.  *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013).  The Shwartz parties have not met their burden.  Uptown Grill was not a party to any litigation where ownership of the trademarks was at issue until it filed its action for declaratory judgment on December 3, 2013, in response, as previously noted, to CGH's motions in state court attacking use of the trademarks.  Uptown Grill did not unreasonably delay in asserting whatever rights in the trademarks the Bill of Sale transferred.  In addition, even if the earlier litigation between Camellia Grill, Inc., CGH, and/or any of Khodr's entities could somehow be imputed to Uptown Grill, the License Agreement, not the Bill of Sale, was at issue in those cases.  Accordingly,

No. 15-30617

Uptown Grill may not be punished for failing to assert the Bill of Sale in prior litigation, and laches is inapplicable.[1]

## IV

The merits of this dispute center on ownership of the trademarks at the Carrollton Avenue location and, according to the district court, those associated with the other locations.

## A

The Bill of Sale expressly invokes Louisiana law.  Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  LA. CIV. CODE ANN. art. 2046.  Whether a contract is clear and unambiguous is a question of law.  *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994) (citation omitted).  "[A] contract is ambiguous when it is uncertain as to the parties' intentions and is susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction."  *In re Liljeberg Enters.*, 304 F.3d 410, 440 (5th Cir. 2002) (quotations and citations omitted).  The court may not disregard any contract provision "under the pretext of pursuing its spirit" unless the provision is unclear or ambiguous, "as it is not the duty of the courts

---

[1] The laches issue in this case is presented in an unusual manner.  Laches is typically asserted by an alleged trademark infringer as an affirmative defense against a trademark owner who knew of the alleged infringement and unreasonably delayed raising it.  *See, e.g., Abraham*, 708 F.3d at 622-25.  Here, to the contrary, laches is asserted by a putative trademark owner against an alleged trademark infringer who is said to have unreasonably delayed in asserting rights in the marks.  The parties have not cited, nor could we or the district court find, any case where laches was raised in such circumstances.  Because the defense of laches is inapplicable in any event, we need not address whether laches may be so raised, and thus leave the question open.

8

No. 15-30617

to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Clovelly Oil Co., LLC v. Midstates Petrol. Co., LLC*, 2012-2055, p. 5 (La. 3/19/13); 112 So.3d 187, 192.

The Bill of Sale, dated August 11, 2006, was executed by Shwartz, Camellia Grill, Inc., and CGH (as "Sellers") and Uptown Grill (as "Purchaser"). The contract states in pertinent part (emphasis added):

> FOR AND IN CONSIDERATION of the price and sum of TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS, which Purchaser has well and truly paid unto Seller, the receipt and sufficiency whereof is acknowledged, Seller does by these presents, hereby sell, transfer, and convey unto Purchaser, its successors and assigns, all of Seller's right, title and interest in and to the following *tangible personal property* located within or upon the [Carrollton Avenue location] and within or upon the buildings and Improvements located thereon:
>
> > All furniture, fixtures and equipment, cooking equipment, kitchen equipment, counters, stools, tables, benches, appliances, recipes, *trademarks, names, logos, likenesses, etc.*, and all other *personal* and/or movable *property* owned by Seller located within or upon the *property* described in [an exhibit] annexed hereto and within or upon the buildings and improvements thereon (the "*Personal Property*").

The Shwartz parties argue that the phrase "tangible personal property," is irreconcilable with the specific, intangible property listed: "trademarks, names, logos, likenesses, etc." According to the Shwartz parties, this apparent contradiction renders the Bill of Sale ambiguous. To the contrary, the Bill of Sale unambiguously transfers ownership of the trademarks "within or upon" the Carrollton Avenue location. First, where the specific provisions of a contract apparently conflict with the general provisions of a contract, the

No. 15-30617

"specific controls the general." *Mazzini v. Strathman*, 2013-0555, p. 10 (La. App. 4 Cir. 4/16/14); 140 So.3d 253, 259 (citation omitted). To the extent that "trademarks, logos, names, likenesses, etc." conflicts with "tangible personal property," the specifically listed property controls. Second, "[e]ach provision of a contract must be interpreted in light of the other provisions, and a provision susceptible of different meanings must be interpreted with a meaning that renders it effective rather than one which renders it ineffective." *Lewis v. Hamilton*, 94-2204, p. 6 (La. 4/10/95); 652 So. 2d 1327, 1330 (citing LA. CIV. CODE ANN. arts. 2049, 2050). A finding that the trademarks are not transferred would improperly render the "trademarks, names, logos, likenesses, etc." language ineffective. This is especially unnecessary in light of the other contractual provisions that broadly transfer "Personal Property," a category covering the trademarks.

The unambiguous transfer of the Carrollton Avenue location trademarks to Uptown Grill does not lead to an objectively absurd result. Though the $10,000 purchase price may seem low for all of the property transferred, a business decision that may be unwise, imprudent, risky, or speculative is not necessarily "absurd." *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Circle, Inc.*, 915 F.2d 986, 991 (5th Cir. 1990). We thus decline the Shwartz parties' invitation to consider parol evidence such as the License Agreement[2] in

_____

[2] We also reject the Shwartz parties' argument that the License Agreement supersedes the Bill of Sale, thereby preserving CHG's ownership of the trademarks. They rely on Section 17.5 of the License Agreement, which provides that it "replace[s] and supersede[s] all prior written or oral agreements or statements by and among the Parties." The only "Parties" to the License Agreement are CGH and Grill Holdings, not Uptown Grill. Even assuming *arguendo* that CGH intended to modify its agreement with Uptown Grill by entering into the License Agreement with Grill Holdings, the Bill of Sale cannot be modified without Uptown Grill's consent. *See Woods v. Morgan City Lions Club*, 588 So.2d 1196, 1200 (La. App. 1 Cir.

10

No. 15-30617

interpreting the Bill of Sale. *See* LA. CIV. CODE ANN. art. 2046 ("no further interpretation may be made in search of the parties' intent" when there are "no absurd consequences"); *Campbell v. Melton*, 2001-2578, p. 6 (La. 5/14/02); 817 So.2d 69; 75 ("Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous." (citation omitted)).

The Bill of Sale thus clearly and unambiguously transfers to Uptown Grill the trademarks within or upon the Carrollton Avenue location.

## B

Unbidden by Uptown Grill, the district court went one step further. Uptown Grill expressly and repeatedly sought only a declaration that it owns the Camellia Grill trademarks within or upon the Carrollton Avenue location. The district court *sua sponte* concluded that, "as a secondary issue for this Court to address," Uptown Grill owns *all* of the Camellia Grill trademarks. The court reasoned that since the Shwartz parties only used the trademarks at the Carrollton Avenue location, and since the trademarks within or upon that location were sold, then neither CGH nor any other affiliate retained an interest in any of the trademarks that are now used at other Camellia Grill locations. The court failed to explain the legal significance of the appellants' allegedly geographically limited "use" of the trademarks. Instead, the court simply appears to have pursued to a logical conclusion its interpretation of the Bill of Sale.

---

1991) ("Once a contract is complete, it is not subject to further modification by either party without the consent of the other."). The provisions of the License Agreement, to which Uptown Grill is not a party, are irrelevant to construing the Bill of Sale.

11

No. 15-30617

Federal Rule of Civil Procedure 54(c) counsels that courts "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." However, "[t]he discretion afforded by Rule 54(c) . . . assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant." *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) (citing 10 CHARLES ALAN WRIGHT, ARTHUR MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2662 (4th ed. 2014), at 165), *reh'g denied*, 807 F.3d 650 (5th Cir. 2015); *see also Capital Films Corp. v. Charles Fries Prods., Inc.*, 628 F.2d 387, 390 (5th Cir. 1980) (court must assure that party against whom judgment is entered has sufficient advance notice and an adequate opportunity to demonstrate why additional relief should not be granted); 10 WRIGHT, MILLER, & KANE § 2664 (4th ed. 2014), at 180-83 ("The only exception to [Rule 54(c)] is if plaintiff's failure to demand the appropriate relief has prejudiced the defendant.").

Based on the record as a whole, we cannot say that the district court's understanding concerning the scope of the parties' agreements was "tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant." *Peterson*, 806 F.3d at 340. For years, throughout an audit and litigation up to the Louisiana Supreme Court, the parties here consistently treated the License Agreement as valid and binding. While Uptown Grill was never formally involved in the disputes, it is an "affiliate" of Grill Holdings pursuant to Section 4.10 of the License Agreement and, under that provision, is included in the term "Licensee." The "Licensee" under the Agreement is required to cause any "licensee" to abide by the Agreement's provisions, Section

12

No. 15-30617

6.4, and the Licensee agrees, in Section 5, that "all of the Licensor's right, title and interest in and to the Marks shall remain the property of the Licensor." The parties have never litigated the proposition that because of the Bill of Sale, the License Agreement did not cover the use of Camellia Grill marks apart from the Carrollton Avenue location. Indeed, they litigated the scope of the License Agreement to the Louisiana Supreme Court, the Khodr parties lost, and as a result they paid CGH's attorneys' fees and ceased using the marks at the French Quarter location.

During this federal court litigation, and wholly consistent with the parties' prior acts and practice, Uptown Grill has only sought a recognition of its right to use the marks at the Carrollton Avenue location. Numerous indications of this limited request for relief appear in Uptown Grill's pleadings.[3]  Further, Section 10.3 of the License Agreement provides that

---

[3] *See* Memorandum in Support of Motion for Partial Summary Judgment at 4, *Uptown Grill, LLC v. Shwartz*, 116 F. Supp.3d 713 (E.D. La. 2015) (No. 13-6560), Document 119-9 (explaining that "[t]his case truly involves the use of the Camellia Grill trademarks in two separate locations" and that its legal position with respect to the Bill of Sale is that "Grill Holdings and Other Defendants *purchased* the 'trademarks, names, logos, likenesses, etc.' associated with [the Carrollton Avenue location]" only and thus "*did not* cease use of the subject service marks in conjunction with [that] location because [it is] entitled to continue doing so by virtue of a valid agreement between the parties" (emphases in original)); *id.* at 4, 7 (explaining that use of the trademark at the French Quarter location was based on the belief that Uptown Grill had a contractual entitlement to do so, but that this use ceased upon termination of the License Agreement); Reply Memorandum in Support of Motion for Partial Summary Judgment at 7, *Uptown Grill, LLC v. Shwartz*, 116 F. Supp.3d 713 (E.D. La. 2015) (No. 13-6560), Document 167-2 (Uptown Grill "relied on the Bill of Sale in [its] belief that [it] own[s] the Camellia Grill trademark *for the Carrollton Avenue location*." (emphasis added)); Memorandum in Reply to Shwartz Parties' Opposition to Uptown Grill's and Other Khodr Parties' Motion for Summary Judgment at 4, *Uptown Grill, LLC v. Shwartz*, 116 F. Supp.3d 713 (E.D. La. 2015) (No. 13-6560), Document 196-3 (titling one section: "The words of the Cash Sale and Bill of Sale reflect that the parties intended the contract to be for the sale of the Carrollton Restaurant as a fully operating Camellia Grill with the transfer of all trademarks, names, logos, likenesses, etc., necessary to operate the restaurant as a Camellia

No. 15-30617

"Licensee will not attack the title or any rights of Licensor in and to the Marks, attack the validity of [the License Agreement], or do anything either by omission or commission which might impair, violate or infringe the Marks." In practice, Uptown Grill's actions demonstrate that it has abided by this provision as an "affiliate" of the Licensee, Grill Holdings.

In sum, while CGH may well be bound by a mis-drafted Bill of Sale, the court must consider whether Uptown Grill should be bound by its pleadings, representations in court, and practice with respect to a License Agreement for which its affiliate, Grill Holdings, paid a million dollars. At least, the court must take all facts and circumstances of the parties' contractual relations, litigation tactics, and applicable trademark law into consideration before reinstating relief plainly beyond the plaintiffs' pleadings. We therefore remand for further proceedings not inconsistent herewith.

---

Grill"); *id.* at 4-5 (The Bill of Sale "further supports Khodr's intention and understanding that the intellectual property as to the iconic restaurant on Carrollton Avenue had been carved out of the License Agreement, and that the License Agreement only provided for the establishment of future Camellia Grill restaurants/locations.") *id.* at 5 (Bill of Sale explicitly reflects drafting "to sell the Khodr parties the Camellia Grill restaurant as a complete business and as a restaurant that could be run as a Camellia Grill"); *id.* at 6 n.3 ("Khodr testified that he bought the Camellia Grill building, name, logo and everything on the building on Carrollton to operate it as a Camellia Grill restaurant, and that the License Agreement was for the opening of future Camellia Grill concept restaurants."); *id.* at 11 (Uptown Grill's pleadings "make it clear that Uptown Grill was seeking a declaration that it was the owner of the Camellia Grill trademarks, names, logos, likenesses, etc. as to the Camellia Grill Restaurant on Carrollton Avenue"); *id.* at 13 ("The document's explicit language shows that the Bill of sale effected the sale, transfer and conveyance of all of the trademarks and intellectual property for the 'carved out' Carrollton Avenue location. This logical interpretation dovetails nicely with the parties' grand vision" and the drafting of the License Agreement.).

14

No. 15-30617

## V

For the foregoing reasons, we **AFFIRM** the district court insofar as it found that Uptown Grill owns the trademarks within or upon the Carrollton Avenue location, but **REVERSE** and **REMAND** for further proceedings not inconsistent with this opinion to determine the appropriateness of any further relief.

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

May 03, 2016

Mr. William W. Blevins
U.S. District Court, Eastern District of Louisiana
500 Poydras Street
Room C-151
New Orleans, LA 70130

      **No. 15-30617    Uptown Grill, L.L.C., et al v. Michael**
                        **Shwartz, et al**
                        USDC No. 2:13-CV-6560
                        USDC No. 2:14-CV-810
                        USDC No. 2:14-CV-837

Dear Mr. Blevins,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    *Sabrina B. Short*
                  By: _____
                    Sabrina B. Short, Deputy Clerk
                    504-310-7817

cc:
      Ms. Danielle Lauren Borel
      Mr. Scott Nikolaus Hensgens
      Mr. E. John Litchfield
      Mr. Stephan Land McDavid
      Ms. Karen Baumgarten Sher
      Mr. Irl R. Silverstein
      Ms. Kathy Lee Torregano