# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UPTOWN GRILL, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-6560 c/w 14-810; 14-837** |
| **MICHAEL LOUIS SHWARTZ, ET AL** | **SECTION: "H"(4)** |

## ORDER AND REASONS

Before the Court are the Shwartz parties' Motion for Partial Summary Judgment (Doc. 236) and the Khodr parties' Motion for Partial Summary Judgment on Trade Dress and Conversion (Doc. 262), Motion for Partial Summary Judgment on Damages (Doc. 264), and Rule 21 Motion to Drop Parties (Doc. 266). These Motions are disposed of as outlined herein.

## BACKGROUND

Like the adventures of John Kennedy Toole's Ignatius Reilly, the procedural history of this case is long, meandering, and often borders on the

1

absurd. At every turn, the parties have seemingly operated with the goal of extending, rather than ending, this ligation. Though the Court has on multiple occasions outlined the background facts of this matter, a recounting of the history of this matter is necessary to the disposition of the issues remaining before the Court.

At present there are three consolidated cases before the Court. In the lead case (No. 13-6560), Uptown Grill, LLC ("Uptown Grill")[1] seeks a judgment against Michael Shwartz, Camellia Grill Holdings, Inc. ("CGH"), and Camellia Grill, Inc.[2] (jointly referred to as the "Shwartz parties") declaring that "(1) it owns the trademarks, etc. that are located within or upon the property 626 South Carrollton Avenue, and (2) that its continued use of the trademarks, etc. that it purchased is lawful in all respects."[3]

In the consolidated cases (Nos. 14-810 and 14-837), CGH seeks judgment against Defendants, Hicham Khodr; The Grill Holdings, LLC ("Grill Holdings"); Chartres Grill, LLC; RANO, LLC; Uptown Grill, LLC; Uptown Grill of Destin, LLC; K&L Investments, LLC; and Robert's Gumbo Shop, LLC (jointly referred to as the "Khodr parties").[4] The Shwartz parties allege that the Khodr parties, acting as a single business enterprise, are unlawfully using the contested Camellia Grill trademarks. They seek damages for trademark infringement and request that the defendants be enjoined from further infringement.

---

[1] Uptown Grill is wholly owned by Hicham Khodr.

[2] CGH and Camelia Grill, Inc. are wholly owned by Michael Shwartz.

[3] Doc. 1, p. 6.

[4] The Grill Holdings, LLC; Chartres Grill, LLC; RANO, LLC; Uptown Grill; LLC; Uptown Grill of Destin, LLC; K&L Investments, LLC; and Robert's Gumbo Shop, LLC are all wholly owned by Hicham Khodr

The Court will begin by outlining the facts that spawned this prolix litigation. It will then outline the circuitous procedural history by which the matter arrived at this juncture.

## I. Factual Background

For many years prior to Hurricane Katrina, the Shwartz family owned and operated Camellia Grill. Under the Shwartz family ownership, the restaurant on Carrollton Avenue was the only location of operation. In 1999, Shwartz formed CGH for the sole purpose of holding federally registered trademarks associated with the restaurant.

In August of 2005, the city of New Orleans was decimated by the landfall of Hurricane Katrina. Shwartz relocated to Grenada, Mississippi in the wake of the storm, and Camellia Grill remained closed. At some point during the year following Katrina, Shwartz and Khodr negotiated the sale of Camellia Grill. In August of 2006, the parties, through various entities, executed three contracts: (1) the Cash Sale, (2) the Bill of Sale, and (3) the License Agreement.

The Cash Sale was executed on August 11, 2006. Pursuant to the Cash Sale, Michael Shwartz sold the immovable property located at 626 Carrollton Avenue (the home of Camellia Grill) to RANO, LLC for the sum of $490,000.00.

On August 11, 2006, Michael Shwartz, Camellia Grill, Inc., and CGH executed a Bill of Sale in favor of Uptown Grill, LLC, for the sum of $10,000.00.

On August 27, 2006, CGH and Grill Holdings executed the License Agreement, in which the parties acknowledged that CGH held the now-disputed federally registered trademarks and granted Grill Holdings exclusive license to use the trademarks for the sum of $1,000,000.00, plus royalties. On

December 3, 2010, the Khodr Defendants opened a Camellia Grill restaurant on Chartres Street in the French Quarter.

## II. Procedural History

Sometime following the transactions in 2006, disagreements arose regarding the License Agreement and litigation ensued. The License Agreement was ultimately cancelled by a Louisiana state court based on the finding that Grill Holdings had breached its obligations under the contract.[5] That order has become final on direct appeal.

While the state judgment cancelling the License Agreement was on appeal, CGH filed suit in this Court alleging that Grill Holdings's continued use of the Camellia Grill trademarks violated the Lanham Act and seeking a preliminary and permanent injunction prohibiting Grill Holdings from using the marks, including the facade of the Camellia Grill building.[6] After this Court denied CGH's Motion for Preliminary Injunction, CGH filed a Motion for Voluntary Dismissal, which this Court granted.

While the Motion for Voluntary Dismissal was pending, Uptown Grill filed 13–6560, the lead case in this litigation. Uptown Grill alleges that it owns the trademarks that are located "within or upon the property" at 626 South Carrollton Avenue, that its continued use of the trademarks at that location is lawful, and that it is entitled to a declaratory judgment to that effect.

After the Motion for Voluntary Dismissal was granted and while the Uptown Grill claim was pending, CGH initiated suit in state court asserting

---

[5] *See The Grill Holdings, L.L.C. v. Camellia Grill Holdings, Inc.*, 120 So. 3d 294 (La. App. 4 Cir. 2013).

[6] *See Camellia Grill Holdings, Inc. v. City of New Orleans, et al*, No. 13–5148 (E.D. La. filed July 23, 2013).

claims for trademark infringement and breach of the License Agreement by filing a supplemental pleading in the then-closed state court litigation. The Khodr parties removed the litigation to this Court, invoking this Court's federal question jurisdiction under the Lanham Act, and the litigation was consolidated with the declaratory action. After the Court denied a motion to remand, CGH amended its complaint to explicitly assert Lanham Act claims. CGH also amended its Complaint to assert trade dress claims.

On July 9, 2015, this Court granted summary judgment to Uptown Grill in the lead action, finding that Uptown Grill owned all the Camellia Grill trademarks based on the plain language of the Bill of Sale. The Court found that the Shwartz parties' infringement claims asserted in the consolidated action were precluded by this ruling.

On appeal, the Fifth Circuit affirmed those portions of this Court's ruling with regards to the finding that Uptown Grill owns the trademarks within or upon the Carrollton Avenue location but reversed with regard to this Court's ruling that Uptown Grill owned the Camellia Grill trademarks at all other locations. The Circuit found that the relief granted by the Court was beyond that requested by the Khodr parties in the lead action. Accordingly, the case was remanded for a determination of what further relief, if any, is warranted. It appears to this Court that the lead action is now resolved, as the Khodr parties have obtained the relief sought—namely, a ruling that they own the trademarks "within or upon the Carrollton Avenue location." The Fifth Circuit's ruling did, however, serve to revive the Shwartz parties' claims for infringement as asserted in the consolidated action, as the Court has made no

determination relative to the use of the marks at locations other than Carrollton Avenue.

In the hopes of resolving these claims, the parties have filed a series of dispositive motions. CGH has filed a Partial Motion for Summary Judgment, asking the Court to declare (1) that CGH owns all the marks articulated in the License Agreement at all locations except 626 Carrollton Avenue, (2) that CGH owns a protected trade dress associated with Camellia Grill, (3) that the use of the Camellia Grill trade dress at both the Carrollton and Chartres locations violates the License Agreement, and (4) that operation of Camellia Grill at the Chartres location following termination of the License Agreement is a breach thereof. The Khodr Parties have responded in opposition and have filed their own motions for partial summary judgment asking the Court to dismiss CGH's trade dress, conversion, and damages claims. The Khodr Parties have also filed a Motion to Drop several Defendants pursuant to Federal Rule of Civil Procedure 21. The Shwartz parties oppose these Motions.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

---

[7] Fed. R. Civ. P. 56(c) (2012).
[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[9] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[10] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[11] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[12] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[13] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[14]

## LAW AND ANALYSIS

The instant Motions overlap in many respects and, in the Court's view, overcomplicate the questions remaining before the Court. First, the Shwartz

---

[9] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

[10] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[12] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[13] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[14] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

parties have filed a Motion for Partial Summary Judgment, wherein they ask the Court to rule in their favor on several of their claims. The Khodr parties oppose this Motion and have responded with three Motions of their own. First, they ask the Court for summary judgment on the Shwartz parties' claims for trade dress infringement and conversion. Second, they ask the Court for summary judgment in their favor dismissing the Shwartz parties' claims for damages. Finally, they ask the Court to drop various Khodr entities as Defendants pursuant to Federal Rule of Civil Procedure 21. The Court will address each Motion in turn.

## I. Shwartz Parties' Motion for Partial Summary Judgment (Doc 236)

In its Motion, Camellia Grill Holdings asks for the Court to declare (1) that it is the owner of the Camellia Grill trademarks at all locations other than Carrollton Avenue, (2) that it is the owner of the "trade dress" associated with Camellia Grill, including at the Carrollton unit, (3) that the use of the trade dress at the Carrollton and Chartres locations following the termination of the License Agreement is a breach of the obligations undertaken therein, and (4) that the operation of a Camellia Grill branded restaurant at the Chartres Street location following the termination of the License Agreement is a breach thereof. The Court will address these arguments in turn.

### A. Whether Shwartz Can Establish that Trademark Rights Exist at any Location Other Than as Associated with the Carrollton Location

The Shwartz parties first ask the Court to declare that they are the owner of the Camellia Grill trademarks at all locations other than Carrollton Avenue. In response, the Khodr parties have agreed not to contest the Shwartz

8

Parties' ownership of the registered trademarks outside of the Carrollton location. It appears that the Khodr parties entered into this stipulation in an attempt to put an end to this protracted litigation. This stipulation has, however, only served to complicate the Court's analysis. At oral argument, it became readily apparent that the parties did not agree as to the ramifications of this stipulation. While counsel for the Shwartz parties appeared to maintain that it would be within their rights to open a Camellia Grill restaurant in Orleans Parish, counsel for the Khodr parties indicated that, in their view, their ownership of the marks at Carrollton vests them with the exclusive rights to use of the marks within a reasonable geographic area.

Regardless, the Court has not been presented with any evidence to establish that there exist any Camellia Grill trademarks beyond the Carrollton location.[15] To understand the scope of the parties' rights at present, it is necessary that the Court begin by outlining the effect of the Bill of Sale's transfer of the Carrollton Avenue marks.

This Court previously held that that the Bill of Sale served to assign to Uptown Grill all marks and goodwill associated with the Carrollton location.[16] "[F]ollowing a proper assignment [of a trademark], the assignee steps into the shoes of the assignor."[17] Put differently, "if the assignment is valid, and the assignee carries on use of the mark as it was in the past, a continuity of the mark and its good will is preserved."[18] Accordingly, upon assignment of the

---

[15] Indeed, as discussed below, such a contention would conflict with the parties' prior representations.

[16] The Fifth Circuit affirmed this ruling.

[17] *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 593 (5th Cir. 2003) (internal citations omitted) (alteration in original).

[18] *Id.* (internal citations omitted) (alteration in original).

goodwill and marks associated with the Carrollton Avenue location of Camellia Grill, Uptown Grill obtained all the rights and privileges associated with these marks.

Throughout this litigation, the parties have consistently maintained that (1) prior to the transactions in question, CGH was the senior user of the marks in question, (2) that, prior to these transactions, the marks in question were used soley at the Carrollton Avenue location, and (3) that the Shwartz parties have made no efforts to operate another "Camellia Grill" branded restaurant before or since the execution of the Bill of Sale. This Court's prior ruling specifically held that the Bill of Sale unambiguously indicated that Camellia Grill, as operated on Carrollton Avenue, "was sold lock, stock, and barrel" to Uptown Grill, including all trademarks and goodwill associated with that location. The Fifth Circuit affirmed this ruling. There was no reservation of rights regarding the marks in the Bill of Sale. Accordingly, all rights in the Carrollton Avenue Camellia Grill trademarks passed to Uptown Grill. It is axiomatic that "[o]ne who first uses a distinct mark in commerce . . . acquires rights to that mark."[19] "A federal registration does not create the trademark; the trademark is acquired by use."[20] CGH's pre-Bill of Sale rights were acquired through its use of the marks at Carrollton Avenue, and those rights were, without reservation, transferred to Uptown Grill. The parties have not shown that there was any use of Camellia Grill trademark rights by any Shwartz entity at any other location; accordingly, they cannot have acquired trademark rights associated with any other location. The Court finds no basis

---

[19] *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1299 (2015).
[20] *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 669 (5th Cir. 2000)

to rule that the Shwartz parties have any remaining protectable interest under trademark law, and therefore denies their request to find that they are the owner of the Camellia Grill trademarks beyond Carrollton Avenue. Nevertheless, as discussed below, CGH may preclude the use of the registered trademarks by Khodr at other locations based on the contractual relationship between the parties.

**B. Whether the License Agreement Can Be Employed to Preclude Use of Any Trade Dress by the Khodr Parties**

The Shwartz parties next ask the Court to find that they are the owner of a Camellia Grill trade dress at all locations based on the language of the License Agreement.[21] The Court notes that the Shwartz parties have brought two claims with regard to Camellia Grill trade dress—a breach of contract claim averring that the Khodr parties cannot use any Camellia Grill trade dress under the terms of the License Agreement and a Lanham Act claim for trade dress infringement. In the context of this Motion, the Court will only address the breach of contract claims. The Lanham Act claims are separately addressed in the Court's discussion of the Khodr parties' Motion to Dismiss those claims.

As a preliminary matter, the Court finds that any dispute relative to the operation of the Carrollton location as a Camellia Grill is settled by this Court's previous ruling and the ruling of the Fifth Circuit. In its Motion, CGH repackages its trademark claims as trade dress claims in an apparent attempt to re-litigate the now-settled issue of whether Uptown Grill may operate the

---

[21] Whether the Shwartz parties hold any protectable trade dress interest under the Lanham Act will be fully addressed in the discussion of the Khodr parties' Motion for Summary Judgment on that issue.

Carrollton location as "Camellia Grill." It also argues that the use of this trade dress was a violation of the License Agreement. Both arguments are meritless.

The Bill of Sale transferred all "furniture, fixtures and equipment, cooking equipment, kitchen equipment, counters, stools, tables, benches, appliances, recipes, trademarks, names, logos, likenesses, etc., and all other personal and/or movable property owned by Seller located within or upon the property." The Court previously concluded that this language indicated that Camellia Grill, as operated on Carrollton Avenue, "was sold lock, stock, and barrel" to Uptown Grill, including all trademarks associated with that location. The Fifth Circuit affirmed this ruling. Left undisturbed on appeal was this Court's finding that the sale included all goodwill associated with the marks. "The purpose of trade dress protection, like trademark protection, is to secure the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing products."[22] The Bill of Sale necessarily included trade dress associated with this location, to the extent that any exists.[23] To hold otherwise would lead to an absurd result, as it would prevent Uptown Grill from making use of the property purchased in the Bill of Sale, including the marks and good will associated with this location. Accordingly, the Court finds any protectable trade dress relative to the Carrollton location was transferred as part of the Bill of Sale. The Shwartz parties' claims associated with the Carrollton location therefore fail.

---

[22] *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (internal citations omitted).

[23] Indeed, the distinctions between trademarks and trade dress have largely disappeared. *Alpha Kappa Alpha Sorority Inc. v. Converse Inc.*, 175 F. App'x 672, 677 (5th Cir. 2006).

The Shwartz parties also claim that they are the owners of a trade dress associated with all locations other than Carrollton Avenue. They assert that this "trade dress" exists by virtue of the fact that an undefined trade dress was mentioned in the License Agreement.[24] This argument is undercut by the fact that a court cannot enforce a trade dress until the elements of the same are reduced to a list.[25] Shwartz has not done so in the context of this Motion, preferring instead to rely on the License Agreement's undefined use of the term.[26] The proponent of the existence of a trade dress must articulate the elements constituting the putative trade dress.[27] The License Agreement fails to define even a single element of the alleged trade dress. Unlike the registered marks, which are defined with specificity in the License Agreement and are outlined in the registration documents, the elements of the putative trade dress are nowhere defined. Because of this failure, the License Agreement cannot be used to stop the use of any elements of a Camellia Grill trade dress. Accordingly, the Shwartz parties' Motion is denied with respect to all trade dress claims.

---

[24] The License Agreement's reference to trade dress is limited to the conclusory "All 'trade dress' associated with the 'Camellia Grill' Restaurant."

[25] *AMID, Inc. v. Medic Alert Found. United States, Inc.*, No. CV H-16-1137, 2017 WL 1021685, at *10 (S.D. Tex. Mar. 16, 2017) (citing § 8:3.The need to identify the elements of trade dress, 1 McCarthy on Trademarks and Unfair Competition § 8:3 (4th ed.)).

[26] The Shwartz parties have defined some elements of an alleged trade dress in their discovery responses, attached as an exhibit to a different Motion (Doc. 262-3 at 2). The Court notes, however, that no admissible evidence has been offered to verify the existence of these alleged elements. Furthermore, in this Motion, the Shwartz parties do not rely on this list, instead relying on the bare bones mention of "trade dress" in the license agreement. This is insufficient.

[27] *N.Y. Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 883 (S.D. Tex. 2014).

## C. Whether the License Agreement May be Used as a Predicate to Preclude the Khodr Parties' Use of the Camellia Grill Trademarks at Locations Other than Carrollton

The Shwartz Parties also ask the Court to enter judgment in their favor finding that the operation of the Chartres location after the termination of the License Agreement was a violation of that agreement and should subject the Khodr parties to contractual damages to be determined at trial. As noted above, the License Agreement was a contract between CGH and Grill Holdings whereby Grill Holdings contracted for use of certain intellectual property purportedly owned by CGH.[28] The agreement was ultimately terminated effective June 1, 2011. The Shwartz parties argue that the License Agreement contains provisions governing the parties' conduct in the event of termination, and that any use of the Camellia Grill trademarks by any Khodr entity following the cancellation of the license agreement is a breach thereof. The Khodr Parties respond, arguing that the termination of the License Agreement by the Louisiana state court means that it cannot be used as the predicate for a cause of action at this time. Alternatively, they argue that only Grill Holdings was a party to the License Agreement and that therefore Chartres Grill, LLC, the operator of the Chartres Location, cannot be bound by its terms. The Court will first address whether the License Agreement contains

---

[28] As noted above, the Court has doubts as to whether CGH still had any ownership interest in the licensed marks at the time the License Agreement was executed, having previously assigned its interest to Uptown Grill in the earlier-executed Bill of Sale. Regardless, the parties have consistently treated the License Agreement as valid and binding and the Court will give effect to their agreement to the extent permissible under the law.

enforceable provisions governing its termination and, if so, to which entities those provisions apply.

1. *Whether the Provisions of the License Agreement Governing Termination Remain Enforceable*

The Khodr parties argue that the termination of the License Agreement by the Louisiana state court means that the provisions thereof governing the parties' obligations in the event of termination may not be relied on as the predicate for a breach of contract claim. This argument ignores the plain language of the contract. The License Agreement contains terms governing the conduct of the parties thereto in the event of its termination—namely, that the licensee and its affiliates would cease use of the marks upon termination of the agreement. These conditions were triggered when the License Agreement was terminated by the Louisiana state court. Unlike the undefined "trade dress" discussed above, the subject registered marks were specifically identified. The Court is cognizant of the fact that the Khodr Parties have, throughout this litigation, represented that they intended to purchase only the Carrollton location as a fully functioning unit and that the License Agreement was intended to govern the use of the marks at any future locations. The Court is also, of course, aware of the fact that, in remanding this matter, the Fifth Circuit advised that "the court must take all facts and circumstances of the parties' contractual relations, litigation tactics, and applicable trademark law into consideration before reinstating relief plainly beyond the plaintiffs' pleadings."[29] Accordingly, though Uptown Grill may operate the Carrollton Location by virtue of the rights acquired in the Bill of Sale, the parties bound

---

[29] Doc. 255 at 16.

by the License Agreement's terms are contractually precluded from using the Camellia Grill marks at other locations.

### 2. Whether Chartres Grill, LLC is Bound by the License Agreement

The Shwartz parties contend that Chartres Grill, LLC is bound by the License Agreement as both an affiliate of Grill Holdings and a sub-licensee under the terms of the License Agreement. In support of this contention, the Shwartz parties have introduced both the affidavit of Hicham Khodr, wherein he states that Chartres Grill, L.L.C. was a sublicensee,[30] and the sublicensing agreement between Chartres Grill and Grill Holdings, LLC.[31] They also argue that the Fifth Circuit's finding that Uptown Grill, LLC was an affiliate of Grill Holdings should apply to Chartres Grill by analogy.

In pertinent part, the License Agreement provides that "the term 'Licensee' shall mean all affiliates, subsidiaries or related companies of Grill Holdings, LLC" and that the "Licensee shall cause any . . . sublicensee of any or all of the Marks to abide by all of the provisions of this Agreement . . . ."[32] At this juncture, based on both the evidence cited by the Shwartz parties and the ruling of the Fifth Circuit, it appears to this Court to be beyond genuine dispute that Chartres Grill is at the very least a sublicensee of Grill Holdings, LLC. Accordingly, it is bound by the terms of the License Agreement governing obligations upon termination, and its use of the "Camellia Grill" registered marks at any location other than Carrollton Avenue is a breach of the License Agreement.

---

[30] Doc. 195-4.
[31] Doc. 257-2.
[32] Doc. 11-3.

In summary, the Shwartz parties' Motion for Partial Summary Judgment is granted with respect with respect to the Shwartz parties' claim that the Khodr parties' use of the registered Camellia Grill trademarks outside of Carrollton Avenue is a breach of the License Agreement but their Motion is denied in all other respects.

## II. Khodr Parties' Motion for Partial Summary Judgment on Trade Dress and Conversion Claims (Doc. 262)

In their first Motion, the Khodr parties ask the Court to dismiss the Shwartz parties' claims for trade dress infringement and conversion. The Shwartz parties respond in opposition. The Court will separately address the arguments relative to trade dress and conversion.

### A. Whether the Shwartz Parties Can Prevail on a Trade Dress Infringement Claim Under the Lanham Act

The Shwartz parties bring claims under the Lanham Act for trade dress infringement based on the Khodr parties use of an alleged Camellia Grill trade dress. The Khodr Parties argue that the Shwartz Parties' claims for trade dress infringement must fail as a matter of law because (1) the Shwartz Parties have not alleged a protectable trade dress, (2) infringement has not occurred because customers are not likely to confuse the Khodr Defendants restaurants with a restaurant owned by CGH, and (3) the elements of the alleged trade dress are functional aspects of a diner. Trade dress "refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques

17

that characterize a particular product."[33]  If a trade dress is distinctive and nonfunctional it may be entitled to protection under section 43(a) of the Lanham Act.[34]

The Fifth Circuit follows a two-step analysis in determining whether there has been an infringement of trade dress under the Lanham Act.[35]  "First, the court must determine whether the trade dress is protected under the Act. This first inquiry encompasses three issues: (1) distinctiveness, (2) 'secondary meaning,' and (3) 'functionality.'"[36]  Second, "[i]f a court determines that the trade dress is protected because it is non-functional and is either distinctive or has acquired secondary meaning, the court must then determine whether the trade dress has been infringed. Infringement is shown by demonstrating that the substantial similarity in trade dress is likely to confuse consumers."[37]  The Court will address each step of the analysis in turn.

### A. Whether the Putative Trade Dress Qualifies for Protection

To qualify for protection, a trade dress must (1) either be inherently distinctive or have acquired secondary meaning and (2) be non-functional.[38] An arbitrary combination of otherwise functional elements can qualify for trade dress protection.[39]  The Khodr parties argue that (1) the Shwartz parties have insufficiently alleged the elements of a putative trade dress (2) even if the

---

[33] *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 565 (5th Cir. 2015) (internal citations and quotation marks omitted).

[34] *Id.*

[35] *Allied Marketing Grp.*, 878 F.2d at 813.

[36] *Id.*

[37] *Id.*

[38] *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir.1998), abrogated on other grounds by *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001).

[39] *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991), aff'd sub nom. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992).

elements are sufficiently alleged, they are not inherently distinctive and have not acquired secondary meaning, and (3) that the elements are all functional and do not qualify for trade dress protection. The Court will address each of these arguments in turn.

### 1. Elements of the Putative Trade Dress

The Khodr parties argue that the Shwartz parties' trade dress claims must fail because they have not sufficiently identified the elements of the putative trade dress. "When alleging a trade dress claim, the plaintiff must identify the discrete elements of the trade dress that it wishes to protect."[40] In response, the Shwartz parties point to discovery responses wherein they indicate that the elements of the trade dress include (1) the "straw popping" routine, (2) U-shaped counters, (3) audible order calling routine, (4) pink and green wall scheme, (5) separate pie cases on the rear wall at both ends of the cooking line, (6) stainless steel stemmed stools with green cushions, (7) individual counter checks handed to each customer, (8) fluted metal design under the counters and above the cooking line. The Court finds that this is sufficient to put the Khodr parties on notice of the elements of the putative trade dress.

### 2. Whether the Identified Elements are Inherently Distinctive or Have Acquired Secondary Meaning

The Khodr parties argue that the Shwartz parties cannot carry their burden of proving that the trade dress at issue is inherently distinctive or has acquired secondary meaning. "[C]ourts have differentiated between marks that are inherently distinctive—i.e., marks whose intrinsic nature serves to

---

[40] *Test Masters Educ. Servs.,* 791 F.3d at 565.

identify their particular source—and marks that have acquired distinctiveness through secondary meaning—i.e., marks whose primary significance, in the minds of the public, is to identify the product's source rather than the product itself."[41]  First, the Court must determine whether the proffered trade dress is protectable as "inherently distinctive."  In *Two Pesos, Inc. v. Taco Cabana, Inc.*, the Supreme Court held that a restaurant's décor could qualify as an inherently distinctive trade dress.[42]  There, the Court described the trade dress at issue as "a festive eating atmosphere having interior dining and patio areas decorated with artifacts, bright colors, paintings and murals."[43]  In a subsequent opinion, however, the Court noted that proof of secondary meaning should be required in cases where product design is at issue.[44]  The Court finds the trade dress here distinguishable from the trade dress at issue in *Two Pesos*, where the elements of the trade dress were decorative items more akin to product packaging.  Many of the elements identified by the Schwartz parties as trade dress are functional features of the diner more akin to product design; therefore, the Court should consider proof of secondary meaning.[45]

Secondary meaning can be established by examining the following types of evidence: "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey

---

[41] *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 205–06 (2000).

[42] 505 U.S. 763, 767 (1992).

[43] 505 U.S. at 765.

[44] *Wal-Mart Stores, Inc.*, 529 U.S. at 206 ("To the extent there are close cases, courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning.").

[45] These elements include the U-shaped counter, pie cases, audible order calling routine, and individual checks.

evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress."[46] The Shwartz parties rely primarily on inadmissible unauthenticated screenshots of websites in arguing that the trade dress has acquired secondary meaning in support to their arguments for consumer confusion.[47] The remaining admissible evidence, consisting of newspaper articles and Hicham Khodr's deposition testimony, only points to Khodr's intent in copying the look and feel of the Carrollton location. Though intent to copy is one relevant factor in examining secondary meaning, court have recognized "that evidence of a defendant's intent to copy is more relevant to analyzing whether protected trade dress has been infringed than to whether the trade dress is protected in the first place."[48] Nevertheless, the Shwartz parties have pointed to evidence of intent to copy in support of a finding of secondary meaning. The admissible evidence submitted by the Shwartz parties, though scant, is sufficient to create a genuine issue of material fact as to whether the putative trade dress has acquired secondary meaning.

3. *Whether Their Functional Nature Precludes Trade Dress Protection*

Even assuming that the Shwartz parties can carry their burden and establish secondary meaning, the Khodr parties argue that the elements identified are functional aspects of a diner and not entitled to trade dress

---

[46] *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998).

[47] *See Crochet v. Wal-Mart Stores, Inc.*, No. 6:11-01404, 2012 WL 489204, at *4 (W.D. La. Feb. 13, 2012) (citing *U.S. v. El–Mezain*, 664 F.3d 467 (5th Cir.2011)) ("The Fifth Circuit has also held that postings from the Internet "constitute classic hearsay rather than personal knowledge.").

[48] *AMID, Inc. v. Medic Alert Found. United States, Inc.*, No. CV H-16-1137, 2017 WL 1021685, at *20 (S.D. Tex. Mar. 16, 2017).

protection. Though functional features may not qualify for protection in isolation, "a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection."[49] Here, though many of the identified elements of the putative trade dress are indeed functional aspects of a diner, they are combined with nonfunctional elements in an arbitrary fashion. Accordingly, their functional nature does not necessarily preclude protection under the Lanham Act.

### B. Whether there is likelihood of confusion

The Court finds that, even assuming that there exists some protectable interest in a Camellia Grill trade dress, there can be no claim for trade dress infringement under the Lanham Act because there is no possibility of confusion.[50] "Infringement is shown by demonstrating that the substantial similarity in trade dress is likely to confuse consumers."[51] "It is, of course, also undisputed that liability under [the Lanham Act] requires proof of the likelihood of confusion."[52] If the plaintiff fails to present sufficient evidence for a reasonable jury to find in its favor on any element of an infringement claim, then judgment as a matter of law should be entered for the defendant.[53] The Shwartz parties maintain that the use of an alleged Camellia Grill trade dress at the Chartres location will cause consumers confusion as to the source of the

---

[49] *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991), aff'd sub nom. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763 (1992).

[50] The Court makes no finding as to whether any Shwartz entity holds such an interest. Indeed, it would appear to the Court that such a finding would be precluded by the fact that all intellectual property associated with the Carrollton location was acquired by Uptown Grill.

[51] *Allied Mktg. Grp.,* 878 F.2d at 813.

[52] *Two Pesos, Inc.,* 505 U.S. at 769.

[53] *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 504 (6th Cir. 2013).

product; however, it is undisputed that they do not operate a Camellia Grill at any location. Indeed, the Shwartz parties' arguments are based on the premise that consumers will confuse the Khodr-operated Chartres location with the Khodr-operated Carrollton location. The fallacious nature of this argument is facially apparent, as there can be no confusion as to the source of a product when the two competing locations are owned and operated by the same entities. Accordingly, there can be no consumer confusion, as consumers cannot confuse the Chartres location with any Shwartz-operated Camellia Grill. Any trade dress infringement claim must therefore fail. The Shwartz parties' Lanham Act trade dress infringement claims are dismissed.

## B. Sufficiency of the Conversion Claims

The Khodr parties next ask the Court to dismiss the Shwartz parties' claims for conversion. They argue that such a claim is inapplicable in cases involving intellectual property lacking a physical manifestation. This Court agrees. Conversion takes place when any of the following occurs:

> A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.[54]

A chattel is defined as "[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject

---

[54] *Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So.2d 853, 857 (La. 1998).

matter of real property."[55] Accordingly, conversion is not applicable to incorporeal movables such as the intellectual property rights at issue in this matter.[56] Such a finding conforms with the nationwide consensus regarding the applicability of conversion in trademark infringement cases.[57] Accordingly, the Shwartz Parties' claims for conversion are dismissed.

## III. The Khodr Parties' Motion for Summary Judgment on Plaintiffs' Claims for Damages

The Khodr parties next ask the Court to find that, even if the Shwartz Parties' trademark and trade dress infringement claims are proven, damages are unavailable as a matter of law under both state and federal law. The Court will separately address the claims for damages under federal and state law.

### A. Availability of Damages Under Federal Law

The Court notes that it has previously found the Shwartz parties' Lanham Act claims for trademark and trade dress infringement are without merit. Accordingly, this portion of the motion is moot.

Nevertheless, in an abundance of caution, the Court will address the parties' arguments. The Lanham Act allows a party that successfully proves trademark infringement to recover damages in certain circumstances, subject to principles of equity.[58] Accordingly, an award of damages is not automatic even where a party proves infringement.[59] Rather, the Court must consider

---

[55] BLACK'S LAW DICTIONARY (8th ed.2004).
[56] *BASF Agrochemical Prod. v. Unkel*, No. 05 CV 1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006).
[57] 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:9.50 (4th ed.).
[58] 15 U.S.C. § 1117.
[59] *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 350 (5th Cir. 2002).

the following factors, as outlined by the Fifth Circuit in *Pebble Beach Co. v. Tour 18 I Ltd.*:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.[60]

This list of factors is not exhaustive.[61] The Khodr Parties argue that these factors indicate that an award of damages is inappropriate based primarily on their alleged good faith belief in their right to use the marks based on the License Agreement and the rulings of the various courts that have weighed in on this protracted matter. The Shwartz parties respond, disputing the Khodr parties' good faith and arguing that issues involving a party's state of mind are not well suited for summary judgment.[62] This Court holds that even assuming that the Shwartz parties have a claim for trademark infringement under the Lanham Act, based on the undisputed facts they are unable to pursue a claim for damages. It cannot be seriously disputed that any use of the Camellia Grill trademarks prior to the Fifth Circuit's ruling was in good faith, as it was based first on the License Agreement and then on the rulings of this Court. Second, no sales have been diverted to the Khodr parties because there is no Camellia Grill restaurant operated by the Shwartz parties from which to divert sales. Third, even if Shwartz could successfully prove up an infringement claim, injunctive relief would afford him sufficient protection. Finally, this matter does not involve any consumer confusion or implicate the public interest. The

---

[60] *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998).

[61] *Id.*

[62] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991).

Khodr parties do not contend that any unreasonable delay is present. Accordingly, on balance, the Court finds that an award of damages under the Lanham Act is not warranted.

## B. State Law Claims for Damages

The Khodr parties argue that the Shwartz parties' Louisiana law claims for damages based on state trademark infringement law must fail. They also argue that, to the extent that the Shwartz parties have asserted a claim under the Louisiana Unfair Trade Practices Act, they may not claim treble damages due to their failure to comply with the plain language of the statute. This Court agrees on both counts. Indeed, the Court has previously held that the Shwartz parties' claims for trademark infringement are necessarily governed by the Lanham Act, not state law, as the trademarks are federally registered.[63] Regardless, Louisiana Revised Statutes § 51:222 provides that damages are not available "unless the acts have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive." For the reasons outlined above, such damages are not available.

The Shwartz parties' claims for treble damages under LUTPA are foreclosed by the plain language of the statute. Treble damages may only be awarded where a plaintiff has sent notice of the unfair trade practice to the attorney general, who has then sent such notice to the defendant.[64] If these steps are not followed, treble damages are unavailable.[65] The Shwartz parties concede that the appropriate notice was not filed. Accordingly, treble damages are unavailable under LUTPA.

---

[63] Doc. 50.

[64] La. Rev. Stat. § 51:1409.

[65] *Laurents v. Louisiana Mobile Homes, Inc.*, 689 So. 2d 536, 542 (La. App. 3 Cir. 1997).

## VII. Khodr Parties' Motion to Drop (Doc. 266)

Finally**, t**he Khodr Parties filed a Motion to Drop Defendants Robert's Gumbo Shop, LLC, K&L Investments, LLC, RANO, LLC, and Uptown Grill of Destin, LLC pursuant to Federal Rule of Civil Procedure 21. They argue that these parties are entities that are wholly extraneous to this action and are therefore misjoined. The Shwartz parties respond, arguing that relief pursuant to Rule 21 is inappropriate as they have asserted their infringement claims against all of these entities based on a single business enterprise theory of liability. Rule 21 applies as follows:

> As its caption indicates, Rule 21 is a mechanism for remedying either the misjoinder or nonjoinder of parties. Its text is silent as to what constitutes misjoinder or nonjoinder, however. The cases make it clear that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a). Thus, Rule 21 applies when the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact. A misjoinder of parties also frequently is declared because no relief is demanded from one or more of the parties joined as defendants. Thus, Rule 21 has been invoked to drop John Doe defendants when plaintiffs have failed to include allegations of specific wrongdoing committed by the fictitious defendants. Misjoinder also may be found when no claim for relief is stated against one or more of the defendants, or one of several plaintiffs does not seek any relief against defendant and is without any real interest in the controversy.[66]

The Court agrees that Rule 21 is an inappropriate avenue for relief for these Defendants. The Shwartz parties have set forth a claim that these and all

---

[66] § 1683 What Constitutes Misjoinder and Nonjoinder, 7 FED. PRAC. & PROC. CIV. § 1683 (3d ed.).

other entities owned by Hicham Khodr constitute a single business enterprise, and that they should therefore be held solidarily liable for the claims asserted in this action. Though there is no evidence on the record to support this allegation, these parties have not filed a dispositive motion relative to these claims. This Motion is therefore denied.

## CONCLUSION

For the foregoing reasons, the pending motions are disposed of as follows: Shwartz parties' Motion for Partial Summary Judgment (Doc. 236) is **GRANTED** with respect to Shwartz's claim that the Khodr parties' use of the registered Camellia Grill trademarks outside of Carrollton Avenue is a breach of the License Agreement but **DENIED** in all other respects; the Khodr parties' Motion for Partial Summary Judgment on Trade Dress and Conversion (Doc. 262) is **GRANTED**, the Motion for Partial Summary Judgment on Damages (Doc. 264) is **GRANTED**, and the Khodr parties' Rule 21 Motion to Drop Parties (Doc. 266) is **DENIED**.

New Orleans, Louisiana this 26th day of May, 2017.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**