# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UPTOWN GRILL, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-6560**<br>**c/w 14-810; 14-837** |
| **MICHAEL LOUIS SHWARTZ, ET AL** | **SECTION: "H"(4)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Camellia Grill Holdings, Inc. (Doc. 305) and a Motion to Dismiss filed by Grill Holdings, L.L.C.; K&L Investments, LLC; Hicham Khodr; Rano, L.L.C.; Robert's Gumbo Shop, LLC; Uptown Grill of Destin, LLC; and Uptown Grill, LLC (Doc. 306). For the following reasons, the Motion to Dismiss is DENIED, and the Motion for Summary Judgment is GRANTED IN PART.

## BACKGROUND

The long and complicated factual and procedural background to this case has been outlined in this Court's previous decisions and need not be recounted here.[1] The following facts are pertinent to the motions now before the Court.

On July 9, 2015, this Court granted summary judgment to Uptown Grill in the lead action, finding that Uptown Grill owned all of the Camellia Grill trademarks based on the plain language of the Bill of Sale. This Court also found that CGH's infringement claims asserted in the consolidated action were precluded by this ruling.

On appeal, the Fifth Circuit affirmed those portions of this Court's ruling with regards to the finding that Uptown Grill owns the trademarks within or upon the Carrollton Avenue location but reversed with regard to this Court's ruling that Uptown Grill owned the Camellia Grill trademarks at all other locations. The Circuit found that the relief granted by this Court was beyond that requested by the Khodr parties in the lead action. Accordingly, the case was remanded for a determination of what further relief, if any, is warranted. The lead action is now resolved, as the Khodr parties have obtained the relief sought—namely, a ruling that they own the trademarks "within or upon the Carrollton Avenue location." The Fifth Circuit's ruling did, however, serve to revive CGH's claims for infringement as asserted in the consolidated action.

The parties filed a variety of cross-motions following the remand, which this Court addressed in its May 26, 2017 Order and Reasons.[2] This Court held that the Shwartz parties could not sustain their trade dress claims. The Shwartz parties do not own any trade dress rights relative to the Carrollton location because those protections were transferred by the Bill of Sale, cannot

---

[1] *See* Doc. 294.
[2] Doc. 294.

assert any trade dress claims based on the License Agreement beyond the Carrollton location because the License Agreement fails to articulate the elements constituting the putative trade dress, and cannot sustain a trade dress action under the Lanham Act because there is no possibility of consumer confusion.[3] With respect to trademarks, this Court held that while the Shwartz parties do not own any Camellia Grill trademarks anywhere, and therefore cannot assert a trademark claim under the Lanham Act, the License Agreement prohibits Grill Holdings and its affiliates, subsidiaries, and sublicensees, including Chartres Grill, from the use of such trademarks outside of the Carrollton location.[4]

This Court dismissed the Shwartz parties' claims for trade dress and trademark infringement under the Lanham Act, but in an abundance of caution held that even if such claims persisted, the Shwartz parties were not eligible for an award for damages on a Lanham Act claim.[5] Similarly, this Court held that although the Shwartz parties' claims for damages based on state trademark law were precluded, a damages award was unwarranted even if they were not.[6] Furthermore, this Court held that the Shwartz parties were not entitled to treble damages under the Louisiana Unfair Trade Practices Act.[7] This Court also dismissed the Shwartz parties' claim for conversion.[8]

The Khodr parties now move to dismiss CGH's claim for damages for breach of the License Agreement on the grounds that CGH failed to assert such a claim in any of its complaints. The Khodr parties also move to dismiss CGH's claim for attorney's fees, arguing that CGH failed to demand them pursuant to

---

[3] Doc. 294 at 10–13, 22–23.
[4] Doc. 294 at 8–11, 14–16.
[5] Doc. 294 at 25–26.
[6] Doc. 194 at 26.
[7] Doc. 294 at 26.
[8] Doc. 294 at 23–24.

the License Agreement and that no statute provides for their recovery. CGH opposes the motion to dismiss, arguing that it provided sufficient notice of the contract claim.

Independently, CGH moves for summary judgment that the Khodr parties violated the post-termination provisions of the License Agreement by operating Chartres Grill during three discrete time periods and that the measure of damages for such a breach is the disgorgement of profits and recovery of attorney's fees.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[9] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[11] The Court need not, however, accept as true legal conclusions couched as factual allegations.[12]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[13] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[14] Rather, the complaint must contain enough factual

---

[9] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[10] *Id.*
[11] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[12] *Iqbal*, 556 U.S. at 678.
[13] *Id.*
[14] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

4

allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[15]

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)."[16]

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[18]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[19] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[20] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[21] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to

---

[15] *Lormand*, 565 F.3d at 255–57.
[16] Edionwe v. Bailey, 860 F.3d 287, 291 (5th Cir. 2017) (quoting Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004)).
[17] Fed. R. Civ. P. 56 (2012).
[18] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[19] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[20] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[21] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[22] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[23] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[24]

## LAW AND ANALYSIS

I. **The Khodr Parties' Motion to Dismiss**

   **A. Claim for Breach of Contract**

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading make "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought."[25] The purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[26] "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."[27] Furthermore, Rule 54 authorizes and advises a court to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."[28]

CGH' Second Petition, Third Amended Complaint, and Fourth Amended Complaint (collectively, "Complaints") state enough facts to support a claim for contract damages and therefore such a claim will not be dismissed at this

---

[22] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[23] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[24] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[25] FED. R. CIV. P. 8.
[26] *Twombly*, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
[27] Johnson v. City of Shelby, 135 S. Ct. 346, 346 (2014).
[28] FED. R. CIV. P. 54.

6

stage. The Second Petition states that the License Agreement was declared to be terminated as of June 1, 2011 and that Grill Holdings continued to operate restaurants using the "marks" licensed in the License Agreement despite that judicial termination.[29] It further states that,

> The operation of the two restaurants by the defendant . . . using the once-licensed marks and service mark, following the effective date of termination of the License Agreement . . . constitutes conversion, and unfair trade practices and trade name/service mark infringement, entitling petitioner . . . to damages resulting from the unauthorized use of its previously licensed marks, service mark and trade dress.[30]

Additionally, paragraph fifteen of the Second Petition demands an injunction prohibiting the "continued unauthorized use of plaintiff's retained intellectual property in any of the ongoing restaurant operations, in violation and direct contempt of the prior Judgment rendered herein terminating the License Agreement under which the defendant's [sic] had been granted the use of said licensed marks."[31]

These allegations are sufficient to put the Khodr parties on notice that a breach of the License Agreement was at issue. The Complaint clearly alleges the existence of a contract. It also alleges a breach when it refers to the "continued unauthorized use of plaintiff's retained intellectual property."[32] Finally, it alleges the existence of damages by stating that the Khodr parties have benefitted from the unauthorized use of the licensed property. The failure to specifically plead for contract damages is irrelevant in light of Rule 54's broad provisions for relief.[33] With a trial still unscheduled, the Khodr party

---

[29] Case No. 14-810, Doc. 1-2 at 3.
[30] Case No. 14-810, Doc. 1-2 at 4.
[31] Case No. 14-810, Doc. 1-2 at 6.
[32] Case No. 14-810, Doc. 1-2 at 6.
[33] *See* Sapp v. Renfroe, 511 F.2d 172, 176 (5th Cir. 1975) ("A party may be awarded the damages established by the pleadings or the facts proven at trial even though only

7

defendants will not be prejudiced by allowing the breach of contract claim to survive.

Furthermore, the proposed pretrial orders in this case indicate that the Khodr parties had actual notice that CGH was pursuing a claim for breach of the License Agreement. The joint pretrial order of January 5, 2017, signed by both CGH and the Khodr parties, includes the following as contested issues of fact:

> Whether the continued use of the marks, as listed on Exhibit 1.1 of the License Agreement, and the trade dress developed by the Shwartz family for The Camellia Grill Restaurant, and the use of the Louisiana service mark "Camellia Grill" initially following the effective termination date of June 1, 2011 through December 1, 2013, and between July 10, 2015 and at least as of December 19, 2016, was an action or condition which may have suggested to the public that the Licensee had any rights to the marks or trade dress, or was associated with Licensor, as prohibited in ¶12.1 of the License Agreement.
>
> . . .
>
> Whether the continued use of the Marks and trade dress set forth in Exhibit 1.1 of the License Agreement, following the effective date of termination, by the licensee, its related or affiliated parties, or its sublicensee, was a breach of the provisions of § 12.1 and § 12.2 of the License Agreement.[34]

Setting aside the issue of whether a pretrial order signed by all parties but not adopted by the Court is binding, it provides clear evidence that the parties were aware that the breach of the License Agreement was a live issue.[35]

---

injunctive relief was demanded in the complaint, unless such damages are foisted upon the parties by the court, or unless the failure to demand such relief prejudiced the opposing party.").

[34] Doc. 282 at 10–11.

[35] Similar paragraphs appear in the July 2, 2015 joint proposed pretrial order. *See* Doc. 201 at 12, 15.

The cases that the Defendant Khodr parties cite do not address whether a plaintiff may recover under a new legal theory for a set of facts already pled, but rather concern whether plaintiffs pled enough facts to put the defendants on notice of the basis of their claims. In *Anderson v. U.S. Department of Housing & Urban Development*, the court held that plaintiffs failed to plead a claim related to a voucher program when they only alleged facts related to "a totally different course of conduct."[36] Here, the course of conduct that CGH alleged constituted conversion and infringement is the same as constitutes breach of contract. In the non-binding *Jang v. Boston Science Scimed, Inc.*, the Third Circuit affirmed a trial court's refusal to consider a claim for breach of contract because the complaint contained only a "bare recital of the elements of a breach-of-contract claim."[37] Here, CGH identified the specific contract at issue, the License Agreement, the conduct that constituted a breach, the Khodr parties' ongoing operation of restaurants using the previously licensed marks, and the damage that CGH suffered, the profits from that operation. In *Herster v. Board of Supervisors of Louisiana State University*, the court held that the plaintiffs' complaints did not contain factual allegations that would have put the defendants on notice of a failure to pay claim.[38] And in *Snider v. New Hampshire Insurance Co.*, the court denied plaintiffs the ability to present evidence of negligent hiring, training, and supervision when the plaintiffs' complaint contained only allegations of vicarious liability.[39] An employer's negligent hiring or supervision necessarily involves acts by the employer that are separate from the negligent acts of the employee, unlike here, where the

---

[36] Anderson v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008).
[37] Jang v. Boston Sci. Scimed, Inc., 729 F.3d 357, 367 (3d Cir. 2013).
[38] Herster v. Bd. of Supervisors of La. State Univ., 221 F. Supp. 3d 791, 795, n.16 (M.D. La. 2016).
[39] Snider v. New Hampshire Ins. Co., No. 14-2132, 2016 WL 3278695, at *1 (E.D. La. June 15, 2016).

9

acts of the Khodr parties that constitute conversion and infringement are essentially the same as those constituting breach of the License Agreement.[40]

At its core, the Khodr parties' argument seeks an application of the now rejected theory of the pleadings doctrine.[41] Accordingly, their Motion to Dismiss CGH's breach of contract claim is denied.

### B. Claim for Attorney's Fees

The Khodr parties also move to dismiss CGH's claim for attorney's fees pursuant to Section 17.2 of the License Agreement. That section provides that, "In the event any Party hereto institutes an action or proceeding to enforce any rights under this Agreement, the party prevailing in such an action or proceeding shall be paid all reasonable attorneys' fees and costs."[42] The Khodr parties argue that the section does not survive the termination of the License Agreement. This Court already held that the plain language of the License Agreement makes the post-termination prohibitions on the use of the covered marks in the License Agreement remain effective after its termination. An action to enforce that prohibition is an action to enforce a right under the License Agreement, and Section 17.2 therefore applies to CGH's breach of contract claim. CGH has stated a valid claim under the Rule 12(b)(6) standard, and the Khodr parties' Motion to Dismiss the claim for attorney's fees is accordingly denied.

## II.  CGH's Motion for Summary Judgment

---

[40] *See id.*
[41] *See* 5 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1219 (3d ed. 2017) ("The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage . . . ."). Nor is this an instance in which *res judicata* applies, as the Khodr parties argue, because the contract claim is part of the same suit that was removed to this Court.
[42] Doc. 11-3 at 15.

10

CGH moves for summary judgment on the issue of whether the Khodr parties breached the post-termination provisions of the License Agreement and on the issue of the proper measure of damages for such a breach. This Court already held that the License Agreement contains post-termination provisions prohibiting the Khodr parties bound by the agreement from using certain categories of intellectual property outside of the Carrollton location.[43] Those provisions refer to "Marks," which the License Agreement defines to mean a) all Camellia Grill marks registered with the United States Patent and Trademark Office, b) all trade dress associated with the Camellia Grill restaurant, c) rights to the blueprints and specifications developed for additional Camellia Grill restaurants, and d) all menus and recipes developed by or used in the Camellia Grill restaurant.[44] This Court specifically held that the use of the registered marks was a breach of the License Agreement, but that the License Agreement was too indefinite to prohibit the use of an undefined "trade dress."[45]

**A. Whether the Khodr Parties Breached the License Agreement**

CGH seeks a judgment recognizing that the Khodr parties breached sections 12.1 and 12.2 of the License Agreement by operating the restaurant at Chartres Street using covered marks during three time periods. The Court already held that Chartres Grill, LLC is bound by the License Agreement.[46] The Court will address each of the time periods in turn.

> i. **From the Termination of the License Agreement to the Finality of the State Court Judgment**

---

[43] *See* Doc. 294 at 12, 15.
[44] *See* Doc. 11-3 at 1, 12, 20.
[45] Doc. 294 at 17.
[46] Doc. 294 at 16.

11

CGH seeks summary judgment that the Khodr parties breached the License Agreement from the date the License Agreement was terminated, June 1, 2011, to the date that the state court judgment finding that the License Agreement was terminated became final, November 1, 2013. The Khodr parties argue that they were permitted to continue operating as if the License Agreement was still in effect during this time period because they took a suspensive appeal of the judgment declaring the License Agreement to be terminated.

A suspensive appeal is one that "suspends the effect or the execution of an appealable order or judgment."[47] In order to take a suspensive appeal of a judgment other than for a sum of money, a party must furnish security "at an amount sufficient to assure the satisfaction of the judgment, together with damages for the delay resulting from the suspension of the execution."[48] Here, CGH seeks damages resulting from the Khodr parties' violation of the Licensing Agreement during the suspension of the state court judgment. The fact that the Louisiana Code of Civil Procedure includes damages of this type in the appeal bond indicates that a suspensive appeal does not prevent the appellant from incurring additional debts during the appeal. Rather, the appellant may avoid the execution of the judgment by demonstrating that he will be able to pay exactly those type of damages.

While Louisiana courts have not squarely ruled on the issue, their decisions consistently imply that an appellant continues to incur additional obligations during a suspensive appeal. In *Beno's Inc. v. Professional Gaming Technology*, a party suspensively appealed a judgment that its contract to place

---

[47] LA. CODE CIV. P. art. 2123.
[48] LA. CODE CIV. P. art. 2124.

video poker machines in a chain of restaurants had already terminated.[49] The district court awarded 100% of the proceeds from the machines after the termination date to the restaurants and ordered the appellant to remove the machines.[50] The suspensive appeal stayed the effect of the order to remove the machines, and the parties entered into a new contract dividing the revenue from the machines while they remained in place pending the appeal.[51] While interpreting that agreement, the appellate court reasoned that the appellant entered into the new contract because by leaving the machines in place it "was taking a risk that it would incur . . . operational costs, as well as not receive any revenues for [the restaurants'] use of its machines if our court affirmed the trial court's decision."[52] In effect, the suspensive appeal was a gamble by the appellant. With the order to remove stayed, it could continue to operate the machines, but at the risk of having to turn over all proceeds for that period if the trial court's decision was affirmed.

In *Soniat v. Clesi*, a property owner sued to dissolve a purchase agreement for lack of payment by the buyer.[53] The trial court dissolved the contract and awarded liquidated damages in the form of interest on the purchase price from the time of default to the time when the judgment became final.[54] The buyer made a suspensive appeal.[55] The Louisiana Supreme Court, while ruling on a jurisdictional issue related to the appeal, observed that the appellant was clearly not trying to delay the proceedings with his objection because he was incurring additional damages every day.[56] Just as in *Beno's*

---

[49] Beno's Inc. v. Prof'l Gaming Tech., 848 So. 2d 778, 779–80 (La. App. 3 Cir. 2003).
[50] *Id.*
[51] *Id.* at 783.
[52] *Id.*
[53] Soniat v. Clesi, 115 So. 644, 644 (La. 1928).
[54] *Id.*
[55] *Id.*
[56] *Id.* at 646.

*Inc.*, the implicit understanding is that a suspensive appeal only defers execution; it does not suspend the legal effects of a later-affirmed judgment.

Here, the Khodr parties suspensively appealed the trial court judgment finding that the License Agreement was terminated. The effect of that suspensive appeal was that CGH could not have obtained an injunction forcing the Khodr parties to comply with the post-termination provisions of the agreement, nor could CGH have executed a money judgment against the Khodr parties. But the suspensive nature of the appeal did not give the Khodr parties the right to escape the application of the judgment ultimately affirmed, that is that the License Agreement was terminated as of June 1, 2011. Therefore Grill Holdings and Chartres Grill, LLC are liable for the use of any covered marks between June 1, 2011 and November 1, 2013.

As evidence of Khodr parties' use of covered marks during this time period, CGH states in its Statement of Uncontested Facts that the signage at the Chartres location continued to say "Camellia Grill" until after November 1, 2013 and cites to an affidavit of Norman Lowe who personally observed that fact.[57] In their Statement of Material Facts submitted along with their opposition to CGH's Motion for Summary Judgment, the Khodr parties dispute that the affidavit is competent evidence, but do not dispute the underlying fact that the Chartres location was labelled as a Camellia Grill during this time period.[58] Pursuant to Local Rule 56.2, which states that, "[a]ll material facts in the moving party's statement will be deemed admitted . . . unless controverted in the opponent's statement," the Court finds that there is no dispute of material fact that Chartres Grill, LLC violated the License Agreement between June 1, 2011 and November 1, 2013.

---

[57] *See* Docs. 305-1, 236-2.
[58] *See* Doc. 325-1.

14

### ii. From This Court's Ruling to the Fifth Circuit's Opinion

CGH also seeks summary judgment that the Khodr parties breached the License Agreement from the date of this Court's judgment that CGH retained no rights to the Camellia Grill marks, July 10, 2015, to the date that the Fifth Circuit reversed that decision, March 23, 2016. The Khodr parties respond that they are entitled to rely on the Joint Stipulation as to Stay Pending Appeal, which states that the "effects of the Judgment[s] rendered . . . shall be stayed, except to specifically allow . . . Chartres Grill, LLC to operate its restaurant on Chartres Street, as a 'Camellia Grill', pending the appeal."[59] The Khodr parties argue that the Stipulation constitutes permission to use the marks covered by the License Agreement.

The Court finds that the Khodr parties overstate the impact of the Joint Stipulation. The agreement is not one in which CGH, as holder of the right to prevent the use of the covered marks under the License Agreement, gave permission to the Khodr parties to continue using the marks. The judgment of this Court made it clear, at that time, that CGH had no such rights. Instead, the Joint Stipulation is one in which CGH, based only on its power as appellant to stay the enforcement of the judgment against it, agreed not to seek a stay of a portion of the judgment. Even if CGH had not sought any stay at all, it would still be entitled to damages during the time this Court's judgment was in effect if the appeal ultimately led to a finding that the Khodr parties were liable to CGH in some way. Actions taken in accordance with a district court judgment that is subsequently overturned are not immune from damages.[60] Therefore

---

[59] Doc. 218.
[60] *C.f.* Amado v. Microsoft Corp., 517 F.3d 1353, 1362 (Fed. Cir. 2008) (holding that a court should consider the parties' new economic circumstances when calculating damages for patent infringement taking place during a stay of an injunction).

15

Grill Holdings and Chartres Grill, LLC are liable for the use of the covered marks between July 10, 2015 and March 23, 2016.

As evidence of Khodr parties' use of covered marks during this time period, CGH states in its Statement of Uncontested Facts that covered marks were employed at the Chartres location "some time between August 7, 2015. . . and December 24, 2015," and provides a newspaper article and affidavit reporting on such use.[61] Again, the Khodr parties do not dispute that the Chartres location employed covered marks during this time period. Any such use is a breach of the License Agreement. However, as CGH has not provided sufficient evidence of the actual dates on which the covered marks were employed, the issue of the duration of the breach will be left for trial.

### iii. From The Fifth Circuit's Opinion to the Present

CGH finally seeks summary judgment that the Khodr parties breached the License Agreement from the date of the Fifth Circuit's opinion, March 23, 2016, to the last date on which the Khodr parties used the covered marks. The Khodr parties respond only that they were "optimistic" that this Court might find that their use of the marks was not subject to damages or that the License Agreement was not binding.[62] A party breaching a contract owes damages regardless of whether the party is in good faith. Therefore Grill Holdings and Chartres Grill, LLC are liable for the use of the covered marks after March 23, 2016.

As evidence of the Khodr parties' use of covered marks during this time period, CGH states in its Statement of Uncontested Facts that covered marks were employed at the Chartres location "following" the Fifth Circuit's decision

---

[61] Doc. 305-1 at 2.
[62] Doc. 325 at 8.

and continued through January 15, 2017.[63] CGH refers to an affidavit reporting such use in September and December of 2016.[64] Again, the Khodr parties do not dispute this fact. Any such use is a breach of the License Agreement, but the actual duration of the breach will be left for trial.

**B. The Measure of Damages for Breach of the License Agreement**

CGH also moves for summary judgment setting the measure of damages for the Khodr parties' breaches of the post-termination provisions of the License Agreement, arguing that it ought to be the disgorgement of profits, plus actual damage sustained by CGH and attorney's fees.[65] CGH cites to no statute or case law applying disgorgement to a breach of contract claim, instead presenting only cases proceeding under the Lanham Act. As CGH's Lanham Act claims have been dismissed, those cases are inapposite.

Instead, the Louisiana Civil Code sets the measure of damages for breach of contract as "the loss sustained by the obligee and the profit of which he has been deprived."[66] There is no legal support to deviate from that measure. Accordingly, summary judgment is granted finding the measure of damages to be the loss sustained by CGH and the profit of which it has been deprived. Furthermore, this Court agrees with CGH that the royalty rates specified in the License Agreement are not an appropriate measure of damages because those provisions of the License Agreement are no longer in force, and to apply them would be to re-write the License Agreement.[67] From that

---

[63] Doc. 325 at 8.
[64] Doc. 305-1 at 2–3.
[65] CGH also argues that the Court was wrong to have held that an award for damages under Louisiana Revised Statutes § 51:222 requires that the infringing acts have been committed with the intent to cause confusion. Regardless of CGH's specific point, § 51:222 is inapplicable to this case because it applies only to marks registered with the state of Louisiana, and the marks covered by the License Agreement were registered with the federal government. *See* LA. REV. STAT. § 51:222.
[66] LA. CIV. CODE art. 1995.
[67] *See* Doc. 305 at 3.

premise CGH argues that the Khodr parties must pay more than the specified royalty rates in order to penalize their breach. Punitive damages, however, are not available in Louisiana unless authorized by statute, and are not available for breach of contract.[68] CGH may recover only for the damage that it proves that it sustained because of the Khodr parties' breach, including the profits that CGH would have earned had the Khodr parties not breached the post-termination provisions of the License Agreement. CGH argues that those lost profits include the revenue it could have earned by re-licensing the marks to another party or by operating its own restaurants using the marks. While those are conceptually the correct measure of damages under the Louisiana Civil Code, in this particular case the Court has already held that CGH does not have any rights to the marks outside of the post-termination provisions of the license agreement.[69] CGH cannot operate or license the marks, and therefore will likely have a difficult time proving that it lost any profit. Injunctive relief, of course, is available.

CGH also argues that the License Agreement allows it to recover attorney's fees as the prevailing party. An action to enforce the post-termination prohibitions on the use of covered marks is an action to enforce a right under the License Agreement, and Section 17.2 therefore applies to CGH's breach of contract claim. However, the Court defers a finding as to whether CGH is the prevailing party in this action until the conclusion of the litigation.

---

[68] *See* Chambers v. NASCO, Inc., 501 U.S. 32, 54 (1991); Albert v. Farm Bureau Ins. Co., 940 So. 2d 620, 622 (La. 2006).
[69] *See* Doc. 294 at 9–11.

**CONCLUSION**

For the foregoing reasons, the pending motions are disposed of as follows: the Khodr parties' Motion to Dismiss is DENIED; CGH's Motion for Summary Judgment is GRANTED with respect to the Khodr parties' breach of the License Agreement as detailed above, GRANTED in that the measure of damages for that breach of contract will be the loss sustained by CGH and the profit of which it has been deprived, GRANTED in that Section 17.2 of the License Agreement is binding and applies to this action, and DENIED in all other respects.

New Orleans, Louisiana this 8th day of February, 2018.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**