UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UPTOWN GRILL, LLC, ET AL. | * | CIVIL ACTION NO. 13-6560 |
| | * | |
| | * | SECTION: "H"(1) |
| VERSUS | * | |
| | * | JUDGE JANE TRICHE MILAZZO |
| | * | |
| MICHAEL LOUIS SCHWARTZ, ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| *********************************** | * | |

REPORT AND RECOMMENDATION

Before the Court is the Motion to Fix Attorney's Fees filed by Camellia Grill Holdings, Inc. ("CGH") (Rec. Doc. 362), which was referred to the undersigned by the District Court (Rec. Doc. 357). For the following reasons, it is RECOMMENDED that the Motion to Fix Attorney's Fees be granted in part and denied in part as follows and that CGH be awarded $18,972 in attorney's fees and $3,390.56 in expenses.

Background

The lead case in these consolidated cases was filed on December 3, 2013, by Uptown Grill, L.L.C. ("Uptown Grill") against Michael Louis Shwartz, CGH, and Camellia Grill, Inc. (collectively, "Shwartz Parties") seeking a declaratory judgment that Uptown Grill as purchaser of certain personal property pursuant to an August 2006 Bill of Sale, is the owner of the logo "The Camellia Grill" wherever used within or upon the building located at 626 South Carrollton Avenue in New Orleans, Louisiana. A dispute between the parties had started much earlier in two state court lawsuits that were removed to the Eastern District of Louisiana and consolidated with the lead case in 2014. In the consolidated cases, CGH seeks judgment against Hicham Khodr; The Grill Holdings, LLC ("Grill Holdings"); Chartres Grill, LLC; RANO, LLC; Uptown Grill; Uptown Grill of Destin, LLC; K&L Investments, LLC; and Robert's Gumbo Shop, LLC (jointly referred

1

to as the "Khodr parties"). Prior to removal, one of the state court lawsuits resulted in termination as of June 1, 2011, of a certain License Agreement between CGH as owner of the trademark "Camellia Grill" and Grill Holdings as licensee for the use of the "Camellia Grill" trademarks, As a result Grill Holdings ceased using the "Camellia Grill" trademarks except for at the 626 South Carrollton location, and Grill Holdings paid the attorney's fee award. Uptown Grill, L.L.C. v. Shwartz, 817 F.3d 251, 255 (5th Cir. 2016).

On summary judgment affecting all three cases, the District Court ruled on July 10, 2015, that pursuant to the Bill of Sale, Uptown Grill was the rightful owner of all of the "Camellia Grill" trademarks, not just as used at the 626 South Carrollton location.  The Shwartz parties appealed the ruling. On August 7, 2015, the parties entered a Joint Stipulation into the record agreeing to stay the effects of the District Court's judgment pending the appeal, "except to specifically allow all Camellia Grill operations at 626 S. Carrollton Avenue in New Orleans to remain in place and to allow Chartres Grill, LLC to operate its restaurant on Chartres Street, as 'Camellia Grill.'"

On March 23, 2016, the United States Fifth Circuit Court of Appeals affirmed the District Court as to the "Camellia Grill" marks "within or upon" the 626 South Carrollton location. Uptown Grill, 817 F.3d at 258. But as to all other uses of the Camellia Grill trademarks, the Fifth Circuit held that the District Court's *sua sponte* holding went beyond the relief requested by Uptown Grill without providing sufficient adversarial testing. Id. at 259-60. The Fifth Circuit observed that (1) Uptown Grill had consistently taken the position in its pleadings that it owned the Camellia Grill trademarks at the 626 South Carrollton location, not "all" uses of the Camellia Grill trademarks and (2) Uptown Grill as an affiliate of the licensee under the License Agreement had, in practice, respected the state court ruling terminating the License Agreement. Id. Accordingly, the Fifth Circuit reversed and remanded to the District Court for a determination of whether Uptown Grill

"should be bound by its pleadings, representations in court, and practice with respect to a License Agreement for which its affiliate, Grill Holdings, paid a million dollars." Id. at 260.

On remand, the District Court partially granted the Shwartz Parties' motion for partial summary judgment on May 26, 2017, and held that the License Agreement prohibited Grill Holdings from using the "Camellia Grill" trademarks outside of the Carrollton location. The District Court also granted the motion for partial summary judgment filed by Uptown Grill, Grill Holdings, Chartres Grill, L.L.C., Uptown Grill of Destin, L.L.C., Rano, L.L.C., K&L Investments, L.L.C., Robert's Gumbo Shop, L.L.C., and Hicham Khodr (collectively "Khodr Parties"), holding the Shwartz Parties could not sustain their trade dress claims. The Court further held that the Shwartz Parties could not sustain their trademark claim because the Shwartz Parties do not own the "Camellia Grill" trademarks.

On February 9, 2018, the District Court partially granted a motion for summary judgment filed by CGH. The District Court held there was no fact issue that CGH had violated the post termination provisions of the License Agreement by using the Camellia Grill name at the Chartres Street location between June 1, 2011, and November 1, 2013, and again between July 16, 2015 and March 23, 2015. The Court determined that the measure of damages for the breach would be the losses sustained by the Shwartz Parties and the profit of which they were deprived. A telephone status conference was held with the District Judge on February 15, 2018 to discuss a Motion of Certificate of Appealability filed by CGH. According to the Khodr Parties, the Schwartz Parties admitted that there were no additional issues to try. The Khodr Parties say that "[i]t was not until the Court brought up the issue of the contract claim that Shwartz seized on the opportunity to

litigate that final issue."[1] (Rec. Doc. 370). A bench trial was held on March 28, 2018. The District Court issued findings of fact and conclusions of law on April 17, 2018, holding that CGH had not shown that it had sustained any compensable damages as a result of Chartres Grill's breach of the License Agreement. The District Court also held that Chartres Grill and Grill Holdings are liable to CGH for the attorney's fees and costs "that CGH incurred obtaining *only* the judgment that Chartres Grill, LLC and The Grill Holdings, LLC breached the post termination provisions of the License Agreement." (Rec. Doc. 358) (emphasis added). Indeed, there is no dispute that Paragraph 17.2 of the License Agreement provides that: "[i]n the event any party hereto institutes an action or proceedings to enforce any right arising under this Agreement, the Party prevailing in such action or proceeding, shall be paid all reasonable attorney's fees and costs." The District Court referred to the undersigned magistrate judge the matter of calculating the attorney's fees incurred. CGH filed its Motion to Fix Attorneys' Fees on May 1, 2018. The Khodr parties opposed. CGH filed a reply memorandum and the Khodr parties filed a sur-reply. Thereafter the undersigned ordered the parties to submit supplemental briefing regarding what portion of the time entries submitted to the Court are properly attributable its claim that Chartres Grill breached the post-termination provisions of the License Agreement, the only claim for which CGH has been found entitled to attorney's fees.

<u>Law and Analysis</u>

1. *Award of Attorney's Fees*

The parties do not dispute that Louisiana law on the calculation of attorney's fees applies to this diversity jurisdiction case concerning a contract governed by Louisiana law. "The Louisiana

---

[1] Although strongly challenging the Khodr Parties' argument that only attorney's fees incurred after the date of this status conference were in furtherance of the breach of the License Agreement issue, CGH does not appear to dispute the Khodr Parties' characterization of the status conference.

Supreme Court [and the Rules of Professional Conduct] . . . have placed an obligation on courts to inquire into the reasonableness of attorney fees stipulated in contractual agreements." Cashman Equip. Corp. v. Smith Marine Towing Corp., No. CV 12-945, 2013 WL 12229038, at *4 (E.D. La. June 27, 2013), report and recommendation adopted, No. CV 12-945, 2013 WL 12228976 (E.D. La. July 12, 2013) (quoting Teche Bank & Tr. Co. v. Willis, 631 So. 2d 644, 646 (La. Ct. App. 1994)). Thus, Louisiana courts consider the following factors in making an award of attorney's fees:

> ultimate result obtained; responsibility incurred; importance of the litigation; amount involved; extent and character of labor performed; legal knowledge; attainment and skill of the attorney; number of appearances made; intricacies of facts and law involved; diligence and skill of counsel; court's own knowledge; and ability of party liable to pay.

S. Jackson & Son, Inc. v. Aljoma Lumber, Inc., 637 So. 2d 1311, 1313 (La. Ct. App. 1994) (quoting Julius Cohen Jeweler, Inc. v. Succession of Jumonville, 506 So. 2d 535, 541 (La. Ct. App.)). These factors are most useful when guiding an award of fees that is not based on hours worked. For example, in Jackson, the court of appeals was reviewing an award of $750 in attorney's fees that appears to have been awarded without a consideration of hours worked. 637 So. 2d at 1313. In Julius Cohen the court of appeal awarded attorney's fees of 10% of the principal amount awarded. 506 So. 2d at 541.

The United States Court of Appeals for the Fifth Circuit has held that factors used by Louisiana courts are "very similar to those used in the federal "lodestar"" method. Chevron USA, Inc. v. Aker Mar. Inc., 689 F.3d 497, 505 (5th Cir. 2012). In Chevron, the Fifth Circuit found that the District Court did not err in applying the lodestar method to determine attorney's fees where Louisiana law applied. Id. Relying on Chevron, the court in Cashman also used the two-step

lodestar approach where there was an arguable possibility that Louisiana law applied. 2013 WL 12229038, at *4.

Under the lodestar method, the Court first computes the lodestar "by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work." Matter of Fender, 12 F.3d 480, 487 (5th Cir. 1994). The party requesting fees bears the burden of proving that the rates charged and hours expended are reasonable. See Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); Walker v. U.S. Dep't of Hous. & Urban Dev., 99 F.3d 761, 770 (5th Cir. 1996); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995).

"The court then adjusts the lodestar upward or downward depending upon the respective weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)." Fender, 12 F.3d at 487. The Johnson factors are:

> 1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) award in similar cases.

Id.

2. *Hourly Rate*

Although not explicitly required to do so by the Louisiana reasonable attorneys' fees standard, the Court first considers the hourly rate of CGH's attorney. Attorney Irl Silverstein represents that he has over 40 years of experience as an attorney. He charged CGH at an hourly rate of $200. The Khodr Parties do not dispute the reasonableness of this rate which, as CGH points out, is below the market rate. See, e.g., Adams v. City of New Orleans, No. CIV.A. 13-

6

6779, 2015 WL 4606223, at *3 (E.D. La. July 30, 2015) (collecting cases). The Court finds that $200 is a reasonable hourly rate for Silverstein's work.

   3. *Hours Expended*

   CGH has been awarded attorney's fees and costs incurred in obtaining a judgment that Chartres Grill and Grill Holdings breached the post termination provisions of the License Agreement. Thus, even before considering the reasonableness of the fees expended, the Court must determine whether the fees CGH now seeks were actually incurred in obtaining that judgment. As the Khodr Parties point out, this lawsuit involved many other claims, including CGH's claims that Grill Holdings was not authorized to operate the Carrollton Street location, that CGH is the owner of the marks everywhere except the Carrollton Street location, that CGH is the owner of the "trade dress" associated with Camellia Grill, that the Shwartz Parties were entitled to damages for conversion, that the Shwartz Parties were entitled to damages under the Lanham Act, and that the Shwartz Parties were entitled to damages under Louisiana law.

   In CGH's Motion, it sought attorneys' fees for 394.77 hours of work and $6,290.98 in expenses. The Khodr Parties opposed, arguing that much of the time expended by CGH's counsel was not spent in pursuit of the License Agreement breach claim. The Khodr Parties admit that work performed after a February 15, 2018,[2] status conference with the District Court was dedicated to the License Agreement claim, but argue that CGH had failed to show that any time prior to that date was spent litigating that claim. Indeed, the time entries do not explain what issue was being worked on, stating instead things like "prepare subpoena" or "review and reply to client emails."

   The Court ordered CGH to submit a supplemental memorandum explaining what portion of the time entries it had submitted are properly attributable to its claim that Chartres Grill and

---

[2] Erroneously referred to as a February 22, 2018, status conference in the Khodr Parties' Memorandum in Opposition.

Grill Holdings breached the post-termination provisions of the License Agreement. CGH filed a supplemental memorandum along with an affidavit listing the time entries that CGH's counsel determined represented actual work in pursuit of the breach of contract claim. In his affidavit, Silverstein swears that he is familiar with the activities undertaken on behalf of CGH related to the enforcement of the License Agreement and that the revised list "represents an accurate statement of the time spent on said matter and as billed to the client." (Rec. Doc. 381-1). The new total number of hours that CGH seeks to be compensated for is 171.6[3] hours with expenses of $3,842. In response to the supplemental memorandum, the Khodr Parties argue that the time entries and supplemental filing still fail to show the nature of the work being performed. Indeed, the time entries listed in the affidavit do not contain any more detail regarding the issues the work concerned.

CGH explains that the timesheets begin with the drafting and filing of the Second Amending and Supplemental Petition by CGH because the District Court held that pleading sufficiently alleged a breach of contract claim. CGH argues that the timesheets also necessarily include preparation for and the deposition of Khodr because the deposition included questions regarding the continued use of the previously licensed trademarks. CGH argues that the timesheets include time spent preparing and filing the appeal to the Fifth Circuit because the Fifth Circuit's ruling ultimately led to the reinstatement of the breach of contract claims.

The Court begins with the time entries listed in Silverstein's affidavit included with CGH's supplemental filing. The Court appreciates that Silverstein has removed almost 60% of the time spent he spent this litigation as being unrelated to the breach of the License Agreement claim. But, the Court finds that further reductions are necessary.

---

[3] The time sheet provided lists total hours of 162.85, but this does not include 8.75 hours of post-judgment time entries. For purposes of the motion, the court considers that CGH has requested compensation for all 171.6 hours.

Although the District Court found the allegations in the Second Supplemental and Amending Petition sufficient to put the Khodr parties on notice that a breach of the License Agreement was at issue, this does not necessarily mean that the breach of contract claim was actively litigated from the filing of that pleading. The first document in the record that this Court has found where one of the parties explicitly raised arguments regarding breach of the post termination provisions of the License Agreement is the Motion for Partial Summary Judgment filed by the Shwartz Parties on September 27, 2016. (Rec. Doc. 236-1, at 3-4). Even that motion contained multiple claims and arguments. On July 24, 2017, CGH moved for summary judgment as to whether Grill Holdings had breached the License Agreement and if so what damages CGH would be entitled to. Clearly CGH was pursuing its breach of the License Agreement claim before February 15, 2018.  But it is harder to accept CGH's argument that time spent on earlier pleadings should be considered incurred in litigating the breach of contract claim. CGH points to the preparation of the Second Supplemental and Amending Petition, the deposition of Khodr, and the Fifth Circuit appeal, none of which explicitly refer to a breach of the post termination provisions of the License Agreement. Nonetheless, the Court agrees that this earlier time was, to some extent, part of prosecuting their claim for breach of the License Agreement, and that related fees were at least partially incurred in pursuing the breach of contract claim.

Accordingly, subject to further reductions discussed below, the Court finds it appropriate to consider as related the fees and costs incurred on or after September 23, 2016[4] in full. Upon this Court's calculation, the time entries for this time period total 81.36 hours and the expenses for this time period total $2939.12. At a rate of $200 per hour, 81.36 hours results in $16,272 in attorney's fees. As to fees and expenses incurred before September 23, 2016, as delineated by CGH in its

---

[4] Although the motion was filed on September 27, 2016, it appears an affidavit was prepared on September 24, 2016, and photocopies made on September 23, 2016, that would have been related to the motion.

revised submission, the Court finds it appropriate to reduce the fees by 50% in light of the multiple purposes of such earlier work. Upon this Court's calculation, the time entries for this time period total 90.24 hours and the expenses total $902.88. Reduced by 50%, these amount to 45.12 hours and $451.44 in expenses. At a rate of $200 per hour, 45.12 hours results in attorney's fees of $9,024. Thus, the total possible award at this stage of the analysis is attorney's fees of $25,296 and expenses of $3,390.56.

4. *Reasonableness Factors*

a. *Ultimate Result Obtained*

CGH was successful in proving that Grill Holdings and Chartres Grill had breached the post termination provisions of the License Agreement. This alone entitles CGH to attorney's fees pursuant to the License Agreement. Nonetheless, in considering the ultimate result obtained, the Court must note that CGH was not successful in showing that it had suffered any damages as a result of the breach.[5] Further, it is unclear what the substantive result of this litigation is for CGH. It has prevented the Khodr Parties from using the Camelia Grill marks outside of the Carrollton location. But because it was unable to prove that it owns those same marks, it is unclear whether it would be entitled to use them elsewhere or whether it would be entitled to license another entity to use the marks elsewhere. The Court finds the results obtained justify reduction of the requested attorney's fee award by 25%. Thus, the attorney's fee portion of the award shall be reduced to $18,972. Expenses will not be similarly reduced and remain at $3,390.56.

---

[5] Grill Holdings points out that CGH was not successful in many of the claims it raised. The Court has already addressed this issue in limiting the attorney fee award to attorney's fees incurred in pursuing the claim for breach of the post-termination provisions of the License Agreement.

### b.  Responsibility Incurred

The Khodr Parties concede that Silverstein had ultimate responsibility in this matter. The time entries confirm that no other attorneys were involved. The Khodr Parties point out that Shwartz began this litigation with counsel from Mississippi and enrolled other counsel at various times. It is unclear how this affects the conclusion that CGH only seeks reimbursement for Silverstein's fees and that he had primary responsibility for the case. This factor does not justify increase or reduction of the requested award.

### c.  Importance of the Litigation

CGH points to the long history of this case to show that the litigation was important to both sides. The Khodr Parties agree with that statement. This factor does not justify increase or reduction of the requested award.

### d.  Amount Involved

CGH argues that millions of dollars in "profits" benefitting the Khodr Parties was at issue. But as the Khodr Parties point out, no damages were awarded at all. The Court finds this factor sufficiently addressed by its analysis of the results obtained.

### e.  Extent and Character of Labor Performed

CGH argues that the sheer number of pleadings indicates the extent and character of labor performed. Indeed, there are 382 entries into the docket at this time. As to this factor, the Khodr Parties challenge the time spent by CGH's counsel on other, unsuccessful claims in this litigation. This factor does not justify increase or reduction of the requested award.

### f.  Legal Knowledge

CGH points to the pleadings filed in both the district court and court of appeals as setting forth concise and relevant arguments. The Khodr Parties do not dispute the competence of CGH's

counsel, but insists that he should not be awarded fees higher than the standard rates for litigating a contract dispute. This factor does not justify increase or reduction of the requested award.

> g. *Attainment and Skill of the Attorney*

CGH again points to the pleadings filed in both the district court and court of appeals. The Khodr Parties refer the Court to its arguments in the Results Obtained Section. The Khodr Parties do not challenge the rate charged by Silverstein. This factor does not justify increase or reduction of the requested award.

> h. *Number of Appearances Made*

CGH submits that over 50 motions were submitted by the parties and appearance of counsel was required either in person or by telephone, for seventeen hearings or status conferences and six depositions. The Khodr Parties concede there were over fifty motions, but they insist that the vast majority had nothing to do with the breach of contract claim. This factor is sufficiently addressed by the presentation of time records.

> i. *Intricacies of Facts and Law Involved*

CGH submits that this case involved "both state contract law and federal trademark law, including but not limited to the rights and obligations of the parties to the License Agreement, the effect of the License Agreement upon any of the affiliates and/or subsidiaries of the Licensee, the application of Louisiana state law arising out of the breach of the License Agreement, the application of federal law, in particular, the Lanham Act, arising out of the alleged infringement of the federally registered licensed trademarks, the trade dress, and the applicability of state remedies for the breach and infringement." The Khodr Parties respond that this summary encompasses more than the limited issue for which CGH has been awarded attorney's fees:

pursuant to Section 17.2 of the License Agreement. That claim, they say, was simply an issue of contract interpretation. This factor does not justify increase or reduction of the requested award.

### j. Diligence and Skill of Counsel

CGH submits its counsel showed diligence and skill. It points to the pleadings filed, Silverstein's forty years of practice, and his peer rating of A+ on Martindale-Hubbell. The Khodr Parties do not dispute this, but say these facts do not overcome the fact that the Shwartz Parties failed in all the claims except for the breach of contract claim, which resulted in no monetary damages. This factor does not justify increase or reduction of the requested award.

### k. Court's Own Knowledge

The parties agree that the Court has knowledge of the proceedings, which has been incorporated into the Court's analysis of the time expended by CGH's counsel on this case. This factor does not justify increase or reduction of the requested award.

### l. Ability of Party Liable to Pay

CGH submits that the ability of the Khodr Parties to pay should not be a question. It attaches financial statements of Chartres Grill that were produced in discovery. The Khodr Parties argue that the financial statements should be stricken and not considered because they were merely proffered at trial. The Khodr Parties do not address the issue of whether they have the ability to pay the attorney's fees sought, other than to say that Chartres Grill had been operating at a loss and was permanently closed in December 2017. This factor does not justify increase or reduction of the requested award.

### Conclusion

For the foregoing reasons, the Court has determined that the reasonable attorney's fees and costs that CGH incurred in obtaining the judgment that Chartres Grill and Grill Holdings breached

the post termination is attorney's fees of $18,972 and expenses of $3,390.56. Accordingly, it is RECOMMENDED that CGH's Motion be granted in part and denied in part and that Grill Holdings be ordered to pay to CGH $22,362.56 in reasonable attorney's fees and expenses.

<u>Objections</u>

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 20th day of July, 2018.

Janis van Meerveld
United States Magistrate Judge