## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UPTOWN GRILL, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6560** |
| **MICHAEL LOUIS SHWARTZ, ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Pending before the Court are four Motions: (1) Shwartz's[1] Motion to Dismiss for Lack of Jurisdiction Under the *Rooker-Feldman* Doctrine (Doc. 442), (2) Khodr's[2] Motion for Rule 11 Sanctions (Doc. 456), (3) Khodr's Motion for Partial Summary Judgment on Trade Dress Injunction (Doc. 435), and (4) Shwartz's Motion for Summary Judgment (Doc. 414). The Court heard oral argument on all four Motions on November 18, 2020 and took the matter under advisement.

For the following reasons, Shwartz's Motion to Dismiss for Lack of Jurisdiction Under the *Rooker-Feldman* Doctrine is DENIED, Khodr's Motion for Rule 11 Sanctions is DENIED, Khodr's Motion for Partial Summary Judgment on the Issue of Standing is DENIED, and Shwartz's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

---

[1] For ease of reference, Michael Shwartz and the Shwartz-owned entities (Camellia Grill Holdings, Inc.; and Camellia Grill, Inc.) are collectively referred to as "Shwartz."

[2] Hicham Khodr and the Khodr-owned entities (Uptown Grill, L.L.C.; Uptown Grill of Destin, L.L.C., The Grill Holdings, L.L.C., RANO, L.L.C., K&L Investments, L.L.C., Robert's Gumbo Shop, L.L.C., and Chartres Grill, L.L.C.) are collectively referred to as "Khodr."

## BACKGROUND

This case arises from two transactions that took place in 2006: 1) the sale of the New Orleans-based Camellia Grill restaurant, and 2) the licensing of the rights to Camellia Grill intellectual property. After approximately twelve years of litigation—seven of which have been before this Court—the parties are still fighting over what rights they were afforded under those two initial documents—the Bill of Sale and the License Agreement. This Court has already stated that, "[a]t every turn, the parties have seemingly operated with the goal of extending, rather than ending, this litigation."[3] Unfortunately, the Motions now before the Court exemplify this disturbing pattern.

Although this Court has outlined the parties' long and litigious history many times before, the varying scope and subject matter of the pending Motions again require a detailed recitation of the factual and procedural background.

### I.    Factual Background

Michael Shwartz's family owned the Camellia Grill restaurant on Carrollton Street for decades ("the Carrollton restaurant"). The Camellia Grill was operated through Michael Shwartz's wholly owned company, Camellia Grill, Inc. Michael Shwartz later formed Camellia Grill Holdings, Inc. ("CGH"), vesting in it the ownership of Camellia Grill's federally registered trademarks.

In 2006, following Hurricane Katrina, Michael Shwartz and Hicham Khodr negotiated the sale of the Carrollton restaurant. In August of 2006, the parties, through various entities, executed three contracts: (1) the Cash Sale, (2) the Bill of Sale, and (3) the License Agreement. The August 11, 2006 Cash Sale transferred the immovable property located at 626 Carrollton Avenue (the home of the Camellia Grill) to RANO, L.L.C. for $490,000. The August 11, 2006

---

[3] Doc. 294 at 2.

Bill of Sale transferred all "right, title and interest in and to the . . . tangible property located within or upon" the Carrollton restaurant, including "appliances, recipes, trademarks, names, logos, likenesses, etc."[4] The Bill of Sale was executed by Michael Shwartz, Camellia Grill, Inc., and CGH in favor of Uptown Grill, L.L.C. ("Uptown Grill"), for the sum of $10,000.00.

On August 27, 2006, CGH and Hicham Khodr's company, The Grill Holdings, L.L.C. ("The Grill Holdings"), executed the License Agreement, in which the parties acknowledged that CGH held the federally registered trademarks and granted The Grill Holdings exclusive license to use the trademarks for the sum of $1,000,000.00, plus royalties. The License Agreement expressly retains ownership of the marks to the Licensor, CGH, but permits The Grill Holdings the right to use certain defined "marks." These marks include all trade dress associated with the Camellia Grill restaurant.

The License Agreement also mandates that each of its provisions is binding upon all sublicensees. Hicham Khodr, through The Grill Holdings, made many of the Khodr-owned entities sublicensees to the License Agreement and used those entities to operate the Carrollton restaurant and new Camellia Grill-style restaurants. Particularly relevant to this litigation is a Camellia Grill-style restaurant operated by the sublicensee Chartres Grill L.L.C. ("Chartres Grill"), which operated from 2010 to 2017 on Chartres Street in the French Quarter ("the Chartres restaurant"). To date, however, the Carrollton restaurant is the only Camellia Grill-style restaurant in operation.

## II.   Procedural History

The parties' litigious history begins in 2008 and includes litigation in multiple courts. Only the details relevant to the pending Motions are outlined below.

---

[4] Doc. 442-6 at 1.

## A. State Court Litigation

In 2008, The Grill Holdings filed suit in the Civil District Court for Orleans Parish seeking a declaratory judgment as to whether CGH had the right to audit The Grill Holdings' books and records under the License Agreement.[5] The state district court ruled in CGH's favor, and the Louisiana Fourth Circuit Court of Appeal denied The Grill Holdings' application for supervisory writ. In denying the writ, the Fourth Circuit found the language of the License Agreement clear and explicit and required The Grill Holdings to submit to the audit.[6]

In 2011, CGH again filed suit in the Civil District Court for the Parish of Orleans, arguing that The Grill Holdings had breached the terms of the License Agreement and asking for the Agreement's termination. On appeal, the Louisiana Fourth Circuit affirmed the district court's holding that The Grill Holdings had breached the License Agreement.[7] In so holding, the Fourth Circuit also affirmed the applicability of the post-termination provisions of the License Agreement.[8] The post-termination provisions require The Grill Holdings to "avoid any action or the continuance of any condition which might suggest to the public that Licensee has any right to the Marks, or that Licensee continues to be associated with Licensor" and provide that "all rights and privileges granted to Licensee hereunder will immediately cease and will

---

[5] Khodr contends that Shwartz initially filed suit against The Grill Holdings in the United States District Court for the Northern District of Mississippi, but Shwartz voluntarily dismissed that claim, acknowledging improper venue. Khodr then filed the 2008 state court action in anticipation of Shwartz's refiled suit. *See* Doc. 450 at 5.

[6] *See* Doc. 442-1.

[7] The Grill Holdings, L.L.C. v. Camellia Grill Holdings, Inc., 120 So. 3d 294 (La. App. 4 Cir. 2013).

[8] *Id.* at 301–02.

revert to Licensor. Licensee will discontinue use of all Marks."[9] The Louisiana Supreme Court denied The Grill Holdings' application for writ.

Although Shwartz argues that the Louisiana courts' findings preclude this Court's consideration of the matters before it, Shwartz does not dispute the fact that only the License Agreement, not the Bill of Sale, was litigated in the state courts.

### B. Federal Court Litigation

In July of 2013, CGH filed its first federal action against Khodr in this Court.[10] In response to the Carrollton restaurant's nomination as a historical landmark, CGH filed suit against The Grill Holdings and the City of New Orleans alleging trademark infringement and deprivation of property rights without due process and seeking a preliminary and permanent injunction prohibiting the historical landmark designation.[11] CGH's requested preliminary injunction was denied, and CGH filed a Motion for Voluntary Dismissal, which this Court granted.[12]

On December 3, 2013, while the Motion for Voluntary Dismissal was pending, Uptown Grill filed a Complaint for Declaratory Relief, the lead action in this case, asking this Court to determine the parties' respective rights in the Camellia Grill trademarks within or upon the Carrollton restaurant. Shortly thereafter, Shwartz filed a "Supplemental and Amending Petition" in the closed state court matter against Hicham Khodr and various Khodr-owned entities, seeking damages for trademark infringement. Khodr removed the matter to this Court, and the actions were consolidated. Shwartz amended his

---

[9] *See* Doc 442-4 at 11.

[10] *See* Camellia Grill Holdings, Inc. v. New Orleans City, No. CIV.A. 13-5148, 2013 WL 4431344 (E.D. La. Aug. 16, 2013).

[11] CGH feared that the building's landmark status would preclude CGH from "requir[ing] the removal of the façade mark at the termination of the license agreement." *Id.* at *1.

[12] *See* Camellia Grill Holdings, Inc. v. New Orleans City, No. 13-5148, 2013 WL 6440505, at *1 (E.D. La. Dec. 9, 2013).

complaint to assert claims for trade dress infringement, as well as breach of contract for Khodr's continued use of Camellia Grill intellectual property following the termination of the License Agreement.

On July 10, 2015, this Court granted Uptown Grill's Motion for Summary Judgment. Shwartz appealed and, on March 23, 2016, the Fifth Circuit affirmed this Court's decision in part. The Fifth Circuit affirmed that (1) this Court had subject matter jurisdiction, (2) laches did not apply to Uptown Grill's claims related to the Bill of Sale, (3) the License Agreement could not be used as parol evidence to modify the terms of the Bill of Sale, and that (4) the Bill of Sale "clearly and unambiguously transfers to Uptown Grill the trademarks within or upon the Carrollton Avenue location."[13] The Fifth Circuit did, however, reverse this Court's finding that Uptown Grill owned the Camellia Grill marks beyond the Carrollton location as the issue was not briefed by the parties. The Fifth Circuit therefore remanded the case back to this Court to determine the scope of relief considering Uptown Grill's representations and practice with respect to the License Agreement.[14]

On remand, this Court addressed multiple motions for summary judgment and held a trial to determine damages. Shwartz again appealed. On March 29, 2019, the Fifth Circuit affirmed this Court's finding that the Bill of Sale assigned all Camellia Grill trademark and trade dress rights to Khodr and that Shwartz's claims for infringement under the Lanham Act must fail.[15] As for the License Agreement, the Fifth Circuit agreed that the License

---

[13] *See* Uptown Grill, L.L.C. v. Shwartz, 817 F.3d 251, 258 (2016).

[14] *Id.* at 260. Following the Fifth Circuit's opinion, on June 8, 2016, Shwartz filed a complaint in the Northern District of Mississippi whereby Shwartz "attempt[ed] to recover for his claimed loss of the Camellia Grill trademarks, by alleging fraud and misrepresentation during the transfer of the Camellia Grill trademarks." Shwartz v. Khodr, 733 F. App'x 215, 216 (5th Cir. 2018). The Northern District of Mississippi transferred the case to this Court, which subsequently dismissed Shwartz's claims. The Fifth Circuit affirmed. *Id.*

[15] Uptown Grill, LLC v. Camellia Grill Holdings, Inc., 920 F.3d 243 (5th Cir. 2019).

Agreement constituted a relative nullity under Louisiana law. A "relative nullity 'may be invoked only by the person in whose interest the ground for nullity [such as mutual mistake] was established, and may not be declared by the court on its own initiative.'"[16] As Khodr was not asking that the License Agreement be nullified, the Fifth Circuit found that it should be enforced "as far as possible."[17] The Fifth Circuit thus affirmed that Khodr's use of Camellia Grill trademarks at the Chartres location constituted a breach of contract. As for Shwartz's entitlement to relief, the Fifth Circuit affirmed that there were no compensable damages at issue and found that the scope of this Court's injunction—enjoining the various Khodr entities from using the marks "at any location other than the Carrollton Location"[18]—was proper.

Although the Fifth Circuit agreed with this Court's findings related to the Bill of Sale, Shwartz's Lanham Act claim, and Shwartz's trademark breach of contract claim, the circuit court reversed this Court's holding on Shwartz's trade dress breach of contract claim. This Court previously "held that Shwartz could not bring a breach of contract claim based on trade dress because the elements of [Camellia Grill's] putative trade dress were not defined in the License Agreement."[19] On appeal, however, the Fifth Circuit found that "the elements of a claimed trade dress need not necessarily be articulated in a contract for a party to enforce his rights under the contract."[20] Accordingly, the Fifth Circuit found that Khodr's use of Camellia Grill trade dress could constitute a breach of the License Agreement. Noting that this Court had previously identified eight alleged elements of Camellia Grill trade dress, the Fifth Circuit "remanded for proceedings to determine if Khodr breached the

---

[16] *Id.* at 250 (quoting LA. CIV. CODE art. 2031).

[17] *Id.*

[18] Doc. 358 at 3.

[19] *Uptown Grill,* 920 F.3d at 251.

[20] *Id.*

License Agreement by using the above-detailed alleged trade dress at the Chartres restaurant."[21]

### C. The Motions Currently Before the Court

The Fifth Circuit most recently remanded the action to determine whether Khodr breached the License Agreement by using Camellia Grill trade dress at the Chartres restaurant after the termination of the License Agreement. The Fifth Circuit clarified that, "[e]ven though we find all putative trade dress rights were assigned to Khodr in the Bill of Sale, we must still determine whether the License Agreement afforded Shwartz any enforceable contract rights."[22] Having held that the License Agreement was an enforceable contract between the parties, the Fifth Circuit essentially asks this Court to determine if Khodr violated the post-termination provisions of the License Agreement requiring Khodr to "avoid any action or the continuance of any condition which might suggest to the public that [Khodr] has any rights to the Marks, or that [Khodr] continues to be associated with [Shwartz]."[23] Shwartz's current Motion for Summary Judgment asks this Court to rule in his favor on this issue.

Following the filing of Shwartz's Motion for Summary Judgment, Khodr filed a Motion for Partial Summary Judgment on Trade Dress Injunction. In the Motion, Khodr argues that Shwartz lacks standing to request injunctive relief as Khodr is not currently participating in any activity that would constitute a breach of the post-termination provisions of the License Agreement.

Most recently, on August 14, 2020, Shwartz filed a Motion to Dismiss for Lack of Jurisdiction under the *Rooker-Feldman* Doctrine. In the Motion,

---

[21] *Id.* at 251.
[22] *Id.*
[23] Doc 442-4 at 11.

8

Shwartz contends that the state court judgments deprive this Court of jurisdiction, rendering void all decisions of both this Court and the Fifth Circuit related to Uptown Grill's request for declaratory relief.

In response to Shwartz's unexpected and consequential Motion to Dismiss, Khodr filed a Motion for Rule 11 Sanctions, arguing that the Motion to Dismiss seeks to relitigate already-litigated issues and is an attempt to "avoid the consequences of seven years of litigation."[24] Khodr therefore requests that this Court levy sanctions against Shwartz for "abusive and harassing" conduct.

Provided the significance of Shwartz's Motion to Dismiss for Lack of Jurisdiction Under the *Rooker-Feldman* Doctrine, this Court will address the *Rooker-Feldman* Motion first alongside Khodr's affiliated Motion for Rule 11 Sanctions. The Court will then address Khodr's Motion for Partial Summary Judgment on Trade Dress Injunction and conclude with Shwartz's Motion for Summary Judgment on Trade Dress.

## LEGAL STANDARD

### I.    Motion to Dismiss

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[25] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed

---

[24] Doc 456-1 at 2.
[25] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

facts.[26] The proponent of federal court jurisdiction bears the burden of establishing subject matter jurisdiction.[27]

## II.   Motion for Sanctions

Federal Rule of Civil Procedure 11 establishes that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that[—]to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[—]the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[28] "An attorney's conduct is judged . . . with an objective, not a subjective, standard of reasonableness."[29] "Reasonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the document."[30] A court may impose appropriate sanctions on an attorney or party that violates the Rule, but is not required to do so.[31]

## III.   Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[33] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is

---

[26] Den Norske Stats Oljesels kap As v. Heere MacVof, 241 F.3d 420, 424 (5th Cir. 2001).

[27] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

[28] FED. R. CIV. P. 11(b).

[29] Snow Ingredients, Inc. v. SnoWizard, Inc., 833 F.3d 512, 528 (5th Cir. 2016).

[30] *Id.* (quoting Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439, 444 (5th Cir. 1992)).

[31] *See* FED. R. CIV. P. 11(b) ("[T]he court *may* impose an appropriate sanction . . ." (emphasis added)).

[32] FED. R. CIV. P. 56.

[33] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[34]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[35] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[36] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[37]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[38] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[39] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[40]

---

[34] *Id.* at 248.

[35] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

[36] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).

[37] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[38] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted)).

[39] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[40] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

### I.  Shwartz's Motion to Dismiss for Lack of Jurisdiction Under the *Rooker-Feldman* Doctrine

In Shwartz's Motion to Dismiss (Doc. 442), Shwartz argues that this Court lacks subject matter jurisdiction to hear Uptown Grill's claims under the *Rooker-Feldman* doctrine. Khodr not only disputes the doctrine's application but also argues that the Court should disregard Shwartz's Motion to Dismiss as untimely under Federal Rule of Civil Procedure 60. Accordingly, this Court will address the applicability of Rule 60 before addressing the merits of Shwartz's Motion.

#### A. Federal Rule of Civil Procedure 60

Federal Rule of Civil Procedure 60 provides a mechanism by which a party may seek relief from a final judgment, order, or proceeding.[41] Khodr argues that Shwartz's Motion to Dismiss should be analyzed under Rule 60 as the Motion primarily seeks to void this Court's final orders and/or judgment granting Uptown Grill's request for declaratory relief. Khodr further argues that because the Motion should be analyzed under Rule 60, not Federal Rule of Civil Procedure 12(h)(3),[42] Shwartz's Motion to Dismiss is untimely. Although this Court disagrees with Khodr's analysis, this Court does find that Rule 60 applies and bars Shwartz's collateral attack on this Court's final rulings in favor of Uptown Grill.

As explained above, this case consists of two consolidated actions: Uptown Grill's action for declaratory relief and Shwartz's claims against Hicham Khodr and other Khodr-owned entities for trademark infringement,

---

[41] FED. R. CIV. P. 60.

[42] Shwartz argues that the Motion to Dismiss is timely in accordance with Federal Rule of Civil Procedure 12(h)(3). Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

trade dress infringement, and breach of contract. In 2015, this Court entered a judgment in favor of Uptown Grill, declaring Uptown Grill to be the owner of all Camellia Grill trademarks and dismissing Shwartz's claims.[43] On appeal, the Fifth Circuit affirmed that Uptown Grill owned the Camellia Grill marks at the Carrollton location but found that the issue of ownership beyond the Carrollton location had not been sufficiently litigated in this Court.[44] The Fifth Circuit accordingly remanded the case for "further proceedings . . . to determine the appropriateness of any further relief."[45]

In this Court's first Order and Reasons following remand from the Fifth Circuit, dated May 26, 2017, this Court found that Uptown Grill's request for declaratory relief, the "lead action," was resolved and that the Fifth Circuit's ruling served only to "revive" *Shwartz's claims* relative to the use of marks at locations other than Carrollton Avenue.[46] Shwartz's claims alone have been the subject of litigation since the Fifth Circuit's remand. Even if Uptown Grill's claims somehow persisted during that time, which this Court does not countenance, they were certainly finalized with the Fifth Circuit's 2019 opinion affirming this Court's rulings relating to the Bill of Sale. For all relevant purposes, therefore, Uptown Grill's claims have been fully and finally adjudicated.

In *Hall v. Hall*, the Supreme Court held that a single case in a consolidated action is independently appealable even if other cases within the action remain pending.[47] In reaching its holding, the *Hall* Court explained that "one or many or all of the phases of the several actions may be merged. But merger is never so complete in consolidation as to deprive any party of any

---

[43] *See* Doc. 206.
[44] *Uptown Grill*, 817 F.3d at 258–59.
[45] *Id.* at 260.
[46] *See* Doc. 294 at 5.
[47] 138 S. Ct. 1118 (2018).

substantial rights which he may have possessed had the actions proceeded separately."[48] Applying *Hall*'s reasoning to the current matter, it is clear that analysis under Rule 60 is warranted. Despite consolidation, Uptown Grill has a substantial right to finality after its rights have been definitively adjudicated. Shwartz's current Motion to Dismiss, however, seeks to disturb that right by voiding all orders and judgments of this Court granting Uptown Grill's claims for declaratory relief.[49] Accordingly, this Court holds that Rule 60 governs Shwartz's Motion to Dismiss.[50]

Federal Rule of Procedure Rule 60(b) provides the grounds upon which a party may seek relief from a final judgment. These grounds include:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

---

[48] *Id.* at 1130 (quoting 3 J. MOORE & J. FRIEDMAN, MOORE'S FEDERAL PRACTICE § 42.01, at 3050–51 (1938)).

[49] *See* Doc. 442 at 1 (moving this Court to dismiss Uptown Grill's claims for lack of subject matter jurisdiction).

[50] Although this Court acknowledges the limited case law wherein courts have applied Rule 60 to pending, consolidated actions, this Court agrees with the logic of those cases where they are available. *See e.g.,* Kurzweil v. Philip Morris Cos., Inc., No. 94 CIV. 2373 (MBM), 1997 WL 167043, at *3 (S.D.N.Y. Apr. 9, 1997) ("My September 1995 order dismissing plaintiffs' complaint for failure to state a claim was a final order terminating the litigation and finally determining the merits of the case, and judgment could have been entered immediately. The entry of the judgment was delayed only because [of ongoing proceedings in the consolidated case]. Plaintiffs' motion is addressed correctly to the September 1995 order and is timely filed under Rule 60(b).").

Usually, "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."[51] Motions under Rule 60(b)(4), however, do not follow the usual rules.

A judgment is void under Rule 60(b)(4) "'only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or it acted in a manner inconsistent with due process of law.'"[52] As Shwartz's Motion to Dismiss is challenging this Court's subject matter jurisdiction, it is appropriately analyzed as a motion under Rule 60(b)(4). Unlike the rest of Rule 60(b), "'Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not.'"[53] Further, as "the mere passage of time cannot convert an absolutely void judgment into a valid one," Rule 60(b)(4) motions are not subject to a time limit, and the court must void the judgment if it finds that subject matter jurisdiction was lacking.[54]

The caveat to this rule, however, is that "[a] district court's exercise of subject-matter jurisdiction, even if erroneous, is res judicata and is not subject to collateral attack through Rule 60(b)(4) if the party seeking to void the judgment had the opportunity previously to challenge jurisdiction and failed to do so."[55] In *Picco v. Global Marine Drilling Co.*, the plaintiff filed a Rule 60(b)(4) motion arguing that the district court's judgment was void because it was entered after the bankruptcy court entered an automatic stay and divested

---

[51] FED. R. CIV. P. 60(c)(1).
[52] Brumfield v. La. State Bd. of Educ., 806 F.3d 289, 298 (5th Cir. 2015) (quoting Williams v. New Orleans Pub. Serv., Inc., 728 F.2d 730, 735 (5th Circ. 1984)).
[53] *Id.* at 296 (quoting Carter v. Fenner, 136 F.3d 1000, 1005 (5th Cir. 1998)).
[54] Jackson v. FIE Corp., 302 F.3d 515, 523–24 (5th Cir. 2002).
[55] United States v. Hansard, No. 07-30090, 2007 WL 2141950, at *1 (5th Cir. July 26, 2007) (citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n.9 (1982); Picco v. Global Marine Drilling Co., 900 F.2d 846, 850 (5th Cir. 1990)).

the district court of jurisdiction.[56] The district court granted the Rule 60(b)(4) motion, and the Fifth Circuit reversed. The Fifth Circuit reasoned that "the district court was fully aware of the automatic stay, and therefore implicitly concluded that its dismissal was consistent with its terms. Picco did not object or appeal to challenge the district court's jurisdiction."[57] The Fifth Circuit found that application of res judicata was proper in a case such as this where "the challenging party was before the court when the order in question was entered and had notice of it and had a full and fair, unimpeded opportunity to challenge it, and the court's jurisdiction, by appeal."[58]

This Court finds that the logic of *Picco* applies to this case. This Court litigated Uptown Grill's claims from 2013 to 2017. During that time, both this Court and the Fifth Circuit addressed the impact that the state courts' holdings had on this Court's interpretation of the Bill of Sale and the parties' intellectual property rights. At all times, this Court found that its jurisdiction was proper. Additionally, "Rule 60(b)(4) does not provide a license for litigants to sleep on their rights."[59] Shwartz had a multitude of opportunities to raise *Rooker-Feldman* but failed to do so. In fact, Shwartz argued that federal question jurisdiction was improper in both this Court and the Fifth Circuit but did not raise *Rooker-Feldman*.[60] Now that Uptown Grill's claims have long been settled, this Court does not find reason to disturb its final ruling simply because Shwartz only recently discovered, seven years after these proceedings began, the potential applicability of *Rooker-Feldman*.[61] Accordingly, because

---

[56] *Picco*, 900 F.2d at 849–50.

[57] *Id.* at 850.

[58] *Id. See also* Brown v. Illinois Cent. R. Co., 480 F. App'x 753, 754 (5th Cir. 2010).

[59] United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 275 (2010).

[60] *See Uptown Grill*, 817 F.3d at 256.

[61] *See also* In re Bell Family Tr., 575 F. App'x 229, 233 (5th Cir. 2014) (rejecting plaintiff's arguments that "she only 'recently' realized that 'the court lacked jurisdiction in matters

res judicata applies to this Court's determination of its finding of jurisdiction[62] and because this case does not demonstrate "a clear usurpation of power" or "total want of jurisdiction" as to warrant the disturbing of a final order,[63] this Court finds that its prior rulings in favor of Uptown Grill should not be disturbed.

### B. The *Rooker-Feldman* Doctrine

Assuming *arguendo* that Shwartz's Motion is properly before the Court, Shwartz's Motion to Dismiss for Lack of Jurisdiction Under the *Rooker-Feldman* doctrine still fails on the merits. In *Rooker v. Fidelity Trust Co.*,[64] the Supreme Court stated that federal district courts lacked appellate authority to reverse or modify state court decisions, even if erroneous.[65] Six years later, in *District of Columbia Court of Appeals v. Feldman*,[66] the Supreme Court stated that federal courts cannot review state court judicial decisions and cannot address claims "inextricably intertwined" with the state court decisions.[67] Today, "'the *Rooker–Feldman* doctrine holds that inferior federal courts do not

---

of 'spendthrift' trust and that there are no deadlines to file a Motion to redress lack of jurisdiction'" when plaintiff had multiple opportunities to challenge jurisdiction).

[62] *See* Winograd v. Fowler, 184 F.3d 816 at *3 (5th Cir. 1999). In *Winograd*, the Fifth Circuit denied consideration of plaintiff's Rule 60(b)(4) motion to vacate the court's judgment for lack of jurisdiction under *Rooker-Feldman. Id.* at *1. Although the district court did not address *Rooker-Feldman's* application during the proceedings, the Fifth Circuit affirmed the district court's finding that res judicata barred consideration of the motion where the factual basis for *Rooker-Feldman* was evidenced on the face of the pleadings and the plaintiff had a "full and fair unimpeded opportunity to challenge it based upon subject matter jurisdiction." *Id*. at *2.

[63] "[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and . . . only rare instances of a clear usurpation of power will render a judgment void." *Espinosa*, 559 U.S. at 271 (quoting United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661 (1st Cir. 1990)).

[64] 263 U.S. 413 (1923).

[65] *See* Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284–85 (2005).

[66] D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[67] *See Exxon*, 544 U.S. at 285–86.

have the power to modify or reverse state court judgments' except when authorized by Congress."[68]

In *Exxon Mobil Corp. v. Saudi Basic. Indus. Corp.*, the Supreme Court addressed the *Rooker-Feldman* doctrine and emphasized that it occupies "narrow ground."[69] The Supreme Court held that the doctrine only applies to: (1) cases brought by state court losers, (2) complaining of injuries caused by state court judgments, (3) rendered before the district court proceedings commenced, and (4) inviting district court review and rejection of those judgments.[70] The two hallmarks of the *Rooker-Feldman* inquiry are thus: (1) "what the federal court is being asked to review and reject," and (2) "the source of the federal plaintiff's alleged injury."[71] If the federal court is being asked to review a decision from a state court judicial proceeding, and the state court judgment is the source of the injury, then the *Rooker-Feldman* doctrine denies the federal court of subject matter jurisdiction.[72] Shwartz argues that all four elements of the *Rooker-Feldman* doctrine are satisfied here as the previous state court rulings are "inextricably intertwined" with Uptown Grill's requested declaratory relief. This Court disagrees.

This Court finds that Shwartz cannot demonstrate even the first requirement of *Rooker-Feldman*—that the case be brought by a state court loser. *Rooker-Feldman* "has no application to a federal suit brought by a nonparty to the state suit."[73] Here, the parties to the state court proceedings,

---

[68] Truong v. Bank of Am., N.A., 717 F.3d 377, 382 (5th Cir. 2013) (quoting Union Planters Bank Nat'l Ass'n v. Salih, 369 F.3d 457, 462 (5th Cir. 2004)).

[69] *Exxon,* 544 U.S. at 284.

[70] *Id.*

[71] *Truong*, 717 F.3d at 382.

[72] *See id*. at 382–83.

[73] *Exxon*, 544 U.S. at 287 (paraphrasing Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994)).

the Grill Holdings and CGH, were the parties to the License Agreement.[74] Uptown Grill, a different Khodr-owned entity, brought the initial federal action for declaratory relief as the sole buyer in the Bill of Sale. As Uptown Grill was not a party to the state court proceedings, it cannot be the "state court loser" as required by *Rooker-Feldman*.

Shwartz contends, however, that because Uptown Grill was a sublicensee to the License Agreement, Uptown Grill is a "successor in interest" to The Grill Holdings and thus stands in the shoes of The Grill Holdings for purposes of *Rooker-Feldman*. In *Lance v. Dennis*, the Supreme Court held that *Rooker-Feldman* does not bar suits by nonparties to the state action even if, under preclusion principles, they were in privity with the state court loser.[75] The Supreme Court in *Lance* did, however, acknowledge the possibility of a limited exception whereby "*Rooker-Feldman* may be applied against a party not named in an earlier state proceeding—*e.g.,* where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent."[76] Although Shwartz is correct that courts have utilized the *Lance* exception to enforce *Rooker-Feldman* against successors in interest,[77] the facts of this case fit squarely within the holding of *Lance*, not the exception.

Uptown Grill is not a successor in interest to The Grill Holdings but rather a distinct juridical entity.[78] In fact, the relationship between these two

---

[74] *See* Docs. 442-1, 442-3, 442-4, 442-5.

[75] Lance v. Dennis, 546 U.S. 459, 466 (2006).

[76] *Id.* at 466 n.2.

[77] *See e.g.,* Morris v. Am. Home Mortg. Servicing, Inc., 443 F. App'x 22, 24 (5th Cir. 2011) (finding that the absence of the federal defendant in the state court action did not preclude applicability of the *Rooker-Feldman* doctrine where the federal defendant was the successor-in-interest to the plaintiff in the state foreclosure proceeding).

[78] As evidence that Uptown Grill stands in the shoes of The Grill Holdings, Shwartz looks to a 2012 affidavit by Hicham Khodr stating "[t]hat the sublicensees, Uptown Grill, L.L.C., Chartres Grill, L.L.C., and Destin Grill L.L.C. were companies [Hicham Khodr] formed only for accounting purposes and are not third parties." *See* Doc. 115-5 at 3. Shwartz has, however, already cited to this same language in his briefings to this Court and the Fifth

entities and the extent to which Uptown Grill is bound by the state court judgments is an issue that has already been examined by both this Court and the Fifth Circuit. In its first opinion in this matter, the Fifth Circuit affirmed this Court's denial of Shwartz's laches claim, finding that Uptown Grill had not unreasonably delayed asserting its ownership rights because "Uptown Grill *was not a party* to any litigation *where ownership* of the trademarks was at issue until it filed its action for declaratory judgment."[79] The Fifth Circuit further noted that:

> even if earlier litigation between Camellia Grill, Inc., CGH, and/or any of Khodr's entities could somehow be imputed to Uptown Grill, the License Agreement, not the Bill of Sale, was at issue in those cases. Accordingly, Uptown Grill may not be punished for failing to assert the Bill of Sale in prior litigation, and laches is inapplicable.[80]

The Fifth Circuit also went on to find that, because Uptown Grill was not a party to the License Agreement, the provisions of the License Agreement were irrelevant to construing the Bill of Sale.[81] Thus, although the Fifth Circuit found Uptown Grill to be an "affiliate" of The Grill Holdings under the License Agreement, the court did not find the parties so connected as to constructively render Uptown Grill a party to the state proceedings.[82]

The Fifth Circuit's prior statements in this matter are remarkably relevant to resolving the applicability of *Rooker-Feldman*. The Fifth Circuit

---

Circuit to argue that Uptown Grill consented to the License Agreement. *See* Brief for Appellant, Uptown Grill, L.L.C. v. Shwartz, 817 F.3d 251, 258 (2016) (No. 15-30617), 2015 WL 5665651, at *18–21. The Fifth Circuit nevertheless held that Uptown Grill was not a party to the License Agreement or the state court litigation. *Uptown Grill*, 817 F.3d at 256–57. Accordingly, the affidavit does not change the fact that Uptown Grill is not a party against whom *Rooker-Feldman* applies.

[79] *Uptown Grill*, 817 F.3d at 256 (emphasis added).

[80] *Id.* at 256–57.

[81] *Id.*

[82] *Id.* at 256–57, 59.

found that Uptown Grill was not a state court loser and also distinguished the injuries addressed by the state and federal proceedings. *Rooker-Feldman* bars claims by state court losers that complain of injuries caused by state court judgments and invite district court review and rejection of those judgments.[83] Both this Court and the Fifth Circuit have confirmed that Uptown Grill's federal action relates only to ownership under the Bill of Sale—an issue that was not addressed by the state courts. Accordingly, this Court's granting of Uptown Grill's request for declaratory relief does not address any injuries created by the state court judgments nor does it reject any findings by the state courts.

In spite of the Fifth Circuit's prior statements, Shwartz still argues that Uptown Grill's sought declaratory relief under the Bill of Sale is inextricably intertwined "with [the] two prior final judgments of the Louisiana Fourth Circuit Court of Appeal affirming the contractual validity of a License Agreement between the parties."[84] The Fourth Circuit affirmed the validity of the License Agreement and found the Agreement terminated, "restoring all rights to the licenses [and] marks to [Shwartz]."[85] Shwartz thus contends that this Court's ruling in favor of  Uptown Grill essentially "vitiates" the License Agreement as it allows Uptown Grill to operate the Camellia Grill where the termination provisions of the License Agreement do not.

It is undisputed that, under both this Court and the Fifth Circuit's holdings, Shwartz lost rights to the Bill of Sale that the state courts otherwise attributed to him under the License Agreement. This fact alone, however, does

---

[83] *See Exxon,* 544 U.S. at 284.

[84] Doc. 442-7 at 1.

[85] Doc. 442-3 at 1 (Judgment by the Civil District Court for the Parish of Orleans); Doc. 442-4 (Fourth Circuit Court of Appeal opinion affirming the Judgment).

not equate to a "direct attack" on the state court judgments.[86] To the contrary, this Court has enforced the state courts' findings that the License Agreement is a valid and enforceable document and has spent the past three years litigating Shwartz's related breach of contract claims. *Rooker-Feldman* "does not prohibit a plaintiff from 'present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'"[87] This Court was asked to evaluate Uptown Grill's ownership rights under the Bill of Sale. Neither ownership nor the Bill of Sale was litigated in the state courts. Uptown Grill has thus presented an independent claim, and this Court's legal conclusions related to the Bill of Sale do not vitiate the state courts' conclusions related to the License Agreement.

Shwartz asks this Court to follow the logic of *Johnson v. Way Cool Manufacturing, L.L.C.*[88] There, the federal plaintiffs, the Johnsons, executed a purchase agreement and licensing agreement in favor of Way Cool Manufacturing, L.L.C.[89] After a dispute over the terms of the licensing agreement, an arbitrator determined that the Johnsons had breached the *licensing agreement and the asset purchase agreement*, and the state court entered a judgment affirming the arbitration award.[90] When the Johnsons later filed in federal court, their claims were dismissed under *Rooker-*

---

[86] *See* Weaver v. Texas Capital Bank N.A., 660 F.3d 900, 904 (5th Cir. 2011) ("[T]he *Rooker–Feldman* doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment.").

[87] *See Truong*, 717 F.3d at 382 (quoting *Exxon*, 544 U.S. at 293). Shwartz further argues, however, that "a plaintiff cannot 'circumvent this jurisdictional limitation by asserting claims not raised in the state court proceeding or claims framed as original claims for relief,' if these claims are 'inextricably intertwined with the state judgment.'" Doc. 442-7 at 20 (quoting United States v. Shepherd, 23 F.3d 923, 924 (5th Cir. 1994)). The Fifth Circuit, however, has already determined that Uptown Grill was not delayed in asserting its claim for relief in this Court. *See Uptown Grill*, 817 F.3d at 256–57.

[88] 20 F. App'x 895 (Fed. Cir. 2001).

[89] *Id.* at 896–97.

[90] *Id.* at 897.

*Feldman*.[91] The Federal Circuit affirmed the lower court decision, finding the Johnsons' contract-based claims in direct conflict with the state court judgment.[92] Notably, the Federal Circuit also found that *Rooker-Feldman* barred the Johnsons' patent infringement claims even though infringement was not addressed in state court.[93] The Federal Circuit reasoned that, because permission from the patentee destroys liability for patent infringement, the state court's finding that Way Cool Manufacturing, L.L.C. had authority to act under the license agreement precluded the federal court's finding of infringement.[94] As the federal court could not find for the Johnsons without finding that the state court's decision was wrongfully decided, the court found the claims "inextricably intertwined" with the state court decision.

This Court does not find *Johnson* instructive. First, *Johnson* was decided before the Supreme Court emphasized the narrowness of *Rooker-Feldman* in *Exxon*. Indeed, the *Johnson* court found the *Rooker-Feldman* doctrine applicable even though the Johnsons did not participate in the state litigation.[95] Further, for the federal court in *Johnson* to have found in favor of the plaintiffs on infringement, the federal court would have had to find the state court erroneous in its interpretation of the licensing agreement. To the contrary, this Court's ruling in favor of Uptown Grill did not require this Court to overrule or question any finding made by the state courts. In fact, both this Court and the Fifth Circuit refused to use the License Agreement to interpret

---

[91] *Id.*

[92] *Id.* at 898.

[93] *Id.*

[94] *Id.* at 898–99.

[95] As support for this proposition, the *Johnson* court cited to *Lemonds v. St. Louis County*, 222 F.3d 488 (8th Cir. 2000). The Eighth Circuit has acknowledged *Lemonds* as superseded by *Exxon*'s clarification of the *Rooker-Feldman* doctrine. *See* Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co., 855 F.3d 836, 841 (8th Cir. 2017). Following *Exxon*, the *Rooker-Feldman* doctrine does not apply unless the federal plaintiff was a party to the state action. *See Exxon*, 544 U.S. at 287.

the Bill of Sale, contrary to Shwartz's requests.[96] Finally, *Johnson* is distinguishable as the *Johnson* state court fully litigated the parties' rights under both the licensing agreement and the asset purchase agreement, whereas the issues of licensure and ownership in the present matter were bifurcated between the state and federal suits.[97] Therefore, unlike in *Johnson*, the state and federal claims in this matter are not "inextricably intertwined," and this Court does not risk an implicit overruling of the state courts' decisions.

Finally, Shwartz argues in his Reply that this Court erred in finding that the License Agreement did not modify the Bill of Sale.[98] This Court has litigated the relationship between the Bill of Sale and the License Agreement *ad nauseum*. To the extent that Shwartz's remaining arguments ask this Court to revisit its interpretation of these two agreements, this Court declines to do so.[99] This Court agrees with Khodr that a great deal of Shwartz's briefing consists of recycled arguments and represents an attempt to "take another bite at the proverbial apple."[100] Many, if not all, of Shwartz's arguments are contradicted by prior rulings of this Court and the Fifth Circuit. Accordingly, this Court finds that Shwartz's Motion to Dismiss for Lack of Jurisdiction Under *Rooker-Feldman* is without merit and that Khodr's Motion for Rule 11 Sanctions warrants consideration.

---

[96] *See Uptown Grill*, 817 F.3d at 258 ("We thus decline the Shwartz parties' invitation to consider parol evidence such as the License Agreement in interpreting the Bill of Sale.").

[97] *Johnson*, 20 F. App'x at 898.

[98] *See* Doc. 454 at 6–8.

[99] Shwartz asks this Court to consider *Fonseca v. Pelican Pub. Co., Inc.*, 921 So.2d 112 (La. App. 5 Cir. 2006), where the Louisiana Fifth Circuit Court of Appeal interpreted a series of contracts between an author and her publisher. This Court does not find *Fonseca* relevant to the issue of *Rooker-Feldman*, and therefore declines to address Shwartz's related arguments.

[100] Doc. 45 at 34.

## II.   Khodr's Motion for Rule 11 Sanctions

In Khodr's Motion for Rule 11 Sanctions (Doc. 456), Khodr asks this Court to sanction Shwartz for filing the Motion to Dismiss for Lack of Jurisdiction Under *Rooker-Feldman*. Khodr argues that Shwartz's Motion to Dismiss was filed to harass, cause unnecessary delay, and to increase the cost of litigation—all in violation of Rule 11. In response, Shwartz argues that the Motion to Dismiss is meritorious and that Khodr's Motion for Sanctions suffers from procedural defects that preclude consideration of Khodr's Motion on the merits. Finding Khodr's Motion procedurally deficient, this Court will not address its merits.

Federal Rule of Civil Procedure 11(c)(2) requires that "the motion [for sanctions] must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Here, Khodr served the draft motion for sanctions upon Shwartz at least twenty-one days before filing it. The version of the motion that Khodr filed in this Court, however, contains substantial variances from the version initially served upon Shwartz. The question before this Court then is whether these alterations violate Rule 11's safe harbor provision.

Although the Fifth Circuit has yet to directly address this issue, the Fifth Circuit's discussion of Rule 11 in *In re Pratt*[101] is instructive. The Fifth Circuit there held that informal notice, such as a warning letter, is insufficient to meet the requirements of Rule 11 or Bankruptcy Rule 9011.[102] In reaching this

---

[101] In re Pratt, 524 F.3d 580 (5th Cir. 2008).

[102] *Id.* at 588. The issue presented in *In re Pratt* implicated Bankruptcy Rule 9011, but the Fifth Circuit looked to Rule 11 jurisprudence as "Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11." *Id.* at 586.

conclusion, the Fifth Circuit quoted the following excerpt from the Tenth Circuit:

> The reason for requiring a copy of the motion itself, rather than simply a warning letter, to be served on the allegedly offending party is clear. The safe harbor provisions were intended to "protect[ ] litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effects, formaliz[e] procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourag[e] the withdrawal of papers that violate the rule without involving the district court." Thus, "a failure to comply with them [should] result in the rejection of the motion for sanctions."[103]

Considering the policy underlying Rule 11's safe harbor provision, the fact that the plain language of the rule "mandates that the movant serve the respondent with a copy of the *motion* before filing it with the court," and the fact that the Fifth Circuit has "continually held that strict compliance with Rule 11 is mandatory," the *In re Pratt* court found that "'substantial compliance' through informal service" was insufficient.[104]

In light of the Fifth Circuit's practice of "strict compliance," several courts within this circuit have held that the served motion must be identical to the filed motion for sanctions to comply with Rule 11.[105] Moreover, while many

---

[103] *In re Pratt,* 524 F.3d at 586–87 (quoting Roth v. Green, 466 F.3d 1179, 1192–93 (10th Cir. 2006)).

[104] *Id.* at 588.

[105] *See* Wells Fargo Home Mortg., Inc. v. Taylor, No. 04-825, 2004 WL 1771607, at *1 (E.D. La. Aug. 5, 2004) (Livaudais, Senior J.) (finding that the served draft, which alleged different grounds for sanctions, was not sufficient under Rule 11); Orchestrate HR, Inc. v. Trombetta, 178 F. Supp. 3d 476, 500 (N.D. Tex. 2016) (Horan, J.), *objections overruled sub nom.* Orchestratehr, Inc. v. Trombetta, No. 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016) ("Rule 11's plain language provides that the movant must file with Court, after the expiration of the safe-harbor period, the motion that was served upon the adversary." (citations omitted)); Thabico Co. v. Kiewit Offshore Servs., Ltd., No. 2:16-CV-427, 2017 WL 3387185, at *5 (S.D. Tex. Aug. 7, 2017) (Ramos, J.) ("Rule 11(c)'s safe harbor provisions are strictly construed and require Kiewit to have served its motion for sanctions in identical form at least 21 days prior to presenting it to the Court for a ruling."); SortiumUSA, LLC v. Hunger, No. 3:11-CV-1656-M, 2014 WL 1080765, at *3 (N.D. Tex.

of the courts outside of the Fifth Circuit have rejected this "hyper-technical" reading of Rule 11, most have still required, at the very least, that the sanctionable grounds alleged, the legal arguments asserted, and the form of relief requested be the same in both the served and filed documents.[106]

Here, the final Motion for Sanctions that Khodr filed with this Court contained substantial deviations from the draft version Khodr served upon Shwartz. These alterations include the addition of argument and case law under 28 U.S.C. § 1927, the addition of argument and case law relating to "legally indefensible" filings, and a change in the relief requested.[107] Accordingly, even if the pleadings need not be identical, this Court finds substantial differences between Khodr's served and filed motions, thereby rendering Khodr's Motion procedurally deficient. Accordingly, Khodr's Motion for Rule 11 Sanctions is denied.

### III.   Khodr's Motion for Partial Summary Judgment on Trade Dress Injunction

Khodr files this Motion for Partial Summary Judgment (Doc. 435) on the issue of standing. Specifically, Khodr argues that the one claim remaining before this Court—Shwartz's[108] claim that Khodr breached the License Agreement by using Camellia Grill trade dress at the Chartres restaurant—is

---

Mar. 18, 2014) (Lynn, J.) ("'The requirement that the actual motion be served was deliberately imposed . . . to ensure that the moving party understands the seriousness of [the] motion and [that it] will define precisely the conduct claimed to violate the rule." (quoting O'Connell v. Smith, No. CV 07-0198-PHX-SMM, 2008 WL 477875, at *2 (D. Ariz. Feb. 19, 2008)).

[106] *See* Merritt v. Lake Jovita Homeowner's Ass'n, Inc., No. 8:08-CV-98-T-27EAJ, 2010 WL 11507746, at *1 (M.D. Fla. May 11, 2010) (and cases cited therein); Rygg v. Hulbert, No. C11-1827JLR, 2012 WL 12847008, at *3 (W.D. Wash. Sept. 21, 2012), *aff'd,* 611 F. App'x 900 (9th Cir. 2015) (and cases cited therein).

[107] *Compare* Doc. 456 (Khodr's filed Motion for Sanctions), *with* Doc. 466-2 (Khodr's served Motion for Sanctions).

[108] The Court notes that Shwartz's entity, CGH, is the only member of the Shwartz entities that has pending claims against the Khodr entities. For continuity, however, this Court will continue to refer to CGH as Shwartz.

now moot.[109] In Shwartz's pending Motion for Summary Judgment, Shwartz requests relief in the form of a "narrowly-tailored permanent injunction precluding Khodr from further use of any of the trade dress attributes at future restaurants and an award of attorney's fees incurred in connection with this matter."[110] Khodr, however, no longer operates the Chartres restaurant or any other Camellia Grill derivative restaurant. Khodr therefore argues in his Motion for Partial Summary Judgment that Shwartz lacks standing to seek injunctive relief.

Article III of the U.S. Constitution limits a federal court's jurisdiction to "cases or controversies," and requires plaintiffs to have a personal stake in the suit.[111] Standing to sue under Article III thus requires the plaintiff to have "suffered an injury (a) to a legally protected interest, and that is actual or imminent, concrete and particularized; (b) that is fairly traceable to the challenged action of the defendant; and (c) that is redressable by the court."[112] When the plaintiff seeks injunctive relief, he must show "a real and immediate threat of future or continuing injury apart from any past injury."[113]

The personal interest that Article III demands "at the commencement of the litigation (standing) must continue throughout its existence (mootness)."[114] Mootness is thus often referred to as "standing in a time frame."[115] "Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff."[116] When a claim is moot, "it

---

[109] *See Uptown Grill, L.L.C.*, 920 F.3d at 251.

[110] Doc. 414 at 1.

[111] Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).

[112] *Id.*

[113] Aransas Project v. Shaw, 775 F.3d 641, 648 (5th Cir. 2014) (citing In re Stewart, 647 F.3d 553, 557 (5th Cir. 2011)).

[114] *Laidlaw*, 528 U.S. at 170.

[115] United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980).

[116] Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co., 704 F.3d 413, 425 (5th Cir. 2013).

presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents."[117]

The doctrines of mootness and standing, however, are not coextensive. "The bar to overcome mootness is lower than the bar to establish standing: 'there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.'"[118] Unlike standing, the mootness doctrine admits an exception for situations where the unlawful activity is "capable of repetition, yet evading review."[119] It is thus "well settled that a defendant's voluntary cessation of allegedly illegal conduct does not moot the controversy arising from the challenged activity."[120] Provided the risk that a defendant might cease unlawful conduct when sued and later resume the conduct after the case is dismissed, "'a defendant claiming that its voluntary compliance moots a case bears a formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"[121] These cases therefore "'require closer examination than allegations that 'happenstance' or official acts of third parties have mooted the case.' The overarching goal is to determine whether the defendant's actions are mere 'litigation posturing' or whether the controversy is extinguished."[122]

---

[117] Nat'l Rifle Ass'n of Am., Inc. v. McCraw, 719 F.3d 338, 344 (5th Cir. 2013).

[118] Cain v. City of New Orleans, 281 F. Supp. 3d 624, 641 (E.D. La. 2017), *aff'd sub nom.* Cain v. White, 937 F.3d 446 (5th Cir. 2019) (quoting *Laidlaw*, 528 U.S. at 190)).

[119] *Laidlaw*, 528 U.S. at 191, 120.

[120] Donovan v. Cunningham, 716 F.2d 1455, 1461 (5th Cir. 1983). *See also Already*, 568 U.S. at 91 ("A defendant cannot, however, automatically moot a case simply by ending its unlawful conduct once sued.").

[121] *Already*, 568 U.S. at 727 (quoting *Laidlaw*, 528 U.S. at 190). *See also* Texas v. Equal Employment Opportunity Comm'n, 933 F.3d 433, 449 (5th Cir. 2019).

[122] Fontenot v. McCraw, 777 F.3d 741, 748 (5th Cir. 2015) (quoting Envt'l Conservation Org. v. City of Dallas, 529 F.3d 519, 528 n. 4 (5th Cir. 2008)).

Khodr argues that this case is moot as Shwartz cannot demonstrate "a real or immediate threat that [Shwartz] will be harmed again."[123] Khodr contends that the Chartres restaurant operated from 2010–2017 and that there is no evidence that it will re-open. Khodr, however, does not attribute the closure of the Chartres restaurant to external forces[124] but rather admits that "the Khodr Parties have voluntarily ceased using the alleged trade dress."[125] Accordingly, this Court finds that the "voluntary cessation" standard applies, and that Khodr bears a "heavy burden that 'there is no reasonable expectation that the wrong will be repeated.'"[126]

This Court finds Khodr's arguments unconvincing. Khodr argues that there is no "evidence of real or immediate threat that the wrong will be repeated."[127] The only support Khodr offers for this contention, however, is that "[t]he Chartres Location has not operated since [2017], and there is no evidence that the Chartres Location has any intention of re-opening its doors (particularly at a time when restaurants are under economic strain and heavy regulation)."[128] Strikingly, Khodr offers this Court no argument or evidence to suggest that Khodr intends to refrain from using Camellia Grill trade dress at a location other than Chartres.

Khodr contends that his use of trade dress at locations other than Chartres is irrelevant to the matter at hand given the Fifth Circuit's most

---

[123] Plumley v. Landmark Chevrolet, Inc. 122 F.3d 308, 312 (5th Cir. 1997).
[124] *See generally, Envt'l. Conservation Org.*, 529 F.3d at 527–28 (finding that third party action caused the alleged wrongful conduct to cease, declining to apply the voluntary cessation test, and affirming that the burden continued to lay with the plaintiff).
[125] Doc. 435-2 at 6.
[126] *Donovan*, 716 F.2d at 1462 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).
[127] Doc. 435-2.
[128] *Id.* at 5.

recent directive to this Court.[129] The Fifth Circuit remanded this matter for this Court to "determine if Khodr breached the License Agreement by using the above-detailed alleged trade dress at the Chartres restaurant."[130] Although this Court agrees with Khodr's characterization of the issue on remand, this Court cannot say that evidence of breaches at other locations is irrelevant to the issue of injunctive relief. When this Court ruled in favor of Shwartz on his trademark breach of contract claim, the Chartres restaurant was also the only location at issue.[131] Nevertheless, this Court found that Shwartz was "entitled to an injunction to preclude any further operation in violation of the License Agreement"[132] and enjoined various Khodr entities from using the marks "at any location other than the Carrollton Location."[133] Shwartz now requests a similarly-styled injunction prohibiting Khodr's use of Camellia Grill trade dress. Accordingly, it is the likelihood that Khodr will use the Camellia Grill trade dress at any location outside of the Carrollton location that will determine the appropriateness of injunctive relief. This Court therefore finds Khodr's sole argument that he has no intention of re-opening the Chartres location insufficient to render Shwartz's claim moot.

Khodr relies on the following cases for support. In *Reservoir, Inc. v. Truesdell*, the Southern District of Texas denied injunctive relief after finding "no evidence that Defendants again will infringe Plaintiffs' rights" where the "Defendants now are on notice, which they apparently previously were not, that they have no rights to use the . . . marks."[134] In *Neutron Depot, LLC v.*

---

[129] This Court agrees with Khodr that Shwartz has not provided competent summary judgment evidence to support its arguments related to The Grille in Metairie. This Court therefore did not rely on that evidence to form its opinion.

[130] *Uptown Grill,* 920 F.3d at 251.

[131] *See* Doc. 358.

[132] *See id*. at 3.

[133] *Id*.

[134] Reservoir, Inc. v. Truesdell, 1 F. Supp. 3d 598, 617 (S.D. Tex. 2014).

*Bankrate, Inc.*, the Western District of Texas found the threat of future injury "exceedingly unlikely" because it had been four years since the defendant infringed on the mark and because the defendant sold the infringing entity and "consequently lack[ed] further motivation to infringe on the Mark."[135] Finally, in *Fram Corp. v. Boyd*, the Fifth Circuit affirmed that there was no evidence in the record to cast doubt on the defendant's good faith abandonment of infringing practices.[136]  This Court finds these cases distinguishable.

Unlike the above-cited cases, this Court cannot say that there is no evidence in the record suggesting that Khodr will breach the License Agreement in the future. As the Chartres restaurant was one of several Camellia Grill spin-offs, the closure of one restaurant location does not necessarily demonstrate a lack of "further motivation" to use Camellia Grill trade dress.[137] Further, there is at least some evidence that Khodr operated a Camellia Grill-style restaurant as recently as 2019,[138] distinguishing this case from *Reservoir* and *Neutron Depot* where several years had passed since the defendants last used the infringing mark. Finally, and most significantly, none of Khodr's cited cases address matters with the kind of prolonged, vexatious, and disturbing litigation pattern like the one currently before the Court. This Court does not find the record in this matter indicative of the kind of "good faith" necessary to moot the availability of injunctive relief. Accordingly,

---

[135] Neutron Depot, LLC v. Bankrate, Inc., No. AU-16-CA-01170-SS, 2018 WL 3014435, at *5 (W.D. Tex. May 1, 2018), *aff'd sub nom.* Neutron Depot, L.L.C. v. Bankrate, Inc., 798 F. App'x 803 (5th Cir. 2020).

[136] Fram Corp. v. Boyd, 230 F.2d 931, 933 (5th Cir. 1956).

[137] *Cf. Neutron Depot, LLC*, 2018 WL 3014435, at *5.

[138] *See* Doc. 435-2 at 5 n.2. ("CGH previously admitted that 'The Grille closed in or around June of 2019.' [Doc. 414-3, p.6]. Thus, The Grille ceased all use of any alleged trade dress within ninety (90) days of the Fifth Circuit's finding that CGH had articulated a trade dress.").

Khodr's Motion for Partial Summary Judgment on Trade Dress Injunction is denied.

## IV.   Shwartz's Motion for Summary Judgment

In his Motion for Summary Judgment (Doc. 414), Shwartz asks this Court to find that Khodr breached the License Agreement by using Camellia Grill trade dress at the Chartres restaurant, to enjoin Khodr from further use of the trade dress or any derivative thereof at any future restaurant, and to award Schwartz attorney's fees. This Court will address each issue in turn.

### A. Breach of Contract

The Louisiana Fourth Circuit Court of Appeal held that the License Agreement terminated on June 1, 2011.[139] Accordingly, Khodr's use of Camellia Grill trademarks and trade dress thereafter violates the post-termination provisions of the License Agreement, Sections 12.1 and 12.2, which revert all rights back to the Licensor and require the Licensee to "avoid any action or the continuance of any condition which might suggest to the public that Licensee has any right to the Marks, or that Licensee continues to be associated with Licensor."[140] In the Fifth Circuit's 2019 opinion, the circuit court noted that this Court found eight "alleged elements" of trade dress and remanded "for proceedings to determine if Khodr breached the License Agreement by using the above-detailed alleged trade dress at the Chartres restaurant."[141] This is the issue currently before this Court.

In Shwartz's Statement of Uncontested Facts, he states that "Khodr used the Camellia Grill trade dress at the Chartres Location from the time the restaurant opened in December 2010 until its close in or around December of 2017" and that "Khodr did not cease use of the Camellia Grill trade dress

---

[139] *See The Grill Holdings, L.L.C.*, 120 So. 3d at 303.
[140] Doc. 414-4 at 13.
[141] *Uptown Grill*, 920 F.3d at 251.

following the termination of the License."[142] Khodr concedes that these facts are "undisputed."[143] This Court therefore finds that The Grill Holdings and Chartres Grill are liable to the Licensor of the License Agreement, CGH, for breach of the License Agreement's post-termination provisions. Shwartz's Motion for Summary Judgment is granted to the extent it requests this Court to find a breach of contract.

## B. Scope of Injunctive Relief

Having found that Khodr breached the License Agreement by use of Camellia Grill trade dress at the Chartres restaurant, Shwartz asks this Court to enjoin Khodr from further use of the Camellia Grill trade dress beyond the Carrollton location. Three aspects of Shwartz's request are in dispute: (1) whether Camellia Grill's trade dress consists of 8 or 10 elements, (2) whether this Court's injunction should prohibit Khodr from any derivative use of the trade dress, and (3) whether Hicham Khodr and Uptown Grill should be included in the injunction.

### 1. The Elements of Camellia Grill Trade Dress

The parties first dispute how this Court should define Camellia Grill's trade dress in its injunction. As the License Agreement does not list the elements of Camellia Grill's trade dress, this Court finds that Camellia Grill's trade dress should be limited to that which is protectable under the Lanham Act. This Court's injunction must enforce Shwartz's rights under the License Agreement while preserving Khodr's right to future competition in the restaurant industry. This Court finds that the Lanham Act's definition of protectable trade dress adequately serves this goal.[144]

---

[142] Doc. 414-2 at 2–3.

[143] Doc. 421-1 at 2.

[144] "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by

Contrary to the parties' assertions, this Court has not previously made a finding as to the protectable elements of Camellia Grill's trade dress. In this Court's Order and Reasons, dated May 26, 2017,[145] this Court granted Khodr's Motion for Partial Summary Judgment[146] and dismissed Shwartz's claims for trade dress infringement under the Lanham Act. In that motion, Khodr argued, in part, that the alleged trade dress was not protectable because "(1) [Shwartz has] insufficiently alleged the elements of a putative trade dress[,] (2) even if the elements are sufficiently alleged, they are not inherently distinctive and have not acquired secondary meaning, and (3) . . . the elements are all functional and do not qualify for trade dress protection."[147]

In addressing Khodr's arguments, this Court first found that Shwartz's discovery responses were "sufficient to put the Khodr parties on notice of the elements of the *putative* trade dress."[148] This Court found that these putative elements included:

> (1) the straw "popping" routine, (2) U-shaped counters, (3) audible order calling routine, (4) pink and green wall scheme, (5) separate pie cases on the rear wall at both ends of the cooking line, (6) stainless steel stemmed stools with green stool cushions, (7) individual counter checks handed to each customer, (8) fluted metal design under the counters and above the cooking line.[149]

Second, this Court found that "[t]he admissible evidence submitted by the Shwartz parties, though scant, [was] sufficient to create a genuine issue of material fact as to whether the putative trade dress has acquired a secondary

---

allowing a producer to control a useful product feature." Qualitex Co. v. Jacobson Prod. Co., 514 U.S. 159, 164 (1995).

[145] *See* Doc. 294.

[146] *See* Doc. 262.

[147] Doc. 294 at 19.

[148] *Id.* (emphasis added).

[149] *Id.*

meaning."[150] Third, this Court found that the functional nature of the putative trade dress elements "does not necessarily preclude protection under the Lanham Act."[151] These findings encompass the extent to which this Court has addressed the elements of Camellia Grill's trade dress. Accordingly, the scope of Camellia Grill's protectable trade dress is still undetermined by this Court.

Shwartz's Motion for Summary Judgment does not provide sufficient admissible evidence to allow this Court to determine Camellia Grill's protectable trade dress at this stage. Further, this Court finds that a determination as to trade dress is necessary before this Court can entertain Shwartz's additional arguments regarding derivative use. Accordingly, Shwartz's request for summary judgment on the scope of the injunction is denied. A trial will be held to determine the protectable elements of Camellia Grill trade dress and whether an injunction prohibiting Khodr's use of less than all of the protectable trade dress is appropriate.

### 2. *The Parties to the Injunction*

Shwartz asks this Court to include Hicham Khodr, individually, in any injunctive relief that this Court issues. As a preliminary matter, this Court has addressed this issue previously, and Shwartz has argued this issue on appeal. This Court therefore does not see why this Court's injunction relating to trade dress should differ in scope than the injunction previously issued with respect to trademarks. Accordingly, this Court denies Shwartz's Motion for Summary Judgment to include Hicham Khodr, individually, in its injunction.

Secondly, this Court finds Shwartz's cited case law on the matter unavailing. Much of the case law to which Shwartz cites involves matters where the court held a corporate officer in contempt for violating an injunction

---

[150] *Id.* at 21.
[151] Doc. 294 at 22.

issued to the corporate entity.[152] In each of these cases, the court found the corporate officers bound by the initial injunction to the corporate entity even though they were not personally named in the injunction. These courts' findings are consistent with Federal Rule of Civil Procedure 65(d)(2), which states that every injunction or restraining order "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Shwartz's cited case law is therefore contrary to Shwartz's position that Hicham Khodr needs to be personally named, as under Rule 65, corporate officers are *de facto* bound by injunctions naming the officers' affiliated entities.

Shwartz seems to have reached this same conclusion as he concedes that "[a]rguably, the plain language of Rule 65 makes such an injunction automatically binding without the explicit naming of Uptown Grill and Hicham Khodr, individually."[153] Shwartz therefore asks this Court to include the language of Federal Rule of Civil Procedure 65(d)(2) in its injunction. As this Court finds that this language is already implicit in the injunctions issued by this Court, this Court has no difficulty granting Shwartz's request. The injunction that this Court issues will therefore enjoin the parties, the parties'

---

[152] *See e.g.,* Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1351 (Fed. Cir. 1998) ("[I]t is clear that Cotton was bound by the injunction when it was entered against AdCon in August 1993, even though Cotton was not a named party to the underlying infringement suit. Rule 65(d) specifically names "officers" of a defendant as among those who are bound by an injunction, and there is a substantial body of case law in support of that proposition." (citations omitted)); Elec. Workers Pension Tr. Fund of Local Union |58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 382 (6th Cir. 2003) ("Whether or not Pipia was a named defendant in the order, or even mentioned at all, is not controlling. Pipia, as an officer of the corporation and the one responsible for the corporation's affairs, was subject to the court's order just as the corporation itself was." (citations omitted)).
[153] Doc. 428 at 7.

officers, agents, servants, employees, attorneys, and other persons in active concert or participation therewith.[154]

Additionally, Khodr argues that Uptown Grill should be excluded from this Court's injunction. Uptown Grill was included in this Court's previous injunction as a sublicensee to the License Agreement. Khodr argues that this Court's previous injunction is distinguishable as it "addressed trademark use by both the Uptown and Chartres location."[155] This Court does not find the previous injunction distinguishable. This Court previously enjoined use of the Camellia Grill Marks beyond the Carrollton restaurant after finding a breach of the License Agreement at the Chartres location. Even Khodr concedes that the "factual scenario and legal issues presented are nearly identical."[156] This Court therefore holds that, like in the previously issued injunction, the parties to the injunction should be the parties to the License Agreement: The Grill Holdings, Uptown Grill, and Chartres Grill.

### C. Attorney's Fees

Shwartz also asks that this Court award Shwartz attorney's fees as it did in relation to Shwartz's trademark breach of contract claim. Section 17.2 of the License Agreement provides that the prevailing party in any action or proceeding to enforce the License Agreement be awarded all reasonable attorneys' fees and costs.[157] This Court therefore finds that attorney's fees are warranted.

This Court does agree with Khodr, however, that Shwartz should only be awarded attorney's fees that are associated with Shwartz's breach of contract claim. Shwartz therefore is not entitled to fees related to Shwartz's Motion to

---

[154] *See* FED. R. CIV. P. 65(d)(2).
[155] Doc. 421 at 11.
[156] *Id.* at 9.
[157] Doc. 414-4 at 16.

Dismiss Under the *Rooker-Feldman* Doctrine or Khodr's Motion for Rule 11 Sanctions. Further, Shwartz may only collect attorney's fees that originated after the most recent remand from the Fifth Circuit.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Shwartz's Motion to Dismiss for Lack of Jurisdiction Under the *Rooker-Feldman* Doctrine (Doc. 442), Khodr's Motion for Rule 11 Sanctions (Doc. 456), and Khodr's Motion for Partial Summary Judgment on Trade Dress Injunction (Doc. 435) are DENIED. Shwartz's Motion for Summary Judgment (Doc. 414) is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana this 27th day of January, 2021.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**