UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UPTOWN GRILL, LLC, | * | CIVIL ACTION NO. 13-6560 |
| | * | |
| | * | SECTION: "H"(1) |
| VERSUS | * | |
| | * | JUDGE JANE TRICHE MILAZZO |
| | * | |
| MICHAEL LOUIS SHWARTZ, ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

REPORT AND RECOMMENDATION

Before the Court is the Motion to Fix Attorney's Fees (Rec. Doc. 487) filed by Camellia Grill Holdings ("CGH") and referred to the undersigned for a Report and Recommendation. For the following reasons, it is recommended that the Motion be GRANTED IN PART and that CGH be awarded $56,679.27 in attorney's fees and expenses.

Background

This dispute between the parties concerning the Camellia Grill restaurant has been playing out in litigation over more than a decade in both state and federal court. The District Court's January 27, 2021, Order and Reasons in this action provides much of the history. (Rec. Doc. 470). For purposes of the present motion, the following is relevant.

On August 11, 2006, CGH and/or its affiliates sold the immovable property at 626 Carrollton Avenue (the location of the Camellia Grill restaurant) and the "tangible property located within or upon" the Carrollton restaurant to Uptown Grill, L.L.C., and/or its affiliates. The "tangible property" included "recipes, trademarks, names, logos, and likenesses." On August 27, 2006, CGH and The Grill Holdings, L.L.C. (an affiliate of Uptown Grill) entered into a License Agreement, pursuant to which CGH licensed the federally registered Camellia Grill trademarks to

Grill Holdings. Chartres Grill L.L.C., a sublicensee of Grill Holdings, operated a Camellia Grill style restaurant on Chartres Street in the French Quarter at various times from 2010 through 2017.

Litigation in state court resulted in a final judgment that the License Agreement had terminated as of June 1, 2011. The License Agreement requires that post-termination, Grill Holdings and its affiliates must "avoid any action or the continuance of any condition which might suggest to the public that [it] has any right to the Marks, or that [it] continues to be associated with Licensor" and that Grill Holdings must "discontinue use of all Marks." License Agreement ¶¶ 4.10, 12.1, 12.2, Rec. Doc. 11-3, at 9, 12.

During the course of this federal litigation and through multiple summary judgments and appeals, the District Court held, and the Fifth Circuit ultimately affirmed, that the Bill of Sale transferred all Camellia Grill trademark rights to Uptown Grill. The Fifth Circuit observed that this conclusion meant that the License Agreement was based on a mutually mistaken assumption that CGH owned the Camellia Grill trademarks, resulting in a relatively null agreement. Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc., 920 F.3d 243, at 250 (5th Cir. 2019). But, because Uptown Grill and its affiliates had not sought to nullify the License Agreement and a court cannot declare a relative nullity on its own initiative, the License Agreement must be enforced as far as possible. Id.

Meanwhile, on February 9, 2018, the District Court partially granted a motion for summary judgment filed by CGH, holding that Grill Holdings and its affiliates had violated the License Agreement by using the Camellia Grill trademarks in operating the Chartres Grill between June 1, 2011 (the date the License Agreement was held to have been terminated), through 2017. The court held that CGH was entitled to its attorney's fees as the prevailing party under the License

Agreement and referred the calculation of the amount of reasonable fees to the undersigned for a Report and Recommendation.

The undersigned reviewed the invoices submitted by CGH in support of its attorney's fees incurred through May 22, 2018. Importantly, this lawsuit included many other claims that failed, such as CGH's claims that Grill Holdings and its affiliates were not authorized to operate the Carrollton Street location, that CGH is the owner of the marks everywhere except the Carrollton Street location, that CGH and its affiliates were entitled to damages for conversion, that CGH and its affiliates were entitled to damages under the Lanham Act, and that CGH and its affiliates were entitled to damages under Louisiana law. But only fees related to the breach of the post-termination provisions of the Licenses Agreement were recoverable. Thus, the court required CGH to submit a revised list of fees that included only those related to that issue.

CGH submitted a revised list that included fees incurred between 2013 and 2018. The undersigned determined that the first document in the record where one of the parties explicitly raised arguments regarding breach of the post-termination provisions of the License Agreement was in a Motion for Partial Summary Judgment filed on September 27, 2016. The court found it appropriate to award CGH all attorney's fees and costs claimed to be related to that License Agreement dispute beginning in September 2016. But as to the attorney's fees and costs incurred before September 2016, although CGH claimed its revised list included only fees related to the breach of the post termination provisions of the License Agreement, the undersigned determined that only 50% of those fees were recoverable because that earlier work nonetheless concerned multiple purposes, not only the breach of the License Agreement.[1] The attorney's fees both before and after September 2016 were reduced an additional 25% considering the results obtained: that

---

[1] For example, entries included revisions to the petition, drafting of a motion to remand, work on discovery, and drafting the pretrial order. (Rec. Doc. 381-1). These tasks would bear on all the causes of action pending.

is, although CGH had succeeded in preventing Uptown Grill and its affiliates from using the Camellia Grill trademarks outside of the Carrollton location, it had not actually succeeded in being able to use the marks itself and had failed to show it had suffered any damages as a result of the breach of the License Agreement. The District Court adopted the Report and Recommendation in its entirety. (Rec. Doc. 394).

In previous rulings, the District Court had held that CGH and its affiliates could not sustain their claims that Grill Holdings and its affiliates had breached the License Agreement by using the Camellia Grill *trade dress*. The Court found that CGH and its affiliates did not own any trade dress rights relative to the Carrollton location and could not assert any claims beyond that location because the License Agreement did not articulate the elements constituting the putative trade dress. CGH and its affiliates began pursuing an appeal of this ruling (among others) around the same time the undersigned was considering their first motion to fix attorney's fees.

On March 29, 2019, the Fifth Circuit held that the elements of a claimed trade dress need not necessarily be articulated in a contract for a party to enforce its rights under the contract, reversing the District Court's ruling on this issue. Uptown Grill, 920 F.3d at 251.On remand, the District Court held that Grill Holdings and Chartres Grill breached the post-termination provisions of the License Agreement by using the Camellia Grill trade dress at the Chartres location after the termination of the License Agreement. The District Court enjoined Grill Holdings, Uptown Grill, and Chartres Grill from using all or most of the Camellia Grill trade dress elements (as defined by the court) at any single location. The District Court also awarded CGH its attorney's fees incurred in connection with enforcement of the License Agreement's post termination provision regarding trade dress. The Court ordered that the fee award includes all fees incurred before and after the current remand and in connection with the successful appeal but excludes fees related to the

4

Motion to Dismiss under Rooker-Feldman, the Motion for Rule 11 Sanctions, and any requests under the Lanham Act.

The court must now determine the amount of the attorney's fee award. At the time of the previous fee award, CGH and its affiliates were represented by Irl Silverstein. He continued to serve as lead counsel through the February 6, 2019, oral argument on the most recent Fifth Circuit appeal. After that date, Stephen McDavid in Mississippi served as lead counsel and CGH retained Johanna McMullan and Chip Westbrook, also based in Mississippi, to serve as local counsel. CGH seeks to recover for $44,999.19 in fees incurred for Mr. Silverstein's work, $42,825 for fees incurred for Mr. McDavid's work, $22,500 for fees incurred for work by Ms. McMullan and Mr. Westbrook, $1,037 for the work of their paralegal, and $1,187.66 in expenses.

Grill Holdings does not challenge the rates charged by Mr. Silverstein, Mr. McDavid, Ms. McMullan, and Mr. Westbrook. However, it challenges the hours expended on numerous grounds. It argues that time to get new counsel up to speed on the matter should not be included, that duplication of effort and travel expenses resulting from CGH's decision to retain a Mississippi attorney as lead counsel should not be included, and that time related to issues besides trade dress should not be included. It argues that the Fifth Circuit appeal and the proceedings on remand concerned numerous issues besides trade dress and insists that the attorney's fee award must be limited to work that is directly related to the trade dress issue.

<u>Law and Analysis</u>

1. *Award of Attorney's Fees*

Louisiana law on the calculation of attorney's fees applies to this diversity jurisdiction case concerning a contract governed by Louisiana law. "The Louisiana Supreme Court [and the Rules of Professional Conduct] . . . have placed an obligation on courts to inquire into the reasonableness

of attorney fees stipulated in contractual agreements." <u>Cashman Equip. Corp. v. Smith Marine Towing Corp.</u>, No. CV 12-945, 2013 WL 12229038, at *4 (E.D. La. June 27, 2013), <u>report and recommendation adopted,</u> No. CV 12-945, 2013 WL 12228976 (E.D. La. July 12, 2013) (quoting <u>Teche Bank & Tr. Co. v. Willis</u>, 631 So. 2d 644, 646 (La. Ct. App. 1994)).  Thus, Louisiana courts consider the following factors in making an award of attorney's fees:

> ultimate result obtained; responsibility incurred; importance of the litigation; amount involved; extent and character of labor performed; legal knowledge; attainment and skill of the attorney; number of appearances made; intricacies of facts and law involved; diligence and skill of counsel; court's own knowledge; and ability of party liable to pay.

<u>S. Jackson & Son, Inc. v. Aljoma Lumber, Inc.</u>, 637 So. 2d 1311, 1313 (La. Ct. App. 1994) (quoting <u>Julius Cohen Jeweler, Inc. v. Succession of Jumonville</u>, 506 So. 2d 535, 541 (La. Ct. App.)). These factors are most useful when guiding an award of fees that is not based on hours worked. For example, in <u>Jackson</u>, the court of appeals was reviewing an award of $750 in attorney's fees that appears to have been awarded without a consideration of hours worked. 637 So. 2d at 1313. In <u>Julius Cohen</u> the court of appeal awarded attorney's fees of 10% of the principal amount awarded. 506 So. 2d at 541.

The United States Court of Appeals for the Fifth Circuit has held that factors used by Louisiana courts are "very similar to those used in the federal 'lodestar'" method. <u>Chevron USA, Inc. v. Aker Mar. Inc.</u>, 689 F.3d 497, 505 (5th Cir. 2012). In <u>Chevron</u>, the Fifth Circuit found that the District Court did not err in applying the lodestar method to determine attorney's fees where Louisiana law applied. <u>Id.</u>  Relying on <u>Chevron</u>, the court in <u>Cashman</u> also used the two-step lodestar approach where there was an arguable possibility that Louisiana law applied. 2013 WL 12229038, at *4.

Under the lodestar method, the Court first computes the lodestar "by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work." Matter of Fender, 12 F.3d 480, 487 (5th Cir. 1994). The party requesting fees bears the burden of proving that the rates charged and hours expended are reasonable. See Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); Walker v. U.S. Dep't of Hous. & Urban Dev., 99 F.3d 761, 770 (5th Cir. 1996); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995).

"The court then adjusts the lodestar upward or downward depending upon the respective weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)." Fender, 12 F.3d at 487. The Johnson factors are:

> 1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) award in similar cases.

Id.

2. *Hourly Rate*

CGH seeks an hourly rate of $200 for its former counsel Irl Silverstein, a rate of $250 per hour for Stephen McDavid's time, a rate of $225 for Johanna McMullan's time, and a rate of $85 for paralegal time. CGH also seeks to recover for time spent by William Westbrook, but has not explicitly stated Mr. Westbrook's hourly rate. However, it appears his hourly rate is also $225. Grill Holdings does not challenge these rates, and the court finds these rates to be reasonable. See, e.g., Adams v. City of New Orleans, No. CIV.A. 13-6779, 2015 WL 4606223, at *3 (E.D. La. July 30, 2015) (collecting cases).

3.  *Hours Expended*

    a.  *Mr. Silverstein*

CGH seeks to recover for the time spent by Mr. Silverstein working on the appeal from May 2018 through February 6, 2019. He has submitted his fee invoice for that time period and has excluded about $7,000 worth of time because it was not related to the appeal. He submits that at least 50% of his time spent on the appeal should be allocated to the enforcement of the License Agreement in regard to trade dress. He says that 33% of the original brief concerned trade dress issues. In support, he lists four trade dress related argument subparts from the brief: whether the court erred in finding that the trade dress does not exist or that CGH has no protectable interest in the use of the trade dress; whether the trade dress was sufficiently described in the License Agreement to place the parties on notice; whether the trade dress was inherently distinctive or acquired a secondary meaning; and whether a possibility of confusion existed as to trade dress so as to provide a remedy under the Lanham Act. Silverstein says that about 70% of the opposition brief addressed trade dress arguments and that 57% of the reply brief concerned trade dress arguments.

In opposition, Grill Holdings submits that only nine pages of the 63-page CGH appeal brief concerned violation of the license agreement by the use of the alleged trade dress. It argues that only one of the eight subparts in the assignments of error section of the brief concerned violation of the License Agreement by use of the alleged trade dress (that is, the first of the four subparts listed by Mr. Silverstein). Grill Holdings adds that even this argument focused in part on an alleged breach of the License Agreement by use of the trade dress at the Carrollton Location, an argument the Fifth Circuit rejected.

The parties' summaries of the briefing show that multiple issues were addressed in the appeal. CGH seems to take the position that 50-70% of the appeal concerned the trade dress/License Agreement issue. But CGH seems to have improperly included trade dress issues related to the Lanham Act in its calculations. Grill Holdings' calculations assign about 12-15% of the appeal to the trade dress/License Agreement. The court does not have the briefing before it, but has reviewed the Fifth Circuit's opinion resolving the appeal. The "Discussion" in the opinion is broken into two sections, "The Bill of Sale" and "The License Agreement." The Bill of Sale section is divided into three subsections, none of which concern a breach of the License Agreement. The License Agreement section is divided into two subsections: "Trade Dress" and "Damages based on use of trademarks." About half of a page of the Fifth Circuit's four-page Discussion concerned whether the License Agreement afforded CGH any enforceable rights concerning the trade dress. This indicates that the Fifth Circuit devoted about 13% of its efforts to the issue. Considering the various calculations, the court finds that about 20% of the appeal is related to the trade dress/License Agreement issue upon which CGH was successful. Accordingly, the court finds it appropriate to reduce Mr. Silverstein's appeal related work by 80%. His fees of $11,044.37 are reduced to $2,208.87.

CGH also seeks to recover for the time spent by Mr. Silverstein between April 4, 2014, and April 5, 2018. Mr. Silverstein previously submitted these *same* fee bills to the undersigned for consideration when fees were awarded in 2018. About 395 hours of time entries for a total of $78,954 in fees are listed. As discussed above, when considering the first request for fees, the court required CGH to submit a supplemental memorandum explaining which of those time entries were attributable to its claim that Grill Holdings and its affiliates had breached the post-termination provisions of the License Agreement. The revised list included 162.85 hours for a total of $42,570

in fees and is a subset of the fees claimed on the original list. Mr. Silverstein attested that he was familiar with the activities related to the enforcement of the License Agreement and that the list reflected time spent on that matter. Of the fees claimed on the revised list, the court awarded all fees claimed between September 2016 and May 2018 (subject to a reduction based on the <u>Johnson</u> factors). The court awarded fees for 50% of the time claimed before September 2016 (subject to the same <u>Johnson</u> factors reduction).

In submitting the same original list for fees incurred for 2014-2018, CGH now requests 50% of those fees, reasoning that the other 50% were already part of the previous fee award.[2] However, CGH is not entitled to all of its fees incurred that were not previously awarded. It is now entitled to fees related to its efforts to enforce the post termination provisions of the License Agreement as to the *trade dress*. It is not possible that 50% of the original bills are both related to this issue and not included in the previous fee award. This litigation has included several other claims for which CGH is not entitled to its attorney's fees, such as claims concerning the Bill of Sale, Lanham Act claims, and state law damages claims. This court previously found that the first document to explicitly raise breach of the post-termination provisions of the license agreement was a motion for partial summary judgment filed on September 27, 2016. That motion raised both the use of the trademarks and the trade dress as violations of the License Agreement. Although CGH had not been successful on the trade dress issue at that time, the court did not reduce the fees in September 2016 on this basis. Indeed, it seems that when CGH previously segregated time related to enforcing the License Agreement from other time, both trade dress and trademark related breaches may have been included. Considering that CGH has made no effort to explain which of

---

[2] Mr. Silverstein erroneously states that the court cut the original list by 50%. As discussed above, the court cut 50% of the time incurred before September 2016 on the revised, not the original, list. The cutting of the original list by approximately 50% was done by Mr. Silverstein based on Mr. Silverstein's assessment of which of the fees on the original list related to the enforcement of the post-termination provisions of the License Agreement.

the fees listed on the original list are both related to the trade dress issue and are not part of the previous award, the court finds that CGH has failed to show that any of the fees on the original list must be compensated as part of the present fee award.

      b.   *Fees of Mr. McDavid, Ms. McMullan, Mr. Westbrook, and their paralegals*

CGH seeks a total of approximately $67,549.66[3] in fees and expenses incurred by Mr. McDavid, Ms. McMullan, Mr. Westbrook, and their paralegals. They did not begin working on this matter until after the Fifth Circuit appeal. The only issue remanded by the Fifth Circuit was the issue of whether Grill Holdings breached the License Agreement by using the alleged elements of the trade dress. And this is the issue for which attorney's fees have been awarded. Nonetheless, the District Court has explicitly excluded fees related to the <u>Rooker-Feldman</u> Motion, the Sanctions Motion, and any Lanham Act requests from the attorney's fee award. CGH asserts that it has excluded such time entries from its fee request.

Grill Holdings argues that CGH should not be allowed to recover for the time spent by their new counsel getting up to speed. Grill Holdings identifies approximately 27.5 hours spent by Mr. McDavid on preliminary matters like reviewing case status, meeting with the client, researching local counsel, and emailing regarding pro hac vice admission. Grill Holdings identifies approximately 13.9 hours Ms. McMullan spent on tasks such as reviewing and analyzing pleadings and motions in the state and federal litigation from as early as 2012. Grill Holdings' challenges to Mr. Westbrook's time include .4 hours spent working on a motion to enroll pro hac vice. Grill Holdings also shows that almost all of the time billed by Ms. McMullan's paralegals was spent on

---

[3] The memorandum includes a table summarizing CGH's request for attorney's fees, which totals $111,361.19. (Rec. Doc. 481-1, at 11). The affidavit of Ms. McMullan indicates that $1,187.66 in fees is also being requested. (Rec. Doc. 487-4, at 22-24). The court notes that the professional fees listed in the table match the totals in the affidavit, however, upon the court's manual calculation, the total fees listed in the affidavits do not quite equal the totals calculated by counsel. For purposes of the fee award, the court has written off those time entries it finds unreasonable and has manually calculated the sum of the recoverable fees so any error in counsel's calculation does not affect the calculation of the fee award.

downloading prior filings from the court or preparing pro hac vice motions.  Expenses of $126.50 were incurred for copying and downloading.

CGH argues that the Rules of Professional Conduct require reasonable preparation to provide competent representation.[4] Further, the Local Rules require counsel to be familiar with all documents and court orders filed in the case and any consolidated cases.[5] It insists, therefore, that it was appropriate for Mr. McDavid and Ms. McMullan to review the pleadings to understand the lengthy factual and procedural history of the matter and provide CGH with competent representation.

The court agrees with Grill Holdings[6] that a prevailing party awarded reasonable attorney's fees is not necessarily entitled to charge its opponent for work that would not have been needed had its original counsel been retained. Indeed, courts have refused to require that the losing party pay for the attorney's fees associated with the prevailing party's change in counsel.[7]  Of course a party can choose to change its counsel or circumstances may require that it do so. But the fees awarded by contract must be reasonable.[8] When this court reviews fee bills, it considers what a

---

[4] Louisiana Rule of Professional Conduct 1.1 provides that "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." La. St. Bar Art. 16, R. Prof. Conduct 1.1.

[5] Local Rule 83.2.8 provides that "All counsel of record must be familiar with the substance of all documents and court orders filed in the case and any consolidated cases."

[6] Grill Holdings has not cited law in support of its position, nor has CGH cited law to counter it (besides invoking an attorney's ethical duty to provide competent representation).

[7] See Trafficware Grp., Inc. v. Sun Indus., LLC, No. CV 15-106-SDD-EWD, 2017 WL 4810001, at *8 (M.D. La. Oct. 25, 2017), aff'd in part, rev'd in part, 749 F. App'x 247 (5th Cir. 2018) ("Command's business decision to change counsel a few months prior to trial is not the fault of Sun, and Sun should not be responsible for the time required to bring Command's new counsel "up to speed" on this case."); Computer Stat., Inc. v. Blair, 418 F. Supp. 1339, 1350 (S.D. Tex. 1976) ("[A]ny additional attorney's fee paid by plaintiff because of these changes [in counsel] should not be assessed against the defendants."). On appeal in Trafficware, the Fifth Circuit held that the district court had abused its discretion in reducing the attorney's fees award to account for new counsel because the contract provided the prevailing party would be entitled to reimbursement of "all attorney fees." 749 F. App'x at 254. The court of appeals observed that "although the ruling would otherwise not be an abuse of discretion, it is reversible error to have departed from the contractual language." Id.  Unlike in Trafficware, the contract here provides for an award of "all *reasonable* attorneys' fees and costs" to the prevailing party. License Agreement, ¶ 17.2, Rec. Doc. 11-3, at 15 (emphasis added).

[8] See Jolie Design & Décor, Inc. v. Gogh, No. CV 15-0740, 2016 WL 4708210, at *4 (E.D. La. Aug. 11, 2016), report and recommendation adopted, No. CV 15-0740, 2016 WL 4718186 (E.D. La. Sept. 8, 2016) ("[W]hile a party is free

discerning client would expect. At a minimum, such a client would expect its new attorneys to get up to speed in an efficient manner and in many cases would expect its counsel to do so on their own time. Only in rare circumstances does this court find it appropriate to award the prevailing party fees incurred solely because of a change in counsel. Here, the issue on remand was limited in scope and would not require extensive review of prior rulings unrelated to the issue at hand. Under the circumstances, the court finds that the amount of time spent by Mr. McDavid, Ms. McMullan, Mr. Westbrook, and their paralegals on the preliminary matters identified by Grill Holdings was not reasonable. The court now calculates that $34,925 of Mr. McDavid's time is recoverable, $18,900 of the Ms. McMullan and Mr. Westbrook's time is recoverable, and $51 of the paralegals' time is recoverable.[9] Similarly, the expenses spent on downloading prior filings from the court's docket cannot be recovered. The expenses claimed must be further reduced as discussed below.

Grill Holdings also argues that CGH should not be allowed to recover for expenses for Ms. McMullan's travel to and from New Orleans from Mississippi in the amount of $466.76. Grill Holdings argues that it should not bear the extra expense of CGH's choice to hire Mississippi lawyers to handle a Louisiana case in Louisiana federal court. The court agrees that under the circumstances, these travel expenses should not be borne by Grill Holdings and will reduce the award by this amount. This leaves $594.40 in fees for which CGH can recover after removing the downloading costs and unnecessary travel expenses.[10]

---

to employ multiple attorneys, that party's opponent is not required to pay for duplicative work by those attorneys – it remains the burden of the party seeking fees to demonstrate the reasonableness of all the fees it seeks.").

[9] The court attaches as an Appendix to its decision a copy of the McMullan and McDavid affidavits reflecting the time written off as preliminary and duplicative because it arises out of the retention of new counsel. This Appendix also reflects the court's calculation of the amounts recoverable.

[10] The calculation of the recoverable fees is also included in the Appendix.

To the extent Grill Holdings argues that other time should be cut because using multiple attorneys resulted in duplication of effort, it has failed to highlight any examples of such additional expense. In reviewing the invoices, the court has not identified any examples of two attorneys attending a hearing, conference, or deposition where one attorney could have done the work. No additional cuts will be made on the basis of CGH's use of multiple attorneys alone.

Grill Holdings argues that all time spent by Mr. Westbrook should be stricken because he did not sign any of the pleadings concerning the trade dress issue for which fees are recoverable. CGH responds that Ms. McMullan's affidavit, which includes the fees expended by herself, her paralegals, and Mr. Westbrook, has already excluded any time related to the <u>Rooker-Feldman</u> and sanctions issues.[11] It argues that these were the only two issues carved out of the court's award of attorney's fees. It insists that all fees claimed on the affidavit are recoverable. It adds that Mr. Westbrook's time entries reflect his familiarization with the case, his attendance at conferences, and his work on various trade dress related pleadings.

The court finds no indication that the time entries in Ms. McMullan's affidavit include time spent on <u>Rooker-Feldman</u> or sanctions issues. Most of the entries reference the breach of contract claims, the standing issue (one raised by Grill Holdings in an attempt to dispose of CGH's request for an injunction regarding use of the trade dress), or the preparation of an opinion letter for the client. None refer to the excluded issues. Ms. McMullan and Mr. Westbrook's time entries are detailed and the entries are not block billed. The fact that Mr. Westbrook did not sign certain motions or pleadings does not mean he was not involved in preparing them or analyzing the trade dress/License Agreement issue. The court agrees with CGH's assessment that besides the <u>Rooker-Feldman</u> and sanctions issues, this matter has related to the trade dress/License Agreement issue

---

[11] CGH also responds that Mr. McDavid worked solely on the trade dress claims and therefore all of his time is recoverable.

14

that was remanded by the Fifth Circuit. Accordingly, the court finds the time claimed on Ms. McMullan's affidavit and not related to preliminary matters is recoverable.

Similarly, the court cannot find that the time entries in Mr. McDavid's affidavit related to the excluded issues. CGH submits that Mr. McDavid worked solely on the trade dress claims and argues that all of his time is recoverable. Grill Holdings has acknowledged the relevance of the time entries that explicitly concern the trade dress issue and/or the trade dress motion, but it challenges others as unrelated. Importantly, though, the court finds that none of these refer explicitly to the Rooker-Feldman, sanctions, or Lanham Act issues. They concern a damages stipulation and plan for remand, meetings and communications with the client, work related to the scheduling order and pretrial order, and preparation of the fee award motion and affidavits. The court finds that this time falls within the scope of the fees awarded by the District Court.

Based on the court's analysis above, the lodestar calculation of reasonable fees and expenses is equal to $2,208.87 for Mr. Silverstein's time. As noted above, the reasonable fees of Mr. McDavid are equal to $34,925, the reasonable fees of Ms. McMullan and Mr. Westbrook are equal to $18,900, and the reasonable fees of the paralegals are equal to $51. Reasonable expenses of Ms. McMullan's firm are equal to $594.40. The total lodestar award equals $56,679.27.

   *4. Reasonableness Factors*

CGH does not seek to increase the award requested on the basis of the Johnson factors. Indeed, many of the Johnson factors are subsumed within the lodestar analysis above. Grill Holdings argues that the fee award should be further reduced under the Johnson factors. However for the reasons below, the court declines to do so.

### a. Ultimate Result Obtained

With regard to results obtained, Grill Holdings challenges Mr. Silverstein's request for fees as including time spent on other issues. The court has already addressed this concern in assessing the reasonable hours expended above, which resulted in a significant reduction of Mr. Silverstein's fees. The court finds no further reason to reduce or increase the fee award because of the ultimate results obtained.

### b. Responsibility Incurred

On the responsibility incurred factor, Grill Holdings directs the court to its arguments on the hours incurred. The court has already addressed these issues above and finds no further reason to reduce or increase the award on the basis of responsibility incurred.

### c. Importance of the Litigation

The parties agree that the litigation was important to both sides. Grill Holdings argues that CGH's main goal was to obtain ownership of the Camellia Grill trademark, and on that matter, it failed. It argues that the breach of the license agreement was subsidiary to the infringement and ownership issues and was less important. The court has already limited fees to those incurred enforcing the License Agreement for breach of trade dress. The court finds no further basis to reduce or increase the award because of the "importance" of the litigation.

### d. Amount Involved

Grill Holdings argues despite ten years of litigation, no monetary damages were awarded to CGH because it was unable to prove any compensable damages. It argues that the history of this case does not justify a fee award of over $110,000. Further, it points out that the court previously awarded $22,362.56 in attorney's fees for CGH's efforts in enforcing the License Agreement on

the trademark issue. It points out that CGH now seeks far greater fees for a much shorter time frame. It adds that CGH seeks fees that were already reviewed and awarded.

CGH responds that its request for fees is not an attempt to obtain compensatory damages. It insists that it has incurred in excess of $500,000 in attorney's fees throughout the duration of this litigation. It points out that Grill Holdings' affiliates initiated this case and refused to abide by prior state court judgments and the Licenses' post-termination clause. It argues that this is the reason for the length and complexity of the litigation.

As to fees previously reviewed and awarded, the court has already addressed this issue in assessing the reasonableness of the hours expended. Although CGH did not receive a fee award, it did obtain an injunction. The matter remanded was solely trade dress/License Agreement issue. If this issue was not worth fighting over, Grill Holdings just as well as CGH could have ceased litigating. The court finds no reason to further reduce the award because of the amount in dispute.

### e. Extent and Character of Labor Performed

Grill Holdings directs the court to its arguments on the hours incurred. The court has already addressed these issues above and finds no further reason to reduce or increase the award on the basis of the extent and character of labor performed.

### f. Legal Knowledge, Attainment and Skill of the Attorney, and Diligence of the Attorney

Grill Holdings directs the court to its arguments on the hours incurred. It does not argue that CGH's counsel was not competent in the area of law concerning contracts. The court has already addressed counsel's knowledge, diligence, and skill in assessing the reasonableness of their fee rate and does not find that legal knowledge, diligence, or skill of the attorneys justifies an increase or decrease in the award.

*g.  Number of Appearances Made*

Grill Holdings submits that the single issue for which CGH was awarded fees involves only the appeal and motions for summary judgment. It argues that other appearances are irrelevant and should be disregarded. CGH responds that this case has involved countless appearances by counsel at conferences, hearings, depositions, and appellate oral arguments over the span of this litigation from 2014-2021. It points out that the docket includes nearly 500 entries. The court finds that its consideration of the reasonableness of the hours spent sufficiently addresses the number of appearances made and that this factor does not justify an increase or decrease in the award.

*h.  Intricacies of Facts and Law Involved*

Grill Holdings argues that the only claim at issue is one of contract interpretation, not a specialized area of law. It argues the issue is simple and justifies a decrease in fees. CGH responds that this is a gross over-simplification. It insists that this matter involves the application and interaction of both state contract law and federal trade dress law, including the rights and obligations of the parties to the License Agreement, the binding effect of the License Agreement on affiliates, the application of Louisiana state law to the breach of the License Agreement, and the application of the Lanham Act in the context of interpreting the trade dress found in the License Agreement. The court does not find the intricacies of the facts and law justify a reduction of the award. The record reflects that the trade dress/License Agreement issue was complicated enough to result in reversal on appeal. The court finds that its previous consideration of the reasonable hours expended sufficiently addresses this factor.

*i.  Court's Own Knowledge*

Grill Holdings argues that the court's knowledge of this case and the previous fee award justifies a reduction in fees here. CGH argues that as this court previously found, this factor does

not justify an increase or reduction of the award. The court again finds that this factor does not justify a reduction or increase of the award.

      *j.*   *Ability of Party Liable to Pay*

Grill Holdings submits that the Chartres Location has not operated since 2017 and that it was Chartres Grill that was deemed to have violated the License Agreement. It insists Chartres Grill has no ability to pay. It complains that any award would require another juridical person to cover the costs and fees. CGH argues that Grill Holdings and its affiliates were able to fund a brigade of attorneys to pursue this litigation since 2010. It adds that the judgment of attorney's fees is against Grill Holdings and Uptown Grill also. It points out that Grill Holdings has made no representation as to their ability to pay. CGH also notes that the court previously rejected a reduction of the  award based on this factor.

The judgment for attorney's fees has been rendered against Grill Holdings *and its affiliates*. These affiliates have been treated as a single group throughout this litigation. There is no indication that the affiliates of Chartres Grill lack the funds to pay an attorney's fees award. The court finds that this factor does not justify a reduction in the award.

<u>Conclusion</u>

For the foregoing reasons the court recommends that CGH's Motion for Fix Attorney's Fees be GRANTED and CGH be awarded $56,679.27 in attorney's fees and expenses.

<u>Objections</u>

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 8th day of December, 2021.

Janis van Meerveld
United States Magistrate Judge

## Appendix

Uptown Grill, LLC v. Michael Louis Shwartz, et al.
Civil Action No. 13-6560, c/w No. 14-810, c/w No. 14-837

# McDavid and Associates, PC

## Attorneys at Law

P.O. Box 1113
Oxford, Mississippi 38655
February 1, 2019 - October 7, 2021

**Regarding:** Shwartz (Camellia Grill)- 19185.0000

*(handwritten: preliminary)*

| Date | Description | Time |
|------|-------------|------|
| 8-Feb-2019 | Emails with client re representation | 0.2 |
| 11-Feb-2019 | Reviewing case status; Meeting with client | 4.3 |
| 19-Feb-2019 | Emails with client and I. Silverstein re representation status | 0.3 |
| 29-Mar-2019 | Reviewing Fifth Circuit opinion; Email to client re same | 0.6 |
| 14-Jun-2019 | Emails with client re meeting and case strategy | 0.5 |
| 2-Aug-2019 | Emails with client re status | 0.2 |
| 5-Aug-2019 | Researching local counsel; Emails potential local counsel re same | 0.6 |
| 13-Aug-2019 | Emails with client re local counsel recommendations | 0.3 |
| 16-Aug-2019 | Emails with client re local counsel | 0.2 |
| 19-Aug-2019 | Email to client re local counsel | 0.3 |
| 20-Aug-2019 | Emails with client re local counsel | 0.2 |
| 27-Aug-2019 | Emails with client re local counsel | 0.3 |
| 11-Nov-2019 | Emails with I. Silverstein and client re conference with court | 0.3 |
| 12-Nov-2019 | Reviewing and revising letter to Court; Emails with client re same | 0.7 |
| 13-Nov-2019 | Reviewing and revising letter to Court; Emails with client re same | 0.6 |
| 14-Nov-2019 | Reviewing and revising letter to Court; Emails with client re same; Faxing final letter to all parties | 0.8 |
| 15-Nov-2019 | Emails with client re conference call and pro se representation | 0.2 |
| 18-Nov-2019 | Reviewing I. Silverstein's motion to withdraw and proposed order; Emails with client re same | 0.3 |
| 19-Nov-2019 | Reviewing conference call outline; Emails with client re same; Reviewing motion to withdraw and orders from the court; Emails with client re same | 0.7 |
| 20-Nov-2019 | Emails with opposing counsel re conference call | 0.1 |
| 21-Nov-2019 | Conference call with the court; Meeting with client | 4.2 |
| 3-Dec-2019 | Emails with client re complaint and local counsel; Email to J. McMullan re local counsel | 0.4 |
| 4-Dec-2019 | Drafting letter to I. Silverstein re discovery documents | 0.4 |
| 5-Dec-2019 | Reviewing and revising letter to I. Silverstein; Emails with client re same | 0.8 |
| 9-Dec-2019 | Reviewing and revising complaint; Email with client re same | 1.7 |
| 10-Dec-2019 | Emails and tc with J. McMullan re local counsel | 0.5 |
| 12-Dec-2019 | Emails and tc with J. McMullan re local counsel | 0.3 |

*preliminary*

| | | |
|---|---|---|
| 13-Dec-2019 | Emails with I. Silverstein and client re discovery | 0.2 |
| 16-Dec-2019 | Emails with I. Silverstein re discovery; Emails with client re local counsel | 0.3 |
| 17-Dec-2019 | Emails with client re local counsel; Emails with I. Silverstein re discovery | 0.2 |
| 18-Dec-2019 | Emails with client re local counsel | 0.1 |
| 19-Dec-2019 | Emails with J. McMullan re PHV admission | 0.2 |
| 31-Dec-2019 | Revising and executing PHV documents | 0.3 |
| 2-Jan-2020 | Emails with J. McMullan re PHV admission; Emails with client re conference | 0.3 |
| 3-Jan-2020 | Emails with J. McMullan re PHV admission and court conference; tc with J. McMullan re conference; Reviewing and revising complaint; Emails with client re same | 2.8 |
| 6-Jan-2020 | Researching potential damages for trade dress breach | 1.6 |
| 7-Jan-2019 | Emails with opposing counsel re conference; Attending conference; Meeting with client re same | 5.1 |
| 8-Jan-2020 | Emails with client re damages and stipulation | 0.2 |
| 10-Jan-2020 | Emails with client re damages and plan for remand | 0.4 |
| 13-Jan-2020 | Emails with client re damages and plan for remand | 0.3 |
| 14-Jan-2020 | Emails with client re conference with opposing counsel and potential agreed order; tc with opposing counsel; Emails with opposing counsel re potential agreed order | 0.8 |
| 15-Jan-2020 | Emails with client and opposing counsel re agreed order | 0.3 |
| 27-Jan-2020 | Emails with opposing counsel re agreed order; Emails with client re same | 0.3 |
| 30-Jan-2020 | Reviewing and revising proposed agreed order; Emails with opposing counsel re same | 0.5 |
| 31-Jan-2020 | Reviewing proposed agreed order; Emails with opposing counsel and client re same | 0.5 |
| 2-Jan-2020 | Emails with J. McMullan re PHV admission; Emails with client re conference | 0.3 |
| 3-Jan-2020 | Emails with J. McMullan re PHV admission and court conference; tc with J. McMullan re conference; Reviewing and revising complaint; Emails with client re same | 2.8 |
| 6-Jan-2020 | Researching potential damages for trade dress breach | 1.6 |
| 7-Jan-2019 | Emails with opposing counsel re conference; Attending conference; Meeting with client re same | 5.1 |
| 8-Jan-2020 | Emails with client re damages and stipulation | 0.2 |
| 10-Jan-2020 | Emails with client re damages and plan for remand | 0.4 |
| 13-Jan-2020 | Emails with client re damages and plan for remand | 0.3 |
| 14-Jan-2020 | Emails with client re conference with opposing counsel and potential agreed order; tc with opposing counsel; Emails with opposing counsel re potential agreed order | 0.8 |
| 15-Jan-2020 | Emails with client and opposing counsel re agreed order | 0.3 |

Handwritten annotations (right margin):
5.3
5.7
6.0
6.8
7.1
7.4
7.9
8.4
*preliminary*
10
15.1
15.3
15.7
16
16.8
17.1

| Date | Description | Hours | |
|---|---|---|---|
| 27-Jan-2020 | Emails with opposing counsel re agreed order; Emails with client re same | 0.3 | 17.4 |
| 30-Jan-2020 | Reviewing and revising proposed agreed order; Emails with opposing counsel re same | 0.5 | 17.9 |
| 31-Jan-2020 | Reviewing proposed agreed order; Emails with opposing counsel and client re same | 0.5 | 18.4 |
| 4-Feb-2020 | Emails with client and opposing counsel re stipulation | 0.3 | 18.7 |
| 6-Feb-2020 | Attending court conference; Meeting with client | 5.1 | 23.8 |
| 7-Feb-2020 | Emails and tc with opposing counsel re stipulation | 0.3 | 24.1 |
| 14-Feb-2020 | Follow up email to opposing counsel re stipulation | 0.2 | 24.3 |
| 18-Feb-2020 | Email with client re status; Follow up email to opposing counsel re stipulation | 0.3 | 24.6 |
| 20-Feb-2020 | Reviewing and revising stipulation; Emails with opposing counsel re same | 0.5 | 25.1 |
| 21-Feb-2020 | Reviewing prior court orders; Emails with opposing counsel re stipulation; Emails with client re same | 0.3 | 25.4 |
| 26-Feb-2020 | Emails and tc with opposing counsel re stipulation | 0.4 | 25.8 |
| 2-Mar-2020 | Follow up email to opposing counsel re stipulation | 0.2 | 26 |
| 6-Mar-2020 | Reviewing proposed stipulation; Email to client re same; Emails with J. McMullan re trial accommodations | 0.3 | 26.3 |
| 9-Mar-2020 | Researching and drafting MSJ memorandum re trade dress breach | 3.3 | 29.6 |
| 10-Mar-2020 | Researching and drafting MSJ memorandum re trade dress breach | 2.3 | 31.9 |
| 11-Mar-2020 | Researching and drafting MSJ memorandum re trade dress breach; Email to client re same | 1.2 | 33.1 |
| 12-Mar-2020 | Reviewing MSJ revisions from client; Emails with client re same | 1.2 | 34.3 |
| 13-Mar-2020 | Reviewing MSJ revisions from client; Emails with client and J. McMullan re same | 0.8 | 35.1 |
| 16-Mar-2020 | Revising MSJ memorandum re trade dress breach; Obtaining photos and document re The Grille; Emails with client re same; Reviewing MSJ revisions from client | 1.5 | 36.6 |
| 17-Mar-2020 | Drafting MSJ motion re trade dress breach, notice of submission date, and creating exhibits; Filing MSJ; Email to client re same | 0.8 | 37.4 |
| 18-Mar-2020 | Emails with opposing counsel re continuance of trial date; Emails with case manager re bound MSJ and tracking | 0.2 | 37.6 |
| 20-Mar-2020 | Reviewing joint motion to continue; Emails with opposing counsel re same | 0.2 | 37.8 |
| 23-Mar-2020 | Emails with client re continuance and MSJ | 0.2 | 38 |
| 13-Apr-2020 | Emails with opposing counsel and case manager re trial dates | 0.3 | 38.3 |

| Date | Description | Hours | |
|---|---|---|---|
| 15-Apr-2020 | Emails with opposing counsel and client re scheduling order and trial date | 0.4 | 38.7 |
| 16-Apr-2020 | Emails with opposing counsel and client re scheduling order and trial date | 0.4 | 39.1 |
| 20-Apr-2020 | Emails with opposing counsel and case manager re pre-trial conference date and deadlines; Reviewing MSJ opposition; Email to client re same | 0.4 | 39.5 |
| 21-Apr-2020 | Reviewing and approving proposed scheduling order; Emails with opposing counsel re same; Emails with client re reply | 0.3 | 39.8 |
| 23-Apr-2020 | Researching and drafting reply in support of MSJ | 3.8 | 43.6 |
| 24-Apr-2020 | Researching and drafting reply in support of MSJ | 2.3 | 45.9 |
| 27-Apr-2020 | Researching and drafting reply; Emails with client re same | 2.9 | 48.8 |
| 28-Apr-2020 | Reviewing reply revisions from client; revising reply; Emails with client re same | 0.6 | 49.4 |
| 29-Apr-2020 | Reviewing reply revisions from client; revising reply; Emails with client re same | 0.8 | 50.2 |
| 30-Apr-2020 | Reviewing reply revisions from client; revising reply; Emails with client re same; Brief legal research re discovery verification issue; Emails with client re same | 0.6 | 50.8 |
| 1-May-2020 | Reviewing reply revisions from client; Revising reply; Emails with client re same; Emails with J. McMullan re same | 0.3 | 51.1 |
| 4-May-2020 | Drafting and filing Motion for Leave to file Reply; Reviewing reply revisions from J. McMullan; Revising, finalizing, and filing reply; Emails with client re same | 1.6 | 52.7 |
| 8-May-2020 | Emails with client re case status | 0.1 | 52.8 |
| 2-Jun-2020 | Emails with client re meeting | 0.1 | 52.9 |
| 10-Jun-2020 | Meeting with client | 4.2 | 57.1 |
| 15-Jun-2020 | Emails with case administrator re trial and case status | 0.3 | 57.4 |
| 18-Jun-2020 | Emails and tc with J. McMullan re case status | 0.6 | 58 |
| 24-Jun-2020 | Drafting PTO | 2.9 | 60.9 |
| 26-Jun-2020 | Emails with J. McMullan re PTO | 0.3 | 61.2 |
| 29-Jun-2020 | Emails with client re continued trial | 0.2 | 61.4 |
| 1-Jul-2020 | Emails with opposing counsel and J. McMullan re continuance of deadlines; Drafting Motion to Continue Deadlines; Emails with opposing counsel re same | 0.5 | 61.9 |
| 2-Jul-2020 | Filing Motion to Continue Deadlines | 0.2 | 62.1 |
| 6-Jul-2020 | Tc with court's chambers; Attending court conference re Motion to Continue Deadlines; Researching standing issues | 1.2 | 63.3 |
| 7-Jul-2020 | Emails with client re court conference and trade dress injunction standing issues | 0.5 | 63.8 |
| 8-Jul-2020 | Emails with client re trade dress injunction standing issues | 0.2 | 64 |
| 9-Jul-2020 | Emails with J. McMullan re case history | 0.1 | 64.1 |
| 21-Jul-2020 | Email to client re MTD re trade dress injunction standing | 0.2 | 64.3 |

| Date | Description | Hours | |
|---|---|---|---|
| 22-Jul-2020 | Reviewing MTD re trade dress injunction standing; Emails with client re same | 0.3 | 64.6 |
| 23-Jul-2020 | Researching and drafting response in opposition to MTD re trade dress injunction standing | 5.7 | 70.3 |
| 24-Jul-2020 | Researching and drafting response in opposition to MTD re trade dress injunction standing; Emails with client re same | 5.2 | 75.5 |
| 27-Jul-2020 | Reviewing and revising response in opposition to MTD re trade dress injunction standing; Emails with client re same | 2.2 | 77.7 |
| 28-Jul-2020 | Emails with J. McMullan re MTD response; Finalizing and filing MTD response; Emails with client re same and Third Amending Petition | 1.5 | 79.2 |
| 4-Aug-2020 | Emails with client re MTD reply | 0.2 | 79.4 |
| 5-Aug-2020 | Reviewing standing MTD reply; Emails with client re same | 0.3 | 79.7 |
| 15-Sep-2020 | Emails with client; Meeting with client | 3.2 | 82.9 |
| 5-Oct-2020 | Emails with client re hearing documents and oral argument summary | 0.2 | 83.1 |
| 13-Nov-2020 | Attending court conference re procedure for oral arguments | 0.3 | 83.4 |
| 16-Nov-2020 | Reviewing client's oral argument notes; Emails re same | 0.4 | 83.8 |
| 18-Nov-2020 | Preparing hearing outlines for Motion for Summary Judgment and Motion to Dismiss re trade dress issues | 1.4 | 85.2 |
| 19-Nov-2020 | same | 8.2 | 93.4 |
| 18-Jan-2021 | Meeting with client | 2 | 95.4 |
| 27-Jan-2021 | Reviewing opinion;  Email to client re analysis | 0.8 | 96.2 |
| 2-Feb-2021 | Emails and tc with J. McMullan and CW re court opinion | 0.3 | 96.5 |
| 3-Feb-2021 | Emails with client re opinion | 0.2 | 96.7 |
| 4-Feb-2021 | Emails with opposing counsel re rescheduling conference date | 0.1 | 96.8 |
| 5-Feb-2021 | Emails with client re reconsideration motion and strategy | 0.3 | 97.1 |
| 11-Feb-2021 | Emails with client re reconsideration memo; Reviewing outline and hearing transcript | 0.3 | 97.4 |
| 12-Feb-2021 | Researching and drafting reconsideration memo; Emails with client re reconsideration memo | 2.1 | 99.5 |
| 18-Feb-2021 | Researching and drafting reconsideration memo re trade dress injunction | 3.2 | 102.7 |
| 19-Feb-2021 | Researching and drafting reconsideration memo re trade dress injunction | 3.1 | 105.8 |
| 22-Feb-2021 | Reviewing client's revisions; Emails re same; Revising reconsideration memo | 0.8 | 106.6 |
| 23-Feb-2021 | Revising reconsideration memo; Emails with client re same | 0.3 | 106.9 |
| 24-Feb-2021 | Finalizing and filing reconsideration motion, memo, and notices; Emails with client re same | 0.6 | 107.5 |
| 3-Mar-2021 | Emails with client re scheduling conference | 0.2 | 107.7 |
| 4-Mar-2021 | Meeting with client | 4.2 | 111.9 |
| 9-Mar-2021 | Attending scheduling conference; Emails with client re same | 0.6 | 112.5 |

| Date | Description | Hours | |
|------|-------------|-------|---|
| 10-Mar-2021 | Researching legal ratifications of withdrawing request for injunction; Emails with client re same | 1.8 | 114.3 |
| 11-Mar-2021 | Emails with client re withdrawing injunctive relief | 0.2 | 114.5 |
| 15-Mar-2021 | tc with opposing counsel re settlement offer; Researching issue of appealing from consent or agreed order; Emails with client re same | 0.6 | 115.1 |
| 25-Mar-2021 | Emails with client re reconsideration response | 0.2 | 115.3 |
| 26-Mar-2021 | Reviewing reconsideration response; Emails with client re same; Drafting and filing motion for leave to file reply; Emails with opposing counsel re same | 0.7 | 116 |
| 30-Mar-2021 | Email to client re motion for leave to file reply; Researching and drafting reply in support of reconsideration | 1.2 | 117.2 |
| 31-Mar-2021 | Researching and drafting reply in support of reconsideration re trade dress injunction | 1.8 | 119 |
| 6-Apr-2021 | Researching and drafting reply in support of reconsideration | 2.3 | 121.3 |
| 8-Apr-2021 | Reviewing and revising reply in support of reconsideration; Emails with client re same | 1.7 | 123 |
| 9-Apr-2021 | Reviewing and revising reply in support of reconsideration; Emails with client re same; Finalizing and filing reply | 1.3 | 124.3 |
| 12-Apr-2021 | Emails with client re filed reply | 0.3 | 124.6 |
| 23-Apr-2021 | Emails with client re local counsel; Obtaining screen captures of Camellia Grill website | 0.3 | 124.9 |
| 5-Aug-2021 | Emails with client; tc with law clerk re motion status | 0.4 | 125.3 |
| 6-Aug-2021 | Emails with client; Reserving hotel for trial dates | 0.4 | 125.7 |
| 25-Aug-2021 | Reviewing Order on Motion for Reconsideration; Reviewing deadlines; Emails with client re same | 0.5 | 126.2 |
| 26-Aug-2021 | Email to I. Silverstein re attorney's fees affidavit | 0.4 | 126.6 |
| 1-Sep-2021 | Meeting with client | 5.5 | 132.1 |
| 7-Sep-2021 | Reviewing deadline extension notices; Emails with client re same; tc and email to court re final judgment issue | 0.5 | 132.6 |
| 13-Sep-2021 | Emails with court clerk re final judgment | 0.2 | 132.8 |
| 21-Sep-2021 | Emails with client re attorney's fee affidavit; Emails with I. Silverstein re same; Reviewing previous fee submission and orders | 0.5 | 133.3 |
| 24-Sep-2021 | Emails with client re attorney's fee affidavit | 0.1 | 133.4 |
| 28-Sep-2021 | Email to I. Silverstein re fee affidavit | 0.1 | 133.5 |
| 29-Sep-2021 | Reviewing I. Silverstein fee affidavit; Emails with I. Silverstein re same; Emails with client re same | 0.5 | 134 |
| 5-Oct-2021 | Compiling fees, preparing affidavit, and drafting motion and memo fixing fees | 3.2 | 137.2 |
| 6-Oct-2021 | Drafting motion and memo fixing fees | 2.5 | 139.7 |
| | **Total Fees** | **$42,825.00** | |

139.7 × $250 =
$ 34,925

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UPTOWN GRILL, LLC

VERSUS

MICHAEL LOUIS SHWARTZ, ET AL.

CIVIL ACTION NO: 13-6560
c/w Civil Action No. 14-810
c/w Civil Action No. 14-837

Judge: Jane Triche Milazzo
Magistrate Judge: Janis Van Meerveld

### AFFIDAVIT

STATE OF MISSISSIPPI
PARISH OF HINDS

On this the 8th day of October, 2021, before me, a Notary Public, duly commissioned and

qualified in and for the county and state foresaid; PERSONALLY CAME AND APPEARED:

JOHANNA M. MCMULLAN

who, being first duly sworn, deposed and stated that she has been local counsel for

MICHAEL L. SHWARTZ, CAMELLIA GRILL HOLDINGS, INC., AND CAMELLIA

GRILL, INC. in these proceedings; that she is personally familiar with the activities undertaken

on behalf of said client related to the enforcement of the License Agreement; that the following

represents an accurate statement of the time spent on said matter and as billed to the client.

### FEES

| Date | Biller | Summary | Hours |
|------|--------|---------|-------|
| 12/18/2019 | JM | Legal research re: ED Louisiana requirements for Pro Hac Vice | 0.10 |
| 12/18/2019 | JM | Review of Ed LA docket to determine status conference date, history of case, SLM's Pro Hac status, etc. | 0.10 |
| 12/18/2019 | JM | E-mail to S. McDavid re: contact information for C. Nickoles and Pro Hac Vice information | 0.10 |

*preliminary*

1

preliminary

| | | | |
|---|---|---|---|
| 12/19/2019 | CN | Preparation of Notice of Appearance for Johanna McMullan on behalf of Michael Louis Shwartz and Camellia Grill Holdings, Inc. | 0.20 |
| 12/19/2019 | JM | Review of ED LA local rules on Local Counsel, Entry of Appearance, Notice of Louisiana Disciplinary Board of Substitution of Sponsor for Pro Hac Vice – admitted Attorney | 0.20 |
| 12/19/2019 | JM | Review and analyze (5) lengthy e-mails from client addressing the litigation and contents of various pleadings, motion papers, and Court Judgments and opinions from prior litigation for preparation of work on matter and serving as Local Counsel (does not include review of attachments) | 0.30 |
| 12/19/2019 | JM | E-mail to S. McDavid re: notice of enrollment and no need for Pro Hac Vice Application | 0.10 |
| 12/19/2019 | JM | Review of e-mail from the client re: significant points in case | 0.10 |
| 12/19/2019 | JM | Begin to review/analyze relevant pleadings and documents in litigation between parties re: 02/24/12 – Motion for Summary Judgment and Memorandum filed by Camellia Grill and statement of material facts (CDC case) | 0.80 |
| 12/20/2019 | CN | Finalized Notice of Appearance for Johanna McMullan on behalf of Michael L. Shwartz, Camellia Grill Holdings, Inc. and Camellia Grill, Inc. | 0.10 |
| 12/20/2019 | CN | E-filed Notice of Appearance for Johanna McMullan on behalf of Michael L. Shwartz, Camellia Grill Holdings, Inc. and Camellia Grill, Inc. | 0.10 |

| 12/20/2019 | JM | E-mail to client re: Pro Hac Vice of S. McDavid | 0.10 |
|---|---|---|---|
| 12/20/2019 | JM | Review and revise Notice of Appearance | 0.10 |
| 12/20/2019 | JM | E-mail to S. McDavid re: filing Notice of Appearance | 0.10 |
| 12/20/2019 | JM | Continue to review/analyze 02/24/12 Camellia Grill Holdings, Inc.'s Motion for Summary Judgment, Statement of Material Facts, Affidavit, Supporting Memorandum and 07/19/12 Order on Motion for Summary Judgment in preparation for trial on damages and for status conference | 0.50 |
| 12/20/2019 | JM | Review/analyze The Grill Holdings' Appellant's Brief to 4th Circuit Court of Appeal with Exhibits in preparation for status conference and trial on damages | 1.00 |
| 12/20/2019 | JM | Review/analyze 4th Court of Appeal's Ruling/Order on Appeal (05/08/13) in preparation for status conference and trial on damages | 0.40 |
| 12/20/2019 | JM | Review/analyze Uptown Grill's Complaint for Declaratory Relief with Exhibits (ED LA filing) in preparation for status conference and trial on damages | 0.30 |
| 12/20/2019 | JM | Review/analyze Second Amended and Supplemental Petition of Camellia Grill Holdings, Inc. filed in CDC, State Court in preparation for status conference and trial on damages | 0.20 |
| 12/20/2019 | JM | Review/analyze Judge Milazzo's (Federal Court) ruling on Uptown Grill's Motion for | 0.50 |

*preliminary*

3

*preliminary*

| | | Summary Judgment (07/10/15) in preparation for status conference and trial on damages | |
|---|---|---|---|
| 12/23/2019 | CN | Preparation of Motion to Enroll as Counsel of Record for Johanna McMullan on behalf of Michael Louis Shwartz, Camellia Holdings, Inc. and Camellia Grill, Inc. | 0.20 |
| 12/23/2019 | CN | Preparation of (Proposed) Order granting Motion to Enroll as Counsel of Record for Johanna McMullan on behalf of Michael Louis Shwartz, Camellia Holdings, Inc. and Camellia Grill, Inc. | 0.20 |
| 12/23/2019 | CN | E-file Motion to Enroll as Counsel of Record for Johanna McMullan on behalf of Michael Louis Shwartz, Camellia Holdings, Inc. and Camellia Grill, Inc. with (Proposed) Order | 0.10 |
| 12/27/2019 | CN | Review current docket to determine Stephan McDavid's Pro Hac Vice status re: download and save to file documents granting his Pro Hac Vice and documents withdrawing his Pro Hac Vice | 0.40 |
| 12/27/2019 | CN | Telephone call to Erin Mouledous re: refiling Pro Hac Vice for Stephan McDavid | 0.10 |
| 12/27/2019 | CN | Preparation of letter to Jeremy Whitmire re: request for Certificate of Good Standing for Stephan L. McDavid | 0.20 |
| 12/30/2019 | CN | Preparation of Motion for Admission of Stephan L. McDavid Pro Hac Vice | 0.30 |
| 12/30/2019 | CN | Preparation of Affidavit of Stephan L. McDavid | 0.20 |
| 12/30/2019 | CN | Preparation of Oath of Stephan L. McDavid | 0.20 |

*preliminary*

| | | | |
|---|---|---|---|
| 12/30/2019 | CN | Preparation of (Proposed) Order | 0.10 |
| 12/30/2019 | JM | Review and revise Motion for Stephan L. McDavid's Pro Hac Vice Admission | 0.20 |
| 12/30/2019 | JM | Review and revise Stephan L. McDavid's affidavit supporting Pro Hac Vice Admission Application/Motion | 0.10 |
| 12/30/2019 | JM | Review and revise Stephan L. McDavid's Oath supporting Pro Hac Vice Admission Application/Motion | 0.10 |
| 12/30/2019 | JM | Review and revise (Proposed) Order on Stephan L. McDavid's Pro Hac Vice's Admission to ED. La | 0.10 |
| 12/30/2019 | JM | Review/analyze March 23, 2016 5th Circuit Ruling/Opinion on the Appeal from Milazzo's Motion for Summary Judgment opinion/ruling for preparation of status conference and trial on damages | 0.20 |
| 12/30/2019 | JM | Review/analyze June 8, 2016 Shwartz Complaint (ND MS) for preparation of status conference and trial on damages | 0.30 |
| 12/30/2019 | JM | Review/analyze ED. La Order and reasons on Plaintiff, Uptown Grill's Motion for Summary Judgment and Findings of Fact and Conclusions of Law for preparation of status conference and trial on damages | 0.40 |
| 12/31/2019 | JM | Arrange for runner to pick-up Certificate of Good Standing at MS Supreme Court | 0.10 |
| 12/31/2019 | JM | Review/analyze 08/16/18 Khodr Reply Brief in | 1.00 |

5

5th Circuit Appeal to advise client on breach of contract claims.

*preliminary*

| | | | |
|---|---|---|---|
| 12/31/2019 | JM | E-mail from Assist. MS Supreme Court Clerk, Rusty Holmes re: Certificate of Good Standing for Stephan L. McDavid | 0.10 |
| 12/31/2019 | JM | Response e-mail to Assist. MS Supreme Court Clerk, Rusty Holmes re: Certificate of Good Standing for Stephan L. McDavid | 0.10 |
| 12/31/2019 | JM | E-mail to S. McDavid re: drafted Pro Hac Vice Motions, Affidavit and Oath; set up phone conference on status conference | 0.20 |
| 12/31/2020 | JM | E-mail to S. McDavid's office re: original signed affidavit/oath to PMPM office | 0.10 |
| 12/31 2020 | JM | Worked with C. Nickoles re: conference with LADB on Pro Hac Vice of Stephan L. McDavid | 0.10 |
| 12/31/2020 | JM | Address issues with Pro Hac Vice documents and worked with C. Nickoles to get Pro Hac Vice documents filed | 0.20 |
| 12/31/2020 | CN | Finalized the Motion for Admission of Stephan L. McDavid Pro Hac Vice with Exhibits 1 Certificate of Good Standing, Exhibit 2 Affidavit of Stephan L. McDavid and Exhibit 3 Oath of Stephan L. McDavid | 0.20 |
| 12/31/2020 | CN | Finalized the (Proposed) Order granting Motion for Admission of Stephan L. McDavid Pro Hac Vice | 0.10 |
| 12/31/2020 | CN | E-filed Motion for Admission of Stephan L. | 0.10 |

|            |    | McDavid Pro Hac Vice with Exhibits and (Proposed) Order | | |
|------------|----|---------------------------------------------------------|------|-----|
| 1/7/2020   | JM | Review of 5th Circuit's opinion and District Court prior opinion in preparation for status conference | 1.00 | |
| 1/7/2020   | JM | E-mail to Opposing Counsel re: call-in information for conference | 0.10 | 1.1 |
| 1/7/2020   | JM | Prepare e-mail responses to phone message and e-mail from Opposing Counsel in regard to status conference | 0.10 | 1.2 |
| 1/7/2020   | JM | Participate in status conference with District Court | 0.20 | 1.4 |
| 1/7/2020   | JM | Review of Text Order of District Court re: status conference | 0.10 | 1.5 |
| 2/6/2020   | JM | E-mails to/from Steve McDavid re: status of case, settlement efforts and status conference call, etc. | 0.10 | 1.6 |
| 2/6/2020   | JM | Review of Minute Entry of Status Conference Call | 0.10 | 1.7 |
| 2/6/2020   | JM | Preparation of Pre-Trial Notice form/information required and deadlines | 0.20 | 1.9 |
| 2/11/2020  | JM | E-mails from/to M. Schwartz re: meeting on status of case/ trial | 0.10 | 2 |
| 03/04/2020 | JM | Review of 5th Circuit and District Court opinions in preparation for meeting with M. Shwartz | 0.50 | 2.5 |
| 03/04/2020 | JM | Meeting with Client and M. Shwartz re: case | 2.20 | 4.7 |

| | | update and information on Louisiana law re: contract claims | | |
|---|---|---|---|---|
| 3/5/2020 | JM | E-mail to Steve McDavid re: trial setting | 0.10 | 4.8 |
| 3/5/2020 | JM | Correspond via e-mail with M. Shwartz re: meeting date and Motion deadline with local rule | 0.10 | 4.9 |
| 3/6/2020 | JM | E-mail from Steve McDavid re: Motion for Summary Judgment and trial | 0.10 | 5 |
| 3/9/2020 | JM | Preparation of memorandum re: meeting with M. Shwartz with relevant information/timeline for breach of contract claim | 1.00 | 6 |
| 3/10/2020 | JM | Review of documents from M. Shwartz relevant to breach of contract claims and preparation of memorandum re: time line of relevant events, testimony, Interrogatory responses, etc. supporting breach contract claim | 1.20 | 7.2 |
| 3/13/2020 | JM | Review and revise/edit Memorandum in Support of Motion for Summary Judgment | 1.80 | 9 |
| 3/13/2020 | JM | Legal researches (multiple) re: opinion cites to prior State/Federal Court for addition to Memorandum in Support of Motion for Summary Judgment | 0.30 | 9.3 |
| 3/16/2020 | JM | E-mail from S. McDavid re: Motion for Summary Judgment Memorandum | 0.10 | 9.4 |
| 3/18/2020 | JM | Review/analyze statement of uncontested facts | 0.20 | 9.6 |
| 3/24/2020 | JM | Review E-mail from S. McDavid with question re: whether to ask court to clarify Order | 0.10 | 9.7 |

| 3/24/2020 | JM | Review of ED LA Local Rules on submission on Motions, Replies and Supplemental Memorandums to render opinion on how to handle ambiguous Court Order | 0.20 | 9.9 |
| 3/27/2020 | JM | E-mail to M. Shwartz re: rescheduling of meeting and Khodr missed dispositive motion deadline | 0.10 | 10 |
| 3/27/2020 | JM | E-mail from M. Shwartz re: resetting of meeting and question about motion hearing | 0.10 | 10.1 |
| 4/15/2020 | JM | Review of Exparte/Consent Joint Motion to continue deadlines by Chartres Grill LLC, Grill Holdings, LLC, et al. with attachments and (1) Proposed Order | 0.10 | 10.2 |
| 4/16/2020 | JM | Review of Order re: Joint Motion to Continue Deadlines [418] is Granted, date for filing the Joint (Proposed) Scheduling Order shall be extended from April 15, 2020 to April 22, 2020 | 0.10 | 10.3 |
| 4/21/2020 | JM | Review/analyze Response/Memorandum in Opposition filed by Chartres Grill, LLC, Grill Holdings, LLC, K&L Investments, LLC, Hicham Khodr, Rano, L.L.C., Robert's Gumbo Shop, LLC, Uptown Grill of Destin, LLC, and Uptown Grill, LLC re: [414] Motion for Summary Judgment | 0.30 | 10.6 |
| 4/22/2020 | JM | Review of Joint Motion to Adopt (Proposed) Scheduling Order | 0.10 | 10.7 |
| 4/24/2020 | JM | Review of Order granting Joint Motion to Adopt (Proposed) Order and Scheduling Order | 0.10 | 10.8 |
| 4/30/2020 | JM | Review and revise Reply in Support of Motion for Summary Judgment | 0.50 | 11.3 |
| 5/5/2020 | JM | Review of Exparte/Consent Motion for Leave for Camellia Grill Holdings, Inc. to file Reply | 0.10 | 11.4 |

9

Memorandum

| | | | | |
|---|---|---|---|---|
| 6/2/2020 | JM | E-mails from/to M. Schwartz re: June 24 meeting re: breach of contract claims | 0.10 | 11.5 |
| 6/17/2020 | JM | Review e-mail to/from Mike Shwartz re: meeting on 06/24 | 0.10 | 11.6 |
| 6/17/2020 | JM | Prepare email to S. McDavid re: requesting status of case | 0.10 | 11.7 |
| 6/17/2020 | JM | Prepare email to Mike Shwartz re: draft of breach of contract claim for preparation for meeting | 0.10 | 11.8 |
| 6/18/2020 | JM | E-mail to C. Westbrook re: needs of case, breach of contract claim and anticipated litigation/trial | 0.20 | 12 |
| 6/18/2020 | JM | Legal research re: Louisiana on contracts/ breach of contract/license agreement | 0.50 | 12.5 |
| 6/19/2020 | WW | Continued review of documents supporting breach of contract-license agreement | 1.70 | 14.2 |
| 6/22/2020 | WW | Office conference with Johanna McMullan re: contract claims | 0.70 | 14.9 |
| 6/23/2020 | WW | Exchanged e-mails with Johanna McMullan re: meeting with client | 0.20 | 15.1 |
| 6/23/2020 | WW | Preparation for travel to Jackson, MS for meeting with client; current case status and contract claims | 0.30 | 15.4 |
| 6/23/2020 | JM | Review email from M. Shwartz re: meeting and additional documents from litigation | 0.10 | 15.5 |

10

| Date | Timekeeper | Description | Hours | |
|---|---|---|---|---|
| 6/23/2020 | JM | Review/analyze 08/06/13 Khodr brief in preparation for meeting re: contract claims | 0.60 | |
| 6/23/2020 | JM | Review/analyze 05/15/12 Khodr MSJ reply briefs in preparation for meeting re: contract claims | 0.30 | |
| 6/23/2020 | JM | Review/analyze 11/04/13 cease & desist letter in preparation for meeting re: contract claims | 0.10 | |
| 6/24/2020 | JM | Review of file, documents, and pleadings in preparation for meeting with Mike Schwartz | 1.30 | |
| 6/24/2020 | WW | Travel to Jackson, MS to meeting with client; strategy for issues with breach of contract claims | 3.00 | 18.5 |
| 6/24/2020 | WW | Attendance at meeting with client in Jackson, MS; strategy for issues with breach of contract claims | 3.40 | 21.9 |
| 6/24/2020 | WW | Return to Gulfport, MS from meeting with client in Jackson, MS; strategy for issues with breach of contract claims | 3.00 | 24.9 |
| 6/24/2020 | JM | Meeting with C. Westbrook re: strategy for issues with breach of contract claims | 0.30 | 25.2 |
| 6/24/2020 | JM | Meeting with Mike Schwartz re: status of current case (separate meeting) | 1.00 | 26.2 |
| 6/25/2020 | WW | Worked on opinion letter requested by client re: breach of contract claims | 2.80 | 29 |
| 6/25/2020 | JM | Prepare email to Steve McDavid re: status of Pre-Trial Order | 0.10 | 29.1 |

*(handwritten annotations: "e", "Preliminary", and a diagonal line crossing the top four rows; checkmark "✓" at far right of last row)*

11

| 6/25/2020 | JM | Review numerous emails from M. Shwartz for evaluation of breach of contract claim | 0.40 | 29.5 |
| 6/26/2020 | JM | Review Notice from E.D. La. Court suspending trials additional 90 days | 0.10 | 29.6 |
| 6/26/2020 | WW | Review of email from client with copies of prior pretrial orders and other motions and pleadings re: contract claims | 0.80 | 30.4 |
| 6/26/2020 | WW | Phone conference with J McMullan to discuss additional fact development re: contract claims | 0.70 | 31.1 |
| 6/26/2020 | JM | Legal research and review dockets and pleadings in Uptown Grill vs. CGH to determine claims/defenses to evaluate PTO | 0.80 | 31.9 |
| 6/26/2020 | JM | Review email from M. Shwartz re: contract claims | 0.10 | 32 |
| 6/26/2020 | WW | Email from Mike responding to email from C. Westbrook | 0.10 | 32.1 |
| 6/26/2020 | WW | Email to Mike re preparations J McMullan and C. Westbrook are doing for case re contract claims | 0.80 | 32.9 |
| 6/26/2020 | JD | Researched and downloaded docket entries Document #1 to #142 | 4.50 | preliminary |
| 6/29/2020 | JM | Review email from Mike Shwartz re: communications with S. McDavid office | 0.10 | 33 |
| 6/29/2020 | JM | Response to email from Mike Shwartz re: communications with S. McDavid office | 0.10 | 33.1 |

| | | | | |
|---|---|---|---|---|
| 6/30/2020 | JM | Respond to S. McDavid's question on reasons for moving PTO deadline and Pre-Trial conference (multiple emails to/from him) | 0.30 | 33.4 |
| 6/30/2020 | JM | Prepare email to M. Shwartz explaining strategy for request to delay PTO and Pre-Trial conference | 0.10 | 33.5 |
| 6/30/2020 | JM | Review email from McDavid re: info on LA litigation | 0.10 | 33.6 |
| 6/30/2020 | JM | Review email from M. Shwartz re: additional documents | 0.10 | 33.7 |
| 6/30/2020 | JM | Review emails (lengthy) from M. Shwartz with attachment for analysis of issues related to contract claims | 0.40 | 34.1 |
| 6/30/2020 | JM | Phone conference with C. Westbrook re: strategy and additional memorandum needed on all claims, defenses raised in underlying cases for C. Westbrook's analysis of separate contract claim | 0.50 | 34.6 |
| 6/30/2020 | WW | Phone conference with J McMullan re completion of opinion letter | 0.50 | 35.1 |
| 6/30/2020 | WW | Phone conference with J McMullan re postponement of pretrial order and scheduling order submission | 0.20 | 35.3 |
| 7/1/2020 | WW | Email #1 from client attaching various file materials in support of breach contract claims | 0.10 | 35.4 |
| 7/1/2020 | JM | Review of e-mail from M. Shwartz re: delay in deadlines | 0.10 | 35.5 | ✓

| 7/6/2020 | JM | Review of District Court minute entry order on status conference; Plaintiff to file MSJ on standing | 0.10 | 35.6 |
| 7/6/2020 | 49JD | ~~Researched and downloaded docket entries #143 to #241~~ | 5.00 | preliminary |
| 7/7/2020 | JM | Review and analyze lengthy e-mail from M. Shwartz re: critical Camellia Grill documents | 0.30 | 35.9 |
| 7/7/2020 | JM | Preparation of e-mail to S. McDavid re: Millazzo's order on standing | 0.10 | 36 |
| 7/7/2020 | JM | Review of e-mail from S. McDavid re: Judge Millazzo's ruling | 0.10 | 36.1 |
| 7/8/2020 | JM | Review and analyze e-mail from S. McDavid re: interpretation of section 12 of License Agreement, standard | 0.20 | 36.3 |
| 7/8/2020 | JM | Review and analyze lengthy e-mail from M. Shwartz re: issues with current standing issue | 0.20 | 36.5 |
| 7/8/2020 | JM | Phone conference with S. McDavid re: court order on standing | 0.10 | 36.6 |
| 7/8/2020 | JM | Legal research re: injury-in fact required for standing | 0.20 | 36.8 |
| 7/8/2020 | JM | Legal research re: Louisiana law on damages required for Breach of Contract claim | 0.80 | 37.6 |
| 7/9/2020 | JM | Additional legal research on damages required in Louisiana law of obligations | 0.30 | 37.9 |
| 7/9/2020 | JM | Review and analyze docket to determine | 0.80 | 38.7 |

14

| | | | | |
|---|---|---|---|---|
| | | pleadings to review to prepare memo on claims and defenses litigated for preparation of opinion letter with C. Westbrook legal analysis and recommendations/risks contract claims etc. | | |
| 7/9/2020 | JM | Review numerous pleadings and motions to prepare memo on claims and defenses for preparation of opinion letter with C. Westbrook legal analysis and recommendations/risks | 2.90 | 41.6 |
| 7/9/2020 | JM | Preparation of memo with information for opinion letter to client with legal analysis, recommendations and risks of litigation | 1.60 | 43.2 |
| 7/10/2020 | 49JD | Revisions to Timeline of Pleadings/Case Information | 1.00 | preliminary |
| 7/15/2020 | JM | Review and analyze Ameritox v. Argiscare for application to procedural facts in Camellia Grill case | 0.40 | 43.6 |
| 7/15/2020 | JM | Review and analyze Cadle Co. v. Whatabuger case for application to procedural facts in Camellia Grill case | 0.30 | 43.9 |
| 7/15/2020 | JM | Continue legal reserch re: injury in fact damages in cases involving claims for injunctions | 0.80 | 44.7 |
| 7/15/2020 | JM | Review and analyze Judge Milazzo's April 2018 ruling re: determine whether standing previously addressed | 0.30 | 45 |
| 7/16/2020 | JM | Preparation of memo re: Louisiana law on damages, whether actual damages required for standing | 0.40 | 45.4 |
| 7/16/2020 | JM | Continue legal research on damages for | 1.60 | 47 |

contract breach of contract for preparation of
memo re; standing

| 7/17/2020 | JM | Preparation con't of legal Memorandum re: contract breach damages etc for standing issue | 0.90 | 47.9 |
|---|---|---|---|---|
| 7/17/2020 | JM | Phone conference with C. Westbrook re: strategy for case and current issues of standing | 0.60 | 48.5 |
| 7/17/2020 | JM | Legal Research Louisiana law on measuring damages in breach of contract cases, damages for nonpecuniary loss etc to prepare legal memorandum to respond to M. Shwartz questions | 1.00 | 49.5 |
| 7/17/2020 | WW | Email #1 from Johanna McMullan regarding standing question | 0.10 | 49.6 |
| 7/17/2020 | WW | Email #2 from Johanna McMullan regarding standing attaching Louisiana statute applicable to liquidated or stipulated damages | 0.10 | 49.7 |
| 7/17/2020 | WW | Drafted lengthy email response for standing questions addressing article III standing concepts and whether statute on liquidated or stipulated damage is insufficient to confer standing | 0.90 | 50.6 |
| 7/17/2020 | WW | Reviewed and concurred with J. McMullan's standing memo to Schwarz | 0.30 | 50.9 |
| 7/20/2020 | JM | Review of email from M. Shwartz re: breach of contract/standing | 0.10 | 51 |
| 7/21/2020 | WW | Received copy of Koder's motion for partial summary judgment | 0.10 | 51.1 |
| 7/27/2020 | WW | Receive and review draft of response to Motion | 0.40 | 51.5 |

16

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | to dismiss for lack of standing or mootness |  |  |
| 7/27/2020 | JM | Review and analyze Memorandum in Opposition to Motion for Partial Summary Judgment on Standing | 0.60 | 52.1 |
| 7/27/2020 | JM | Review email from M. Shwartz, preparation of response to re: August 5 meeting and Memorandum in Opposition to Motion for Partial Summary Judgment on Standing | 0.10 | 52.2 |
| 7/28/2020 | JM | Preparation of email to S. McDavid with recommendation for opposition memorandum | 0.10 | 52.3 |
| 7/28/2020 | JM | Review and analyze Camellia Grill's Opposition Memorandum to be filed in Federal Court case | 0.40 | 52.7 |
| 7/28/2020 | WW | Email from Johanna McMullan regarding response to Motion to dismiss for lack of standing | 0.10 | 52.8 |
| 7/28/2020 | WW | Receive and briefly review response/memorandum in opposition to standing motion | 0.10 | 52.9 |
| 8/3/2020 | WW | Reviewed memo and file materials in preparation for Wednesday meeting with Mr. Schwartz; revised and substantially supplemented draft opinion letter to Mr. Schwartz (adding new factual summary and new section on breach of contract) | 2.90 | 55.8 |
| 8/3/2020 | WW | Conference call with Johanna McMullan regarding meeting with Mike Schwarz re: contract claims | 0.30 | 56.1 |
| 8/4/2020 | WW | Conference call #1 with Johanna M discussing tomorrow's client conference and updated draft | 0.70 | 56.8 ✓ |

of opinion letter

| Date | Initials | Description | Hours | |
|---|---|---|---|---|
| 8/4/2020 | WW | Review supplemental case law forwarded by J. McMullan for inclusion in opinion letter re: contract claims | 0.70 | 57.5 |
| 8/4/2020 | WW | Added several sections to opinion letter | 2.80 | 60.3 |
| 8/4/2020 | JM | Review of and respond to email from M. Shwartz re: meeting on 8/5/20 | 0.10 | 60.4 |
| 8/4/2020 | JM | Preparation for meeting with M. Shwartz, review relevant documents, analyzed | 0.80 | 61.2 |
| 8/4/2020 | JM | Work with C. Westbrook on preparation for meeting with client, relevant cases on contract claims | 1.20 | 62.4 |
| 8/4/2020 | JM | Continue legal research damages for declaratory judgment action based on breach of contract (non-pecuniary losses, injury in fact) | 0.70 | 63.1 |
| 8/5/2020 | WW | Meet with Mike Schwartz at Jackson office to discuss issues pending in case | 4.50 | 67.6 |
| 8/5/2020 | WW | Drive from Jackson to Gulfport Mississippi following meeting with Mike Schwarz (apportioned) | 2.80 | 70.4 |
| 8/5/2020 | JM | Meeting with M. Shwartz re: August 20 hearing, strategy, issues with contract action re: license agreement | 4.50 | 74.9 ✓ |
| 8/6/2020 | WW | Reviewed, modified ~~and approved PHV motion materials for Chip~~ Westbrook | 0.40 | preliminary |

18

| 8/6/2020 | WW | Replied to email from J. McMullan outlining what is needed for procedural and factual portions of memorandum to client re: license agreement | 0.30 | 75.2 |
| 8/6/2020 | WW | Receive and briefly review a series of emails from Mike Schwartz providing requested documentation for contract claims | 0.40 | 75.6 |
| 8/6/2020 | JM | Work with J. Davis on C. Westbrook's Pro Hac Vice application and documents needed to file with court | 0.30 | *preliminary* |
| 8/6/2020 | JM | Preparation of email to S. McDavid re: Meeting with M. Shwartz and prep for August 20-hearing | 0.10 | 75.7 |
| 8/6/2020 | JM | Review of and revision of Pro Hac Vice motion and documents to be filed with court | 0.20 | *preliminary* |
| 8/6/2020 | JD | E-filed William V. Westbrook, III's Motion for Pro Hac Vice, Affidavit, and Proposed Order | 0.10 | |
| 8/7/2020 | JD | Received and reviewed Order Granting William V. Westbrook, III's Motion for Pro Hac Vice | 0.10 | |
| 8/7/2020 | JM | Preparation of email response to M. Shwartz questions re: litigation/oral argument | 0.10 | 75.8 |
| 8/7/2020 | JM | Legal research of Westlaw docket searches of all Camellia Grill related cases re: ascertain relevant information for preparation of summary of each Camellia Grill cases for contract claims | 2.00 | 77.8 |
| 8/7/2020 | JM | Continue preparation of summary of each of filed cases related to Camellia Grill litigation | 1.60 | 79.4 ✓ |

19

| 8/7/2020 | CN | Download all pleadings and exhibits filed in Michael L. Shwartz v. Hicham Khodr (USDC ND of MS) for J. McMullan's review (49 filings with numerous exhibits) | 2.60 | Preliminary |
| 8/10/2020 | WW | Telephone conference with J. McMullan discussing her analysis of the pleadings | 0.40 | 79.8 |
| 8/12/2020 | WW | Meet with Johanna McMullan re: review preparations for next week's motion hearing via Zoom prior to conference call with clients and rest of attorneys | 2.20 | 82 |
| 8/12/2020 | WW | Conference call with co-counsel regarding strategy for next week's hearing | 0.80 | 82.8 |
| 8/13/2020 | WW | Email to J. McMullan concerning 5th Circuit's treatment of district court's interpretation of §17.5 of the license agreement for motion papers | 0.10 | 82.9 |
| 8/13/2020 | WW | Email to J. McMullan about §17.5 of the license agreement argument | 0.20 | 83.1 |
| 8/17/2020 | WW | Telephone conversation with Johanna McMullan regarding status conference set for next day | 0.20 | 83.3 |
| 8/17/2020 | WW | 2nd telephone conversation with Johanna McMullan regarding status conference | 0.10 | 83.4 |
| 8/18/2020 | WW | Participate in court-ordered telephonic status conference | 0.20 | 83.6 |
| 8/18/2020 | WW | Email to J. McMullan advising her that conference is over and reporting on what occurred | 0.10 | 83.7 ✓ |

| 9/29/2020 | WW | Drafted proposed Order Granting Motion for Leave to File Rebuttal Memo | 0.10 | *83.8* |
| 9/29/2020 | WW | Finalized and approved Motion for Leave to File Rebuttal Memo | 0.10 | *83.9* |
| 9/29/2020 | WW | Received ECF confirmation of filing of Motion and proposed Rebuttal Memo | 0.10 | *84* |

*84. X $225 = 18,900*

| 9/29/2020 | JD | Revisions to Motion for Leave to file Rebuttal Memorandum | 0.10 | |
| 9/29/2020 | JD | Revisions to Rebuttal Memorandum | 0.30 | *.4* |
| 9/29/2020 | JD | E-filed Motion for Leave with Exhibits | 0.20 | *.6* |

*.6 X $85 = $51*

## EXPENSES

| Date | Cost | Description | |
|------|------|-------------|---|
| 12/31/2019 | $10.40 | District Court Copy Cost - U.S. District Court copies for 4th quarter 2019 (access U.S. District Court file; costs for downloaded documents) | *preliminary* |
| 01/31/2020 | $10.00 | Advanced fee - J. McMullan - reimbursement fee for Certificate of Good Standing for PHV counsel | |
| 03/31/2020 | $13.06 | Computer Research (Westlaw) | |
| 06/30/2020 | $12.20 | Advanced fee - Meal expense (lunch) while in route to Jackson, MS for meeting with M. Shwartz & J. McMullan 6/24/20 (W. Westbrook) | *$25.76* |
| 06/30/2020 | $6.05 | Advanced fee - Meal expense (dinner) while in route to Gulfport, MS after meeting with M. Shwartz & J. McMullan 6/24/20 (W. Westbrook) | *$31.3)* |
| 06/30/2020 | $152.76 | Computer Research (Westlaw) | *$184.07 ✓* |

21

| | | | |
|---|---|---|---|
| 06/30/2020 | $231.15 | Travel Expense - Travel to/from Jackson, MS for meeting with M. Shwartz & J. McMullan 6/24/20 (W. Westbrook) | 415.22 |
| 07/31/2020 | $3.56 | Computer Research (Westlaw) | 418.78 |
| 08/10/2020 | $7.99 | Travel Expense-Meal expense - 8/5/20 (W. Westbrook, III) | 426.77 |
| 08/10/2020 | $98.04 | Travel Expense-One-half pro-rata of $196.08 = $98.04 travel to/from Jackson, MS for meetings with client- 341 mi @.575/mi - 8/5/20 (W. Westbrook, III) | 524.81 |
| 09/18/2020 | $37.59 | Advanced fee - Conference Call 8/12/20 (W. Westbrook) - AT&T | 562.40 |
| 09/29/2020 | $23.00 | District Court Copy Cost - Copies from Court File | ℓ preliminary |
| 11/10/2020 | $29.00 | District Court Cost - Filing Fees | 591.40 |
| 11/11/2020 | $83.10 | Advanced fee - U.S. District Court copies for 3rd Quarter 2020 - 09/30/20 (J. McMullan) | ℓ preliminary |
| 11/16/2020 | $3.00 | District Court Cost - Filling Fees | 594.40 |
| 11/30/2020 | $97.75 | Travel Expense - Travel to Biloxi to prepare for hearing- 170 mi.@$.575/mi - 11/18/20 (J. McMullan) | ℓ unnecessary travel |
| 11/30/2020 | $52.90 | Travel Expense - Travel to New Orleans, LA for hearing - 92 mi. @ $.575/mi - 11/18/20 (J. McMullan) | |
| 11/30/2020 | $13.00 | Travel Expense - Cab fare to courthouse in New Orleans - 11/19/20 (J. McMullan) | |
| 11/30/2020 | $192.13 | Travel Expense - Hotel Expense - 11/18/20 thru 11/19/20 (J. McMullan) | |
| 11/30/2020 | $110.98 | Travel Expense - Return travel to Jackson, MS from New Orleans, LA - 193 mi. @ $.575/mi - 11/19/20 (J. McMullan) | |

Total